UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:23-CV-81393-RLR/BER

DR. JEFF ISAACS, on behalf of himself and
others similarly situated,

      Plaintiffs,

v.

KELLER WILLIAMS REALTY, INC,
MAKAI SOUTHEAST, LLC, d/b/a
KELLER        WILLIAMS        REALTY
WELLINGTON,     and     EQUESTRIAN
PALMS, LLC

      Defendants.

_____/

**DEFENDANT, EQUESTRIAN PALMS, LLC'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Equestrian Palms, LLC ("Equestrian"), pursuant to Federal Rules of Civil

Procedure 12(b)(1), 10(b), 9(b), and 12(b)(6), and Local Rule 7.1, moves to dismiss Plaintiffs' First

Amended Complaint for Damages and Injunctive Relief (the "First Am. Compl.") [ECF No. 25]

filed by Dr. Jeff Isaacs ("Isaacs") and on behalf of himself and all others similarly situated. In

support thereof, Equestrian states as follows:

I.     **INTRODUCTION AND BACKGROUND**

1.     On May 9, 2023, Equestrian filed an action against Isaacs in the Circuit Court of the

Fifteenth Judicial Circuit in and for Palm Beach County, Florida alleging claims for: (a) breach of

contract and seeking the remedy of specific performance; and (b) breach of contract and seeking,

in the alternative, money damages pursuant to Florida Rule of Civil Procedure 1.110(g), (the

"Underlying Action"). The claims alleged by Equestrian resonate from an "As-Is" Residential

Contract for Sale and Purchase (the "Contract") signed by Isaacs for the sale of the residence located at 11482 Key Deer Circle, Lake Worth, Florida 33449 (the "Property") owned by him. The Underlying Action is referenced under Palm Beach County Circuit Court Case No. 50-2023-CA-010133. A copy of the Complaint filed in the Underlying Action is attached as **Exhibit 1**.[1]

2.     On November 15, 2023, Isaacs, individually and on behalf of others similarly situated, filed his First Am. Compl. alleging claims against Equestrian and codefendants, Keller Williams Realty, Inc. ("KW") and Makai Southeast, LLC, d/b/a Keller Williams Realty Wellington ("Makai"), for: (i) violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against KW and Makai; (ii) violations of the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961-68 (the "RICO"), against Equestrian, KW and Makai; (iii) breach of contract(s) against Equestrian and Makai; (iv) abuse of process, against Equestrian and Makai; (v) violations of the Fair Housing Act, 42 U.S.C. § 3604 ("FHA") against Equestrian, KW and Makai; (vi) violations of the Sherman and Clayton Antitrust Acts, 15 U.S.C. § 1-2 and 15 against KW and Makai; and (vii) permanent injunction against Equestrian, KW and Makai.

3.     This Motion addresses the claims alleged by Isaacs against Equestrian; namely, (i) Count II for alleged RICO violations; (ii) Count III for alleged breach of the Contract; (iii) Count IV for alleged "Abuse of Process"; (iv) Count V for alleged violations of the FHA; and (v) Count VII for injunctive relief.

---

[1]     While Equestrian recognizes that matters outside the four corners of a complaint are generally inappropriate for the Court's consideration at the motion to dismiss stage, Equestrian respectfully requests the Court to take judicial notice of the Complaint filed by Equestrian in the Underlying Action and attached as **Exhibit 1**. *See, e.g., Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1011 (S.D. Fla. 2007) (stating that the court could take judicial notice of court filings and other matters of public record) (internal citation omitted).

## II.     <u>SUMMARY OF THE ARGUMENT.</u>

The First Am. Complaint fails to meet the necessary pleading requirements of a RICO violation in at least four major respects: (1) it fails to properly plead the necessary "predicate acts;" (2) it fails to allege fraud with particularity; (3) it fails to properly allege that Isaacs reasonably relied on any "predicate acts;" and (4) it fails to allege any agreement between defendants to conspire to commit the predicate acts. Stated simply, this is not a RICO case. A review of the allegations of the First Am. Compl. in the light most favorable to Isaacs, reveals that any alleged RICO violations should be dismissed as a matter of law.

Similarly, the allegations relating to Equestrian's violation of the FHA fail to contain any factual matter, that if accepted as true, would give rise to a FHA claim.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where, as here, a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.  There are no factual allegations within Isaacs's FHA claim that would support a claim against Equestrian.

With respect to the remaining state law claims for breach of contract, abuse of process, and injunctive relief, Equestrian respectfully suggests that, should the Court find that Equestrian is not a proper party to the alleged Federal Question claims, the state law claims should be dismissed as to Equestrian for lack of subject matter jurisdiction. In addition, the state law claims against

Equestrian improperly comingle the "preceding sections of this Complaint"[2] in each count and fail to separate the causes of action and claims for relief in violation of Federal Rule of Civil Procedure 10(b).

It appears the First Am. Compl. is brought before this Court pursuant to Federal Question jurisdiction, 28 U.S.C. § 1331, based upon the claims alleged in Counts I, II, V, and VI. However, the state law claims against Equestrian are inextricably linked to the factual and legal issues in the Underlying Action and completely unrelated to the Federal Question claims; therefore, the state law claims should be litigated in the state court action pending in Palm Beach County Circuit Court.   In exceptional circumstances, 28 U.S.C. § 1367(c)(4) also provides this Court with the authority to decline the exercise of supplemental jurisdiction if "there are other compelling reasons for declining jurisdiction."  Should this Court find that Equestrian is not a proper party to Counts II and V of the First Am. Compl. there would be no diversity jurisdiction for the remaining state law claims, and it would be an extreme physical and financial burden for a home buyer, like Equestrian, to be entrenched in a class action lawsuit sounding in alleged Sherman and Clayton Act violations, RICO violations, and FHA violations for simply trying to enforce its rights under a Contract Isaacs willingly executed to purchase the Property.

## III.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 677 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not

---

[2]      Each count of the First Am. Compl. provides that, "Plaintiff repeats and realleges, and incorporates by reference the preceding sections (¶1-42) of this Complaint as if fully set forth herein." *See* First Am. Compl. [ECF No. 25] at ¶¶ 53, 60, 74, 85 and 102.  With respect to Count V of the First Am. Compl. Isaacs actually, "restates, realleges, and incorporates by reference ***each of the allegations set forth in the preceding sections of this Complaint as if fully set forth herein.***" *See* First Am. Compl. [ECF No. 25] at ¶ 93 (emphasis added).  As such, Count V incorporates the preceding 92 paragraphs of allegations.

require 'detailed factual allegations,'" . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

In *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009), the Eleventh Circuit articulated the standard for a motion to dismiss under *Twombly* and its progeny, and stated that in evaluating the sufficiency of a plaintiff's pleading, the court may make reasonable inferences in the plaintiff's favor but is not required to draw the plaintiff's inferences. *See id.* at 1260 (internal citation omitted). As such, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

In cases alleging RICO violations a plaintiff must allege facts demonstrating the commission of at least two (2) predicate acts of racketeering by ***each*** defendant. *Williams v. Obstfeld*, 314 F.3d 1270, 1275, 1277 (11th Cir. 2002). In addition, where fraud formulates a "predicate act" for a civil RICO claim, Federal Rule of Civil Procedure 9(b) requires a detailed description of the alleged acts that formulate the bases for a plaintiff's claims. Federal courts considering Rule 9(b), Fed.R.Civ.P., have held that allegations of fraud that merely recite, quote, or paraphrase the language of a statute, do not allege fraud with particularity. *See* Rule 9(b) ("the circumstances constituting fraud … shall be stated with particularity…."); *Puerto Rico Am. Ins,*

*Co. v. Burgos*, 283 F.Supp.2d 546, 549 (D.P.R. 2003) (recitation of RICO statutory language does not comply with Fed.R.Civ.P. 9(b) requirement that fraud be alleged with particularity); *White Metal Rolling and Stamping Corp. v. Drew Indus, Inc.*, 222 B.R. 417, 429 (S.D. N.Y. 1998) (merely quoting or paraphrasing language of fraudulent transfer statute does not comply with Fed.R.Civ.P.9(b)).

Here, the allegations in the First Am. Compl. are conclusory and devoid of any facts sufficient to meet the requirements for pleading a claim for relief under RICO or the FHA. Within this Motion, Equestrian will also address how the state law claims alleged by Isaacs in: (i) Count III for alleged breach of the Contract; (ii) Count IV for alleged "Abuse of Process"; and (iii) Count VII for injunctive relief, are inappropriate and should not be heard by this Court pursuant to its supplemental jurisdiction authority under 28 U.S.C. §1367.

**IV.  MOTION TO DISMISS COUNT II OF THE FIRST AM. COMPL. FOR ALLEGED RICO VIOLATIONS BASED ON ISAACS'S FAILURE TO STATE A CAUSE OF ACTION.**

**a.  The Federal RICO Statute.**

The federal RICO statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The statute creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of the substantive provisions contained in Section 1962 of the RICO Act. 18 U.S.C. § 1964(c).

The required elements to state a claim for civil RICO liability are: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *See Langford v. Rite Aid of*

*Ala.*, *Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000); *see also McCulloch v. PNC Bank*, 298 F.3d 1217, 1225 (11th Cir. 2002) ("[T]o state a RICO claim, a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."). Isaacs must identify and "prove a pattern of racketeering activity, defined as two (2) 'predicate acts' of racketeering activity within a 10-year period." *Id*. at 1311-12 (citing 18 U.S.C. § 1961(5)). "The phrase 'racketeering activity' is defined as any act which is indictable under a lengthy list of criminal offenses," including any act or threat involving murder, kidnaping, gambling, arson, robbery, extortion, bribery, mail fraud, wire fraud, and counterfeiting.  *See id*. at 1312; *see also* 18 U.S.C. § 1961(1).

Under Section 1964(c), civil RICO claimants must also demonstrate standing by showing "(1) the requisite injury to 'business or property,' and (2) that such injury was by reason of' the substantive RICO violation." *Williams v. Mohawk Indus*., *Inc*., 411 F.3d 1252, 1256 (11th Cir. 2005). Civil RICO claims are "essentially a certain breed of fraud claims," meaning they "must be pled with an increased level of specificity." *Ambrosia Coal & Const*. *Co*. *v*. *Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b)). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const*. *Co*., 482 F.3d at 1316 (citing *Brooks v*. *Blue Cross & Blue Shield of Fla*., *Inc*., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

**b. The Salient Allegations of the First Am. Compl. Fail to Meet the Heightened Pleading Requirements for RICO.**

The First Amended Complaint alleges that Isaacs entered into: (i) an "Exclusive Sale" contract with Makai on December 14, 2022; and (ii) the Contract with Equestrian in February 2023—after being "asked" to accept the offer from Equestrian. *See* First Am. Compl. [ECF No. 25] at ¶¶ 16, 18, and 19. The alleged TCPA violations occurred on August 2 and December 14, 2022, prior to entering into the "Exclusive Sale" contract and the Contract. *See id.* at ¶¶ 13 and 14. In support of the RICO violations, the salient allegations of the First Amended Complaint further provide:

62. Defendants formed a telemarketing enterprise meant to exploit homeowners by aggressively pursuing real estate transactions in a manner that violated federal code. The enterprise specifically included all Keller Williams corporate and franchise agents who used illegal tactics to procure business. The enterprise formed as an entity that sought to achieve supra-competitive commissions on home sales, including that of Plaintiff and cass members. The enterprise sought to force the sale of Plaintiff's home, in disregard of FHA, *force majeure* contract clauses, Arbitration and Mediation provisions, and TCPA.

63. The enterprise certainly violated the TCPA in many cases, but also violated traditional RICO Telemarketing Fraud and Email Fraud regulations, including 18 U.S.C. § 2325. Under Section 2326, "telemarketing or email marketing"

"means a plan, program, promotion, or campaign that is conducted to induce— (A) purchases of goods or services; (B) participation in a contest or sweepstakes; or (C) a charitable contribution, donation, or gift of money or any other thing of value, by use of 1 or more interstate telephone calls initiated either by a person who is conducting the plan, program, promotion, or campaign or by a prospective purchaser or contest or sweepstakes participant or charitable contributor, or donor;"

64. Agent Nico's, and therefore Defendant Keller Williams' text messages directed towards Plaintiff meet all criteria for "telemarketing fraud" as defined and serve as specific pleading. The messages directly promised "aggressive marketing" and "New York Times" marketing which were false. Plaintiff relied on these false promises. Moreover, the messages were sent in an illegal fashion, violating the TCPA, which further evidences an intent to deceive and win profits illegally.

68. In this case, Keller Williams actually recruited Equestrian Palms as an enterprise member to breach his contract with Plaintiff and pursue intimidation tactics to force a transaction. These tactics included abuse of process and violations of Florida state laws regarding disability.

69. Under Florida § 825.103, it is a Felony to engage in "exploitation of a disabled adult"

> "Knowingly .. endeavoring to obtain a disabled adult's assets, or property with the intent to temporarily or permanently deprive the disabled adult of the use, benefit, or possession of the assets, or property, or to benefit someone other than the
>
> elderly person or disabled adult, by a person who has a business relationship with the disabled adult."

70. Defendants had a business relationship with a disabled adult, Plaintiff. Defendants conduct intended to Deprive a disabled adult of his primary home. In fact, Defendants attempted to oust a disabled person additionally impacted by a war, using telemarketing fraud, as well as abusive threats of litigation that was plainly forbidden by contractual terms. This conduct, the predicate acts beyond TCPA and itself seeking to exploit a disabled person, falls under RICO's jurisdiction over state law extortion and fraud crimes.

See id. at ¶¶ 62, 63, 64, 68, 69 and 70.[3]

While the First Am. Compl. is not a model of clarity, it alleges that: (i) Isaacs voluntarily entered into an "Exclusive Sale" agreement with Makai—after previously "list[ing] his home [for

---

[3]      See also First Am. Compl. at ¶ 60, which incorporates "the preceding sections (¶1-42) of this Complaint as if fully set forth herein."

sale] himself on Zillow.com"; (ii) Isaacs voluntarily entered into the Contract with Equestrian for the sale and purchase of the Property; (iii) Isaacs alleges that the "predicate act" by KW/ Makai was "telemarketing fraud" by allegedly falsely promising "aggressive marketing" and "New York Times" marketing; (iv) such contact by Makai/ KW violated the TCPA; (v) KW "recruited" Equestrian as an "enterprise member" to allegedly breach the Contract by failing to proceed with pre-litigation mediation required under Paragraph 16(b) of the Contract; and (iv) Equestrian "intimidate[d]" Isaacs by pursuing lawful remedies for Isaacs's breach of the Contract for failing and refusing to close on the Property by April 21, 2023, as required by Paragraph 4 of the Contract Isaacs voluntarily executed, in an effort to "exploit a disabled adult" in alleged violation of Florida law.  *See* the First Am. Compl. [ECF No. 25] at ¶¶ 15, 16, 18, 19, and 62-70; *see also* Ex. 1.

Isaacs fails to allege Equestrian's participation or roles: (1) in the "form[ation] of a telemarketing enterprise meant to exploit homeowners…," like Isaacs; (2) in the alleged telemarketing fraud "predicate act" alleged in paragraph 63; or (3) as an enterprise member.  The First Am. Compl. is also devoid of any allegations relating to Equestrian's role in any alleged illegal act, other than allegedly "breach[ing]" the Contract and "intimidating" through the threats of lawsuits for Isaacs's performance of the Contract.

A RICO claim is a serious charge that requires serious facts.  Those are lacking here.  Under Rule 9(b), "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The plaintiff must "'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud.'"  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (*quoting Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)); *see also Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)

(holding that as to each predicate act, the plaintiff must allege "the time, place and contents of the misrepresentation(s)").  Where a plaintiff makes only "loose references to mailings and telephone calls" to support its allegations of fraud, but otherwise fails to identify the parties to these transactions, federal courts have upheld the dismissal of the RICO claims under both Rule 9(b) and RICO itself.  *See Jepson Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established.").

Here, the alleged fraud has not been plead with particularity.  Other than alleging KW/ Makai promised "aggressive marketing" and "New York Times" marketing and failed to comply with these "promises," Isaacs has not met his burden of pleading fraud.

In essence, Isaacs is attempting to allege a "fraudulent inducement" claim by proffering the alleged communications between Makai/ KW and Isaacs for marketing services that were never performed to secure a buyer for the Property.  Isaacs, however, improperly attempts to inject conclusory allegations unsupported by fact to seek RICO claims and remedies against Equestrian.

To maintain a claim for fraudulent inducement, Isaacs must show (1) that KW/ Makai misrepresented a material fact, (2) that KW and Makai knew or should have known that the statement was false, (3) that KW and Makai intended that the representation would induce Isaacs to enter into the "Exclusive Sale" contract, and (4) that Isaacs was injured by acting in justifiable reliance on the misrepresentation. *Schubot v. McDonalds Corp.,* 757 F.Supp. 1351, 1355 (S.D.Fla.1990), *aff'd* 963 F.2d 385 (11th Cir.1992).  Notably, the "Exclusive Sale" contract entered into between Makai and Isaacs contains a merger clause that specifically provides, "This Agreement is the entire agreement between Seller and Broker. No prior or present agreements or

representations will be binding on Seller or Broker unless included in this Agreement."[4]

In *Jankovich v. Bowen*, 844 F. Supp. 743 (S.D. Fla. Jan. 18, 1994), Sam Jankovich and Jancko Holding Corporation (collectively, "Jancko") filed an action in state court against various defendants seeking declaratory judgment that Jancko had fully complied with a settlement agreement and that there was no requirement to register certain shares of stock transferred to defendants as part of the settlement and further sought damages for tortious interference with a business relationship and libel, based on an allegedly libelous letter that Defendants sent to the underwriter of Plaintiffs' public offering accusing them of fraud, securities law violations and racketeering. *Jancko*, 844 F. Supp at 746. The defendants removed the case to federal court on diversity grounds and filed an Answer, Affirmative Defenses and Counterclaims. *Id.* The counterclaim involved, among other things, claims based on actions and events that occurred prior to the signing the settlement agreement. *Id.* Jancko filed a motion to dismiss, or for entry of summary judgment on the counterclaims alleged by the defendants.  *Id.*

The counterclaim alleged that Jancko deliberately made false representations regarding the registration of the 45,000 shares of stock being transferred to the defendants. *Id.* at 747.  In analyzing defendants' claim to invalidate the agreement for fraudulent inducement, the District Court found that the claim was "flawed." *Id.*  In its ruling, the court opined:

> [Defendants] have failed to show that their reliance on such misrepresentation was reasonable. The Agreement specifically states that "this Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and replaces and supersedes any prior or contemporaneous oral or written representations, agreements or understandings ..." (Agreement, paragraph 9). Notwithstanding this merger clause, [defendants] contend that [Jancko] made certain misrepresentations regarding the registration of the 45,000 shares of JANKCO stock transferred to them. For instance, [defendants] claim that [Jancko] assured them that the stock would be registered in the first public offering. Such an

---

[4]    A copy of the Complaint filed by Makai against Isaacs in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida under Case No. 50-2023-CA-11575 is attached as **Exhibit 2**.  The "Exclusive Sale" Contract is attached thereto as Exhibit A and the referenced language is located in Paragraph 13 thereof.

assurance constitutes a promise of future action, which "cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it and it is not false when made."

*Id. (quoting Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 883–884 (11th Cir.1983)).

     Akin to the *Jankovich* court's holding, this Court should also find that the alleged predicate act of "telemarketing fraud" cannot lie, where, as here, and reviewing the allegations in the light most favorable to Isaacs, such promises relating to "aggressive marketing" and "New York Times" marketing were "promises of future action" which is belied by the merger clause in the "Exclusive Sale" contract, as well as Isaacs's alleged subsequent agreement to enter into the Contract with Equestrian.  Accordingly, Isaacs cannot establish that his "reliance on such misrepresentation was reasonable."  *Id.*

     Plaintiffs must offer heightened specificity in the facts supporting civil RICO actions. Dispositive deficiencies include "failure to 'discuss the nature of each defendant's participation in the scheme,' failure to 'discuss each alleged statement, document, or misrepresentation made with the proper level of precision,' and reliance on 'material misrepresentations without specifying the content or manner in which the statements misled' the plaintiffs." *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1234 (S.D. Fla. 2017). Dismissal is also required where, as here, Isaacs lumps together all of the "Defendants" and the "enterprise" in the allegations of fraud but fails to allege the specific acts of all alleged members of the "enterprise" or the acts taken by the specific defendants that formulate the basis for RICO liability. *See* First Am. Compl. at ¶¶ 62, 63, 66, 68, 70, and 71; *see also Broks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) (affirming the district court's dismissal of the plaintiff's civil RICO claims pursuant to Rule 9(b) where the plaintiff "lumped together all of the Defendants in their allegations of fraud" and the complaint was "devoid of specific allegations with respect to the separate Defendants.")

### c.   Isaacs has Failed to Allege Predicate Acts to Support RICO Claim.

TCPA and FHA violations are not listed as predicate acts under 18 U.S.C. § 1961(1).

Accordingly, such violations—which are vehemently disputed—cannot form the basis for

Isaacs's RICO claim.  Similarly, allegations relating to KW and Makai's violations of 15

U.S.C. § 1, cannot meet the "predicate act" requirement to support the RICO claim. *See U.S.*

*v. Bonnano Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1432 (E.D.N.Y.

March 24, 1988).  Here, Isaacs offers "telemarketing fraud" as a predicate act to support the

RICO, and otherwise offers the following,

> The enterprise formed as an entity that sought to achieve supra-competitive commissions on home sales, including that of Plaintiff and cass [sic] members. The enterprise sought to force the sale of Plaintiff's home, in disregard of the FHA, *force majeure* contract clauses, Arbitration and Mediation provisions, and the TCPA.
>
> The enterprise engaged in predicate acts over a significant time span exceeding six months, and violated multiple federal and Florida state laws in carrying out these predicate acts.
>
> In this case, Keller Williams actually recruited Equestrian Palms as an enterprise member to breach his contract with Plaintiff and pursue intimidation tactics to force a transaction. These tactics included abuse of process and violations of Florida State laws regarding disability.
>
> In fact, the Defendants attempted to oust a disabled person additionally impacted by war, using telemarketing fraud, as well as abusive threats of litigation that was plainly forbidden by contractual terms. This conduct, the predicate acts beyond TCPA and itself seeking to exploit a disabled person, falls under RICO's jurisdiction over state law extortion and fraud crimes.

*See* First Am. Compl. at ¶¶ 62, 66, 68, and 70.  The foregoing, Isaacs alleges, "truly evoke

'racketeering' in the traditional sense of the word." *Id.*  at ¶ 71.

A "pattern of racketeering activity" consists of two predicate acts of racketeering activity.

As set forth *supra*, the alleged "telemarketing fraud" employed by Isaacs as a predicate act, is

debunked by his inability to plead or prove that his "reliance on such misrepresentation was

reasonable." *Jancko*, 844 F. Supp at 747.  However, to the extent this Court believes that the alleged "telemarketing fraud" satisfies one of the predicate acts required by RICO, Equestrian respectfully suggests that the First Am. Compl. does not allege any other enumerated predicate act that meets the burden of alleging a RICO claim, thereby being fatal to the two predicate acts of racketeering activity necessary to plead a RICO violation.

A reading of the First Am. Compl. reveals that Isaacs's extortion allegations are premised on threats to file "illegal lawsuits" and filing lawsuits to "force a transaction" in violation of Florida laws regarding disability. *See* First Am. Compl. at ¶¶ 68 and 70.  In *Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004), the Eleventh Circuit expanded on its previous decision in *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir.2002) holding that the filing of a lawsuit, in addition to threatening to commence litigation, cannot "state a claim for extortion under the federal RICO statutes." 370 F.3d at 1087. The *Raney* court specifically opined as follows,

> In *Pendergraft*, the defendants allegedly threatened to sue a county government by falsely claiming that the County Chairman had threatened violence against their abortion clinic. We held that neither the threat to litigate nor the fabrication of evidence behind the lawsuit made the action "wrongful" within the meaning of 18 U.S.C. § 1951 and therefore could not be a predicate act under RICO. *Id.* at 1207. Raney's claims are therefore barred by this decision.
>
> Raney argues that *Pendergraft* applies only to threats of litigation, rather than actual litigation. We reject this argument. Although *Pendergraft* involved only threatened litigation, the reasoning in that opinion applies equally to litigation that has already commenced. We noted that courts possess adequate procedures to distinguish valid claims from invalid claims and held that Congress did not intend to punish citizens merely for accessing the legal system. *Id.* at 1206–07. We found ourselves "troubled by *any* use of this federal criminal statute to punish civil litigants." *Id.* at 1207 (emphasis in original). We noted that "allowing litigants to be charged with extortion would open yet another collateral way for litigants to attack one another." *Id.* We also expressed concern about transforming every state-law malicious prosecution action into a federal crime. *Id.* at 1207–08. All of these concerns apply to actual litigation with added force.

*Id.* at 1088; *see also Town of Gulfstream v. O'Boyle*, 654 Fed. Appx. 439 (11th Cir. 2016) ("We

held unequivocally that 'the filing of a lawsuit may not state a claim for extortion under the federal RICO statutes.")

With this framework in mind, Isaacs has failed to allege a viable claim under the RICO statute. The allegations of the First Am. Compl. that the purported predicate acts of "intimidation" through "abusive threats of litigation" and "illegal lawsuits" cannot form the basis of a predicate act under Florida's RICO statute. Isaacs can cite no authority to support this allegation, especially where the quantity of threats or actual lawsuits filed are irrelevant, so long as "the same concerns driving [the] decisions in *Pendergraft* and *Raney* are equally present." *O'Boyle* at 444.

## V.   MOTION TO DIMISS COUNT V OF THE FIRST AM. COMPL. FOR ALLEGED FHA VIOLATIONS BASED ON ISAACS'S FAILURE TO STATE A CAUSE OF ACTION.

### a.   The Allegations of the First Am. Compl.

The First Am. Compl. alleges FHA violations on the basis of national origin and disability. While the First Am. Compl. is not specific as to the alleged "discriminatory housing practice" Equestrian undertook against Isaacs as the <u>seller</u> of the Property, it does allege that,

> Defendants practice of choosing to disregard a foreign war, and even disputing its existence, amounts to national origin discrimination, in that it disproportionately harms and burdens individuals on the basis of their national origin.

Notably, the First Am. Compl. does not allege that Isaacs is an "Aggrieved person" as defined by 42 U.S.C. § 3602(i), and only alleges that his non-party alleged "wife" is a "natural born citizen of the former USSR country and a United States citizen." *See* First Am. Compl. at ¶ 96.

The First Am. Compl. further alleges that,

98. Further, Defendants exploited Plaintiff's medical disabilities for leverage in real estate transactions, thereby engaging in discriminatory practices prohibited under FHA. Defendants filed multiple lawsuits, prohibited by the Arbitration and Mediation clauses, with the sole purpose of "wearing down" a disabled Plaintiff. Upon his objection to the practice, Defendants and their agents directly ridiculed Plaintiffs disabilities. When asked to cease behavior that was causing him further trauma, Defendants and their agents wrote "that's not how it works" and proceeded to taunt Plaintiff. These despicable actions were taken to exploit a disability and force a sale of a home, in violation of the FHA.

99. The actions of Defendants, as depicted, violate the FHA's provisions (42 U.S.C. § 3604), which clearly outlaw:

 a. Denial of housing or obstruction of housing transactions based on the national origin or disability of potential buyers.

 b. Differential treatment in sale conditions or provision of services due to the buyer's national origin or disability.

*See* First Am. Compl. at ¶¶ 98 and 99. Isaacs's reliance upon 42 U.S.C. § 3604 and the alleged actions that formulate the basis of this claim are misplaced.  As set forth in more detail above, Equestrian filed the Underlying Action to exercise rights under the Contract and seek specific performance of Isaacs's obligations thereunder.  Issacs has developed a twisted interpretation of Equestrian's position that the war in Ukraine did not represent a *force majeure* event preventing Isaacs's performance under the Contract.  Specifically, he has dogmatically alleged and asserted that this position represents a "disregard" of a "foreign war" and that such is tantamount to a discriminatory practice in violation of the FHA. *See* First Am. Compl. at ¶¶ 90 and 97.  Even if such allegations were true—which they are not— the First Am. Complaint does not identify which

"Defendants" made the statement and how such statement constitutes a "discriminatory housing practice" under 42 U.S.C. § 3604.

Paragraph 99 of the First Am. Compl. provides that "Defendants" violated 42 U.S.C. § 3604 through alleged: (1) "denial of housing or obstruction of housing transactions based on the national origin or disability of **potential buyers**"; and (2) "differential treatment in sale conditions or provision of services due to the **buyer's** national origin or disability."  Equestrian is unclear of the alleged "denial of housing" and the "differential treatment" Isaacs seeks in this claim where, as here, Isaacs was a **seller** of the Property, has not sold the Property and *allegedly* resides there, and the very bases Isaacs alleges that formulate the bases for his claim against Equestrian relates to "buyer(s)" of Property.

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Iqbal* at 678.  Allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.

The First Am. Compl. simply paraphrases the FHA, does not provide any support that could legally justifies its claim against Equestrian and, akin to the maladies that formulate the basis for Equestrian's motion to dismiss the RICO claim, improperly lumps the "Defendants" together and does not allege which acts within the claim Isaacs believes Equestrian engaged in to violate the FHA.

Equestrian respectfully suggests to this Court that Isaacs's claim for Equestrian's alleged violations of the FHA fail as a matter of law, because Isaacs is a **seller** that has not been impacted by Equestrian's exercise of its legal right to access to the courts for disputes relating to the Contract, and Issacs failed to plead his status as an "Aggrieved person" as defined by 42 U.S.C. § 3602(i). In addition, the First Am. Compl. improperly lumps "Defendants" together without specifically alleging the violations committed by each.  Accordingly, Count V of the First Am. Compl. should be dismissed.

## VI.    **MOTION TO DISMISS BASED ON THE FIRST AM. COMPL. CONSTITUTING A SHOTGUN PLEADING.**

A complaint that fails to "separate[ ] into a different count each cause of action or claim for relief" constitutes a shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23, n.13 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit categorized its opinions on shotgun pleadings by defining and placing them generally in four categories. In this regard, the *Weiland* court opined as follows:

Though the groupings cannot be too finely drawn, we have identified four rough

types or categories of shotgun pleadings. The most common type—by a long shot—
is a complaint containing multiple counts where each count adopts the allegations
of all preceding counts, causing each successive count to carry all that came before
and the last count to be a combination of the entire complaint. The next
most common type, at least as far as our published opinions on the subject reflect,
is a complaint that does not commit the mortal sin of re-alleging all preceding
counts but is guilty of the venial sin of being replete with conclusory, vague, and
immaterial facts not obviously connected to any particular cause of action. The
third type of shotgun pleading is one that commits the sin of not separating into a
different count each cause of action or claim for relief. Fourth, and finally, there is
the relatively rare sin of asserting multiple claims against multiple defendants
without specifying which of the defendants are responsible for which acts or
omissions, or which of the defendants the claim is brought against. The unifying
characteristic of all types of shotgun pleadings is that they fail to one degree or
another, and in one way or another, to give the defendants adequate notice of the
claims against them and the grounds upon which each claim rests.

*See id.* at 1321-23.

Federal Rule of Civil Procedure 10(b) specifically provides that,

A party must state its claims or defenses in numbered paragraphs, each limited as
far as practicable to a single set of circumstances. A later pleading may refer by
number to a paragraph in an earlier pleading. If doing so would promote clarity,
each claim founded on a separate transaction or occurrence--and each defense other
than a denial--must be stated in a separate count or defense."

Fed. R. Civ. P. 10(b).

In his First Am. Compl., Isaacs "repeats and realleges, and incorporates by reference the

preceding sections (¶1-42) of this Complaint as if fully set forth herein." *See* First Am. Compl. at

¶¶ 53, 60, 74, 85 and 102.  With respect to Count V of the First Am. Compl. Isaacs actually,

"restates, realleges, and incorporates by reference ***each of the allegations set forth in the***

***preceding sections of this Complaint as if fully set forth herein.***"  *See* First Am. Compl. at ¶ 93

(emphasis added).  As such, Count V incorporates the preceding 92 paragraphs of allegations.  This

violates the first "common type" of category identified by the *Weiland* court and demonstrates the

First Am. Compl. is an impermissible "shotgun pleading."

In addition, the First Am. Compl. further violates the second category identified by the

*Weiland* court. Specifically, Isaacs pleads allegations, which are "conclusory, [ ] immaterial" and which are unconnected to the causes of action relating to each of the claims alleged by Isaacs. Specifically, in each of the claims, Isaacs, "repeats and realleges, and incorporates by reference the preceding sections (¶1-42)" which necessarily incorporate facts that are completely unrelated to the causes of action.

Furthermore, within the state law claims themselves, Isaacs injects immaterial allegations including, among other things: (i) the "stressful and expensive process [of] unwanted litigation," avoided though Alternative Dispute Resolution ("ADR") provisions in a contract; (ii) an alleged marriage ceremony in the former USSR; (iii) "Defendants" alleged unwillingness to accept the war in Ukraine; (iv) adopting photographs of Isaacs and an unidentified woman for a "Post Marriage Ceremony in Odessa, Ukraine on March 5, 2011 at Kobe Restaurant http://www.kobe.od.ua/en"; (v) attempted service of process on a relative undergoing chemotherapy to "harass" Isaacs; and (vi) conclusory remarks like, "This is a *prima facie* case and Plaintiff anticipates summary judgment on the undisputed fact that Defendants willfully violated ADR to injure Plaintiff; and (without identifying vii) incorrectly alleging that "Defendants" filed a "false lawsuit claiming there was no was in Ukraine" and then demanding an apology directed to all the victims of the war.  *See* First Am. Compl. at ¶¶ 75, 77, 78, 79, 82, 86, and 90.

Lastly, the First Am. Compl. further violates the third category identified by the *Weiland* court, as well as Rule 10(b). Isaacs failed to allege "each claim founded on a separate transaction or occurrence--and each defense other than a denial—[ ] in a separate count or defense." *See* Fed. R. Civ. P. 10(b).  Isaacs alleges he entered into an "Exclusive Sale" contract with Makai.

> 16. On December 14, 2022, Plaintiff and Makai entered into an "Exclusive Sale" contract in which Keller Williams was granted exclusive rights to sell his Homeland property.

Isaacs later alleges that he entered into a "sale contract" with Equestrian.

> 19. Nonetheless, Plaintiff and Equestrian Palms agreed to a sale contract in February 2023.

*See* First Am. Compl. at ¶¶ 16 and 19. Despite these being separate and distinct contracts which Isaacs entered into with Equestrian and Makai, Isaacs alleges a single count titled "Breach of Contract" against both Makai and Equestrian (Count III) without identifying the agreements, the rights and responsibilities of the parties, and/or the relief sought from each of the parties based upon the respective terms and conditions thereof. Similarly, Isaacs alleges a single count for abuse of process against Equestrian and Makai (Count IV) and comingles the allegations without understanding which allegations pertain to which party.

## VII.   MOTION TO DIMSISS COUNT VII OF THE FIRST AM. COMPL. AS TO EQUESTRIAN FOR FAILING TO STATE A CAUSE OF ACTION FOR PERMANENT INJUNCTION.

"To obtain a permanent injunction under Florida law, a plaintiff must 'establish a clear legal right [to the relief requested], an inadequate remedy at law, and that irreparable harm will arise absent injunctive relief.'" *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, No. 09-10004, 2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009) (quoting *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 186 n.7 (Fla. 2009)).

Applying this principle, as well as the pleading requirements set forth in *Twombly*, Count VII of the Complaint must be dismissed as to Equestrian.  As to Equestrian, Count VII provides that Isaacs seeks to enjoin Equestrian from: (1) "further violations of the [  ] FHA  [   ] and/or RICO;" and (2) further abuse of process, including but not limited to breaches of the arbitration clause, Mediation Clause and or Force Majeure Clause." *See* First Am. Compl. at p. 35 of 37.

On September 28, 2023, the parties participated in mediation, which resulted in an impasse. A copy of the Amended Notice of Mediation filed in the Underlying Action is attached as **Exhibit**

**3**. Equestrian has further been unable to serve process on Isaacs in the Underlying Action and has proceeded to effectuate constructive service of process of the Underlying Action through publication and the procedures set forth in Florida Rule of Civil Procedure 1.070(e) and section 49.021, Florida Statutes. Accordingly, there would be nothing to enjoin. Copies of the Notice of Filing Affidavit of Service by Publication and the Amended Notice of Action executed by Joseph Abuzzo, Clerk of the Circuit Court of Palm Beach County, Florida, are attached as **Exhibit 4**.

Finally, the Court need look no further than the First Am. Compl. to determine that Isaacs cannot establish his right to an injunction. Indeed, Isaacs's alleged claims against Equestrian for breach of the Contract and abuse of process establish clearly and unequivocally that Isaacs has an "adequate remedy at law," which is an element for Isaacs to proceed with his claim for injunctive relief against Equestrian. Accordingly, Equestrian respectfully requests this Court to grant Equestrian's Motion and dismiss Count VII as to any relief sought by Isaacs against Equestrian.

## VIII.   MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER JURISDICTION

It appears the First Am. Compl. is brought before this Court pursuant to Federal Question jurisdiction, 28 U.S.C. § 1331, based upon the claims alleged in Counts I, II, V, and VI. However, the state law claims against Equestrian are inextricably linked to the factual and legal issues in the Underlying Action and completely unrelated to the Federal Question claims.[5]  Paragraph 6 of the First Am. Compl. further seeks to invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, alleging the state law claims "form part of the same case or controversy." *See id.*

---

[5]      In yet another conclusory and inaccurate allegation, Isaacs alleges that states that "Defendants filed multiple state court lawsuits concerning the events in this Complaint, and referenced these as 'companion cases' that should be heard together." *See* First Am. Compl. at ¶ 6. Presumably, Isaacs is referring to Equestrian's previously filed Motion to Dismiss [ECF No. 24], where Equestrian challenged Isaacs' Complaint [ECF No. 9] on the basis that Equestrian weas only named in the existing state law claims and that such claims before this Court were inextricably linked to the factual and legal issues in the Underlying Action.  That position has not changed.  Equestrian argued there, as it does here, that the state law claims, should be properly litigated in the state court action pending in Palm Beach County Circuit Court.

Equestrian acknowledges and recognizes the Court's powers under 28 U.S.C. § 1367, but contrary to Isaacs's allegations, the state law claims are not part of the same controversy relating to alleged TCPA violations and Antitrust claims. Equestrian also suggests that a review of the remaining claims brought pursuant to Federal Question jurisdiction, 28 U.S.C. § 1331, are not only flawed, but the factual allegations, taken as true for purposes of this Motion, do not support the alleged causes of action for violations of RICO and the FHA.

If the Court is inclined to grant the Motion as to the RICO and the FHA claims, Equestrian respectfully requests that the Court dismiss the state law claims as to Equestrian and allow the defenses (and potential compulsory counterclaims) to proceed before the Circuit Court in Palm Beach County Florida in the Underlying Action. Equestrian further suggests that should Isaacs's Federal Question claims against Equestrian fail as a matter of law, that there is no subject matter jurisdiction against Equestrian under 28 U.S.C. § 1331 or 28 U.S.C. § 1332 (as Equestrian is a Florida limited liability company). *See* First Am. Compl. at ¶ 8 (alleging Isaacs "resides under Florida Homestead Laws in Homeland Equestrian Community, part of Palm Beach County").

To the extent this Court finds that the state law claims may fall under this Court's supplemental jurisdiction, Equestrian argues that circumstances exist for the Court to decline the exercise of supplemental jurisdiction. In exceptional circumstances, 28 U.S.C. § 1367(c)(4) provides this Court with the authority to decline the exercise of supplemental jurisdiction if "there are other compelling reasons for declining jurisdiction." Should this Court find that Equestrian is not a proper party to Counts II and V of the First Am. Compl. it would be an extreme financial burden for a home buyer, like Equestrian, to be entrenched in a class action lawsuit sounding in alleged Sherman and Clayton Act violations, RICO violations, and FHA violations for simply trying to enforce its rights under a Contract Isaacs willingly executed to purchase the Property. The claims

forming the basis for the matter before this Court would be unrelated to Equestrian's desire to enforce its rights

## IX.  <u>CONCLUSION.</u>

For the foregoing reasons, Defendant, Equestrian Palms, LLC, respectfully requests this Court to enter an order: (a) dismissing Count II of the First Am. Compl. for failing to meet the heightened pleading requirements required by Rule 9(b) and failing to meet the elements required by the RICO statute in violation of Rule 12(b)(6); (b) dismissing Count V of the First Am. Compl. for failing to state a cause of action under Rule 12(b)(6); (c) dismissing the First Am. Compl. because the claims asserted by Isaacs constitute a "shotgun pleading"; (d) dismissing Count VII for Permanent Injunction as to Equestrian as moot; (e) dismissing Equestrian from these proceedings for lack of subject matter jurisdiction; and (f) granting such other and further relief that this Court deems just and proper.

DATED this <u>29th</u> day of November, 2023.

Respectfully submitted,

**PETERSON, BALDOR**
**& MARANGES, PLLC**
*Attorneys for Equestrian Palms, LLC*
8000 SW 117th Ave, Suite 206
Miami, Florida 33183
Telephone:     (305) 270-3773
Facsimile:      (305) 275-7410

By:      <u>/s/ Jose Baldor</u>
Jose I. Baldor
Florida Bar No. 657360
Jose@pbmlegal.net
Lourdes@pbmlegal.net
Matthew Maranges
Florida Bar No.: 91534
Matt@pbmlegal.net
Elizabeth@pbmlegal.net

CASE NO: 23-CIV-18393-RLR/BER

## **CERTIFICATE OF GOOD FAITH CONFERNECE**

Pursuant to Local Rule 7.1(a)(3)(A), I certify that counsel for the movant has attempted to confer with all parties or non-parties who may be affected by the relief sought in this Motion in a good-faith effort to resolve the issues presented but failed to receive any call back or response to attempted phone calls and email communications. Specifically, on November 28, 2023, undersigned counsel attempted to reach Keith Matthews, Esq. and Ayelet Faerman, Esq. and left messages for them.  Undersigned counsel also sent Mr. Matthews and Ms. Faerman an email on November 28, 2023, following his attempts to reach them telephonically, but did not receive a response.

/s/ Jose I. Baldor

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of November 2023, I electronically filed this document with the Clerk of Court using CM/ECF. I also certify that this document is being served this day on **Ayelet Faerman, Esq.**, Faerman Law, P.A., 3859 NW 124th Avenue, Coral Springs, FL  33065, ayelet@faerman.law; and **Keith Matthews, Esq.**, American Wealth Protection, Manchester NH 03105, Keith@awplegal.com; via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:      /s/ Jose I. Baldor
Jose I. Baldor, Esq.