# Exhibit "1"

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

EQUESTRIAN PALMS, LLC,

CASE NO.: **50-2023-CA-010133**

General Jurisdiction Division

Plaintiff,

v.

JEFFREY ISAACS, individually,

Defendant.

_____/

## **COMPLAINT**

Plaintiff, EQUESTRIAN PALMS, LLC ("Equestrian"), by and through its undersigned counsel, sues Defendant, JEFFREY ISAACS (the "Defendant"), and alleges as follows:

## **I.**

## **JURISDICTION AND VENUE**

1.       This is an action for specific performance and, in the alternative, for damages in excess of Fifty Thousand and 00/100 Dollars ($50,000.00), exclusive of interest, costs and attorneys' fees, arising out of the material breach of an "As-Is Residential Contract for Sale and Purchase (the "Contract") by Defendant in connection with the sale of the Defendant's residence located at 11482 Key Deer Circle, Lake Worth, Florida 33449 (the "Property") to Equestrian in Palm Beach County Florida.  A true and correct copy of the Contract is attached here as **Exhibit "A"** and specifically incorporated herein by reference.

2.       Plaintiff, Equestrian, is a limited liability company organized under the laws of the State of Florida, with its Principal address in Palm Beach County, Florida.

3.      Upon information and belief, Defendant, JEFFREY ISAACS, is a resident of Palm Beach County, Florida, over the age of eighteen (18) years old and otherwise *sui juris*.

4.      Defendant is the sole fee simple title holder of the Property.  A true and correct copy of the Warranty Deed for the Property recorded on September 24, 2020 at Official Records Book 31773, Page 1252 of the Public Records of Palm Beach County, Florida is attached hereto as **Exhibit "B"** and specifically incorporated herein by reference.

5.      Venue is proper in Palm Beach County, Florida pursuant to Section 47.011, Florida Statutes, as the Defendant is a resident of Palm Beach County, Florida, the Property is located in Palm Beach County, Florida, and, as alleged more fully below, the cause of action accrued in Palm Beach County, Florida since the Defendant materially breached the Contract in Palm Beach County, Florida.  Venue is also proper in Palm Beach County, Florida, pursuant to Paragraph 18(U) of the Contract.

6.      This Court has jurisdiction over this action pursuant to Section 26.012(2)(a) and Section 26.012(2)(c), Florida Statutes.

## II.

## BACKGROUND ALLEGATIONS

7.      On or about December 20, 2022 Defendant by and through his listing agent, Nicholas Maruri ("Maruri") of Keller Williams Realty Wellington listed the Property for sale on the Multiple Listing Service (MLS).

8.      Upon information and belief, Defendant entered into a listing agreement with Maruri and/or Keller Williams Realty Wellington to list the Property on the MLS and represent Defendant, as Seller's agent, in connection with the sale of the Property.[1]

---

[1]      Equestrian is not in possession of the listing agreement, but shall procure same through the course of discovery.

9.     On February 22, 2023, Defendant entered into the Contract, as Seller, with "Jorge Luis Font Verdugo &/or Assigns," as Buyer, for the purchase and sale of the Property for the purchase price of Two Million Three Hundred Fifty Thousand and 00/100 Dollars ($2,350,000.00). *See* Exhibit "A."

10.     In accordance with Paragraph 2(a) of the Contract, the Initial Deposit of Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00) was deposited with he Escrow Agent, Felipe Frias, Esq.

11.     On March 2, 2023, following the formation of Equestrian, and pursuant to Paragraph 7 of the Contract, Jorge Luis Font Verdugo entered into an Assignment of Contract (the "Assignment") with Equestrian, wherein Jorge Luis Font Verdugo assigned, transferred and set unto Equestrian all of his right, title, and interest in the Contract.   A true and correct copy of the Assignment is attached hereto as **Exhibit "C"** and specifically incorporated herein by reference.

12.     Pursuant to Paragraph 4 of the Contract, Defendant was required to close on the sale of the Property on or before April 21, 2023. *See* Exhibit "A."

13.     In or about late March of 2023, it came to Equestrian's attention that Defendant informed Maruri that Defendant would not be selling the Property to Equestrian or consummating the transaction for the sale of the Property.

14.     On or about March 28, 2023, undersigned counsel sent a letter to Defendant advising, among other things, Defendant was ready willing and able to close on April 21, 2023 in accordance with Paragraph 4 of the Contract.  Undersigned counsel also informed Defendant that in the event Defendant failed and/or refused to close on the sale of the Property on or before April 21, 2023, Equestrian would exercise its rights under the Contract.  A true and correct copy of the

March 28, 2023 letter from undersigned counsel to Defendant is attached hereto as **Exhibit "D"** and specifically incorporated herein by reference.

15.     On April 19, 2023, Felipe Frias, Esq. ("Mr. Frias"), in his capacity as counsel for Equestrian and as the Closing/ Title Agent for the closing of the transaction relating to the Property forwarded Defendant a copy of the Closing Statement and requested Defendant to provide draft of the Closing Documents, as defined by Paragraph 18(I) of the Contract. A true and correct copy of Mr. Frias' April 19, 2023 email and the corresponding Closing Statement is attached hereto as **Exhibit "E"** and specifically incorporated herein by reference.

16.     In response to Mr. Frias' email, the Defendant responded as follows:

> I'm not sure how you can send that letter in good faith, as I've informed the realtor and your party that this closing can not occur. I have invoked the Force Majeure clause, as you are aware. Moreover, Yana is not listed on the voided contract for sale, and would not be amenable to signing the warranty deed. The contract was not made with diligence, as the property boundary described on the contract is incorrect and was under known dispute since January. Yana's name was omitted from the contract. This is a pressure sale where the agent and your party repeatedly refused to accept the fact the property is not for sale. I informed Nico in January that it would not be ethical to sell a property with a known boundary line dispute, and moreover, one that Keller Williams had represented differently for the same lot two years prior. I asked him to obtain KW's legal position, which he refused to do and continued to pressure a sale.

A true and correct copy of Defendant's April 19, 2023 email response is attached hereto as **Exhibit "F"** and specifically incorporated herein by reference.

17.     Contrary to the position taken by Defendant, (i) there is no Force Majeure event Defendant can rely upon for purposes of "void[ing]" the Contract, (ii) "Yana" is not a title holder to the Property, (iii) there is no "boundary line dispute" that would "void" the Defendant's obligation to sell the Property to Equestrian pursuant to the Contract; and (iii) this was not a "pressure sale."

18.     Prior to April 21, 2023: (i) Equestrian sent the balance of the funds required to close on the Property to Frias as Closing Agent; and (ii) Equestrian was ready, willing and able to close on the purchase of the Property in accordance with Paragraph 4 of the Contract.

19.     Despite the foregoing, Defendant has failed and refused to cooperate with Equestrian and Frias and has otherwise failed and refused to close on the purchase of the Property on or before April 21, 2023 in material breach of the Contract.

20.     All conditions precedent to the filing of this action have been waived, performed and/or excused, and Equestrian is obligated to pay undersigned counsel their fees for pursuing this action.

## COUNT I
## BREACH OF CONTRACT – SPECIFIC PERFORMANCE

Equestrian sues the Defendant and readopts and realleges Paragraphs 1 through 20 above as though fully set forth herein.

21.     As alleged more fully above, on February 22, 2023, Defendant entered into the Contract, as Seller, with "Jorge Luis Font Verdugo &/or Assigns," as Buyer, for the purchase and sale of the Property.  *See* Exhibit "A."

22.     On March 2, 2023, following the formation of Equestrian, and pursuant to Paragraph 7 of the Contract, Jorge Luis Font Verdugo entered into the Assignment with Equestrian, wherein Jorge Luis Font Verdugo assigned, transferred and set unto Equestrian all of his right, title, and interest in the Contract.  *See* Exhibit "C."

23.     Defendant has failed and refused to cooperate with Equestrian and Frias in connection with the closing of the sale of the Property and has otherwise failed and refused to close on the purchase of the Property on or before April 21, 2023 in material breach of the Contract.

24.     Paragraph 15(b) of the Contract entitled "Seller Default" specifically provides:

If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

25.     As a direct and proximate result of Defendant's failure to close on the purchase of the Property on or before April 21, 2023 in material breach of the Contract, Equestrian has been damaged, and Equestrian seeks specific performance of the terms and conditions of the Contract requiring Defendant to proceed with the closing on the purchase of the Property in accordance with the terms and conditions of the Contract.

WHEREFORE, Plaintiff, EQUESTRIAN PALMS, LLC, demands judgment against Defendant, JEFFFREY ISAACS, individually, for the specific performance of the Defendant's obligations under the terms and conditions to close on the purchase of the Property, for all attorneys' fees incurred by Equestrian pursuant to Paragraph 17 of the Contract, for all taxable costs incurred by Equestrian in connection with this action, and for such other and further relief that this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT – DAMAGES

Equestrian sues the Defendant and readopts and realleges Paragraphs 1 through 20 above as though fully set forth herein.

26.     This Count is pled in the alternative pursuant to Rule 1.110(g), Fla.R.Civ.P. in the event there is an infirmity with Equestrian's claim for specific performance alleged in Count I of this Complaint.

27.     As alleged more fully above, on February 22, 2023, Defendant entered into the Contract, as Seller, with "Jorge Luis Font Verdugo &/or Assigns," as Buyer, for the purchase and sale of the Property.  *See* Exhibit "A."

28.     On March 2, 2023, following the formation of Equestrian, and pursuant to Paragraph 7 of the Contract, Jorge Luis Font Verdugo entered into the Assignment with Equestrian, wherein Jorge Luis Font Verdugo assigned, transferred and set unto Equestrian all of his right, title, and interest in the Contract.  *See* Exhibit "C."

29.     Defendant has failed and refused to cooperate with Equestrian and Frias in connection with the closing of the sale of the Property and has otherwise failed and refused to close on the purchase of the Property on or before April 21, 2023 in material breach of the Contract.

30.     Paragraph 15(b) of the Contract entitled "Seller Default" specifically provides:

> If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

31.     As a direct and proximate result of Defendant's failure to close on the purchase of the Property on or before April 21, 2023 in material breach of the Contract, Equestrian has been damaged.

WHEREFORE, Plaintiff, EQUESTRIAN PALMS, LLC, demands judgment against Defendant, JEFFFREY ISAACS, individually, for damages including, but not limited to: (a) the return of the Equestrian's deposit; (b) all costs incurred by Equestrian in connection with the preparation for the closing on the purchase of the Property; (c) the loss of use and return on investment resulting from withdrawing the funds necessary to close on the purchase of the Property from investments made by Equestrian prior to the scheduled closing; (d) all increased costs and

expenses incurred as a result of having to acquire another property because of the Defendant's

material breaches of the Contract, (e) for all attorneys' fees incurred by Equestrian pursuant to

Paragraph 17 of the Contract, (f) for all taxable costs incurred by Equestrian in connection with

this action, and (g) for such other and further relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Equestrian hereby demands a trial by jury on all issues so triable.

Dated this 9th day of May, 2023.

PETERSON, BALDOR & MARANGES, PLLC
Attorneys for Plaintiffs
8000 S.W. 117th Avenue, Suite 206
Miami, Florida 33183
Telephone: (305) 270-3773
Facsimile: (305) 275-7410

By:    Jose Baldor, Esq.
Jose I. Baldor, Esq.
Florida Bar No.: 657630
jose@pbmelegal.net
lourdes@pbmlegal.net
elizabeth@pbmlegal.net
Michael P. Peterson, Esq.
Florida Bar No. 982040
michael@pbmlegal.net

# Exhibit "A"

# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



1\* **PARTIES:** Jeffrey D Isaacs ("Seller"),
2\* and Jorge Luis Font Verdugo &/ or Assigns ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7\*  (a) Street address, city, zip: 11482 Key Deer Circle        Lake Worth        33449
8\*  (b) Located in: Palm Beach        County, Florida. Property Tax ID #: 00-41-44-35-01-000-1060
9\*  (c) Real Property: The legal description is HOMELAND AS IN SEC/TWN/RNG/MER:SEC 35 TWN 44S RNG 41E
10   Homeland LOT 106
11
12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14   by other terms of this Contract.
15  (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16   which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17   purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18   and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19   television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20   keys, and storm shutters/storm protection items and hardware ("Personal Property").
21\*   Other Personal Property items included in this purchase are: Generator, Security Cameras
22
23   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24\*  (e) The following items are excluded from the purchase:
25

26  **PURCHASE PRICE AND CLOSING**

27\* **2. PURCHASE PRICE** (U.S. currency): ........................................................$ 2,350,000.00
28\*  (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ............$ 550,000.00
29   The initial deposit made payable and delivered to "Escrow Agent" named below
30 \*   **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within 10     (if left blank,
31   then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32   SHALL BE DEEMED SELECTED.
33\*   Escrow Agent Name: Felipe Frias, Esq.
34 \*   Address: 8950 SW 74th Court.suite 1901   Miami  FL 33156 Phone: 305-665-3311
35 \*   Email: ff@pnrlaw.com                          Fax: 305-665-1244
36 \*  (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37 \*   days after Effective Date ..............................................................................$
38   (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39\*  (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.........
40\*  (d) Other:............................................................................................... $
41  (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42\*   transfer or other Collected funds (See STANDARD S) ...........................................$ BALANCE
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44  (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*   02/22/2023                  , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46   Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47   the counter-offer is delivered.
48  (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49   initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51   received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52   furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

53 * this Contract, the Closing shall occur on 04/21/2023 _____ ("Closing Date"), at the time
54 established by the Closing Agent.

55 **5. EXTENSION OF CLOSING DATE:**
56    (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57       Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58       checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59       extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60       days.
61    (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62       unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63       extended as provided in STANDARD G.

64 **6. OCCUPANCY AND POSSESSION:**
65    (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66       to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67       personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68       codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69       to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70       shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71       CLOSING OCCUPANCY BY BUYER.
72    (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73       subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74       Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75       shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76       within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77       occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78       election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79       Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80       and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81       be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82       Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83 * **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 * this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86 <p align="center">**FINANCING**</p>

87 **8. FINANCING:**
88 * ☒ (a) This is a cash transaction with no financing contingency.
89 * ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90 * Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91 * (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92 * adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 * blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").
97 *      (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.
106      (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111     (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115     (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120     (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126     (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132 * ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133 * ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136     (a) **COSTS TO BE PAID BY SELLER:**
137     • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
138     • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
139     • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
140 *     • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
141     • Charges for FIRPTA withholding and reporting
142     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146     (b) **COSTS TO BE PAID BY BUYER:**
147     • Taxes and recording fees on notes and mortgages      • Loan expenses
148     • Recording fees for deed and financing statements      • Appraisal fees
149     • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
150     • Survey (and elevation certification, if required)      • Buyer's attorneys' fees
151     • Lender's title policy and endorsements      • All property related insurance
152     • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
153     • Municipal lien search (if Paragraph 9(c)(ii) is checked)      9(c)(iii) is checked)
154 *     • Other: <mark>Transaction fee payed to kw wellington $295</mark>
155 *     (c) **TITLE EVIDENCE AND INSURANCE:** At least  15  (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained <mark>and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,</mark>
160 <mark>Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date.</mark> The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a



165  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166  liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167  **(CHECK ONE):**
168 *  ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 *  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171  provider(s) as Buyer may select; or
172 *  ☒ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173  services related to Buyer's lender's policy, endorsements and loan closing; or
174 *  ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 *  furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176  continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177  reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178  continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179 *  be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180  search ordered or performed by Closing Agent.
181  (d)  **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182  surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183  Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184 *  (e)  **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
185 *  _____ at a cost not to exceed $_____. A home
186  warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187  appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188  (f)  **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189  ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190  ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191  improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192  imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193  be paid in installments **(CHECK ONE):**
194 *  ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195  Installments prepaid or due for the year of Closing shall be prorated.
196 *  ☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197  to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198  deemed selected for such assessment(s).
199  IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200  This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201  (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202  Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

## DISCLOSURES

204  **10. DISCLOSURES:**
205  (a)  **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206  sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207  exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208  radon and radon testing may be obtained from your county health department.
209  (b)  **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210  does not know of any improvements made to the Property which were made without required permits or made
211  pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212  F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213  Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214  knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215  unpermitted improvements.
216  (c)  **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217  desires additional information regarding mold, Buyer should contact an appropriate professional.
218  (d)  **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219  zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220  improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"



or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i)  **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* 10___ *(if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*



Buyer's Initials _____  _____        Page **5** of 12        Seller's Initials _____  _____

275     (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior
276     to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
277     follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
278     Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
279     Maintenance Requirement and has met all other contractual obligations.
280     (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection
281     of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans,
282     written documentation or other information in Seller's possession, knowledge, or control relating to
283     improvements to the Property which are the subject of such open or needed permits, and shall promptly
284     cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve
285     such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,
286     consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
287     or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
288     expend, any money.
289     (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
290     cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
291     to Buyer.

292                                 **ESCROW AGENT AND BROKER**

293 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
294     and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
295     within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this
296     Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands
297     for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such
298     actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities
299     under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties
300     agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of
301     the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An
302     attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all
303     parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of
304     accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with
305     provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation,
306     arbitration, interpleader or an escrow disbursement order.
307     In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
308     or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
309     attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
310     shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
311     Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
312     termination of this Contract.
313 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
314     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
315     professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
316     and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
317     Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
318     public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
319     **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
320     **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
321     **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
322     individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
323     employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
324     all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
325     or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
326     information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
327     failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
328     beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
329     recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
330     provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.



331 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335 <div align="center">**DEFAULT AND DISPUTE RESOLUTION**</div>

336 **15. DEFAULT:**
337 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349 performance.
350 This Paragraph 15 shall survive Closing or termination of this Contract.
351 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353 as follows:
354 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356 16(b).
357 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362 16 shall survive Closing or termination of this Contract.
363 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368 <div align="center">**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**</div>

369 **18. STANDARDS:**
370 **A. TITLE:**
371 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
383 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385 with law.



Buyer's Initials ___ JLF ___  <div align="center">Page **7** of **12**</div>  Seller's Initials ___ JDI ___
FloridaRealtors/ ___ -ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

386  (ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387  in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388  delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389  receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390  receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391  shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392  written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393  Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394  Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395  deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396  Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397  (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400  further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
401  Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402  thereby releasing Buyer and Seller from all further obligations under this Contract.
403  **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410  preparation of such prior survey, to the extent the affirmations therein are true and correct.
411  **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
413  **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419  6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420  within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421  Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422  this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423  thereunder.
424  **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428  general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
429  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430  for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431  paid or will be paid at Closing.
432  **F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall
433  be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434  any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435  inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436  U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437  Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438  day on which a national legal public holiday is observed.
439  **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440  this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441  obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,



Buyer's Initials _JLF_ _____                    Page **8** of **12**                    Seller's Initials _JDI_ _____
FloridaRealtors/F_____ -ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
453 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.
458 **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.
464 (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.
469 (iii)  **FinCEN GTO REPORTING OBLIGATION**. If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.
475 (iv)  **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
479 **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
490 **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment



**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

499     is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500     assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501     on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502     of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503     agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504     informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505     maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
506     estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507     shall survive Closing.

508     **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509     shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510     including a walk-through (or follow-up walk-through if necessary) prior to Closing.

511     **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512     ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513     exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514     pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515     cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516     restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517     Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518     Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
519     Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520     with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

521     **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522     Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523     in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524     cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525     upon, nor extended or delayed by, such Exchange.

526     **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
527     **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528     Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529     interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530     delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531     shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532     facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533     hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534     signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

535     **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536     of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537     representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538     in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539     to be bound by it.

540     **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541     Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542     rights.

543     **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544     or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

545     **S.  COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including
546     Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing
547     Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent
548     until such amounts have been Collected in Closing Agent's accounts.

549     **T.  RESERVED.**

550     **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551     of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552     county where the Real Property is located.

553     **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554     Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555     of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service



Buyer's Initials _JLF_     _____        Page **10** of **12**        Seller's Initials _JDI_     _____

FloridaRealtors/F_____-ASIS-6  Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557  from the IRS authorizing a reduced amount of withholding.
558  (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563  to the IRS.
564  (ii)   If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566  reduced sum required, if any, and timely remit said funds to the IRS.
567  (iii)   If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569  received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
570  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574  (iv)   In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575  transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577  disbursement in accordance with the final determination of the IRS, as applicable.
578  (v)   Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579  8288 and 8288-A, as filed.
580  **W.  RESERVED**
581  **X.  BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller**
582  ***and against any real estate licensee involved in the negotiation of this Contract for any damage or defects***
583  ***pertaining to the physical condition of the Property that may exist at Closing of this Contract and be***
584  ***subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This***
585  ***provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive***
586  ***Closing.***

587  **ADDENDA AND ADDITIONAL TERMS**

589 *  **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
590  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ M.  Defective Drywall | ☐ X.   Kick-out Clause |
| ☒ B.  Homeowners' Assn. | ☐ N.  Coastal Construction Control Line | ☐ Y.   Seller's Attorney Approval |
| ☐ C.  Seller Financing | | ☐ Z.   Buyer's Attorney Approval |
| ☐ D.  Mortgage Assumption | ☐ O.  Insulation Disclosure | ☐ AA.  Licensee Property Interest |
| ☐ E.  FHA/VA Financing | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ BB.  Binding Arbitration |
| ☐ F.  Appraisal Contingency | ☐ Q.  Housing for Older Persons | ☐ CC.  Miami-Dade County |
| ☐ G.  Short Sale | ☐ R.  Rezoning | Special Taxing District |
| ☐ H.  Homeowners/Flood Ins. | ☐ S.  Lease Purchase/ Lease Option | Disclosure |
| ☐ I.   RESERVED | ☐ T.  Pre-Closing Occupancy | ☐ DD.  Seasonal/Vacation Rentals |
| ☐ J.  Interest-Bearing Acct | ☐ U.  Post-Closing Occupancy | ☐ EE.  PACE Disclosure |
| ☐ K.  RESERVED | ☐ V.  Sale of Buyer's Property | ☐ Other:_____ |
| ☐ L.  RESERVED | ☐ W.  Back-up Contract | _____ |
| . | | _____ |

591 *  **20. ADDITIONAL TERMS:** _____
592     _____
593     _____
594     _____
595     _____
596     _____
597     _____
598     1) Nicholas Maruri with KW Realty Wellington, will be representing Seller and Buyer
599     as a transaction agent.
600     _____
601     2) Buyer to pay Keller Williams Realty Wellington a $295 transaction fee.
602     _____
603     3)Seller shall be responsible for closing any open permits, and or code violations,in any,
604     prior to closing date.
605     _____
606     4) Seller to provide buyer a sellers property disclosure within 3 days of effective date,
607     signed by seller.
608     _____

<div align="center">

**COUNTER-OFFER**

</div>

609

610 *  ☐ Seller counters Buyer's offer.

611     **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
612     **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

613     **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

614     *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
615     *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
616     *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
617     *interested persons.*

618     AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
619 *   TO BE COMPLETED.

620     Buyer: _____     Date: 2/22/2023 | 7:26 AM P
621 *   Buyer: _____     Date: _____
622 *   Seller: _____     Date: 2/22/2023 | 8:25 PM PS
623 *   Seller: _____     Date: _____

624     Buyer's address for purposes of notice          Seller's address for purposes of notice
625 *   791 Crandon BLVD                                11482 Key Deer Circle
626 *   _____             _____
627 *   Key Biscayne          FL      33149             Lake Worth          FL      33449

628     **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
629     entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
630     Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
631     agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
632     retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
633     made by Seller or Listing Broker to Cooperating Brokers.

634 *   _____             Nicholas Maruri               5%
635     **Cooperating Sales Associate, if any**          **Listing Sales Associate**

636 *   _____             Keller Williams Realty Wellington
637     **Cooperating Broker, if any**                  **Listing Broker**

# Exhibit "B"

CFN 20200358042
OR BK 31773 PG 1252
RECORDED 09/24/2020 11:41:38
Palm Beach County, Florida
AMT 975,000.00
DEED DOC 6,825.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1252-1253; (2Pgs)

THIS INSTRUMENT PREPARED BY:
RUDOLPH M. DI LASCIO, JR., ESQ.
5798 Johnson Street
Hollywood, Florida 33021

RETURN TO:
Reliable Title, Inc.
5792 Johnson Street
Hollywood, Florida  33021

Tax Folio Number:  00-41-44-35-01-000-1060

# W A R R A N T Y   D E E D

THIS INDENTURE, made this **16** day of September, 2020, BETWEEN

### DENNIS EISEN, a single man and ERIC EISEN, a married man

whose addresses are: Dennis Eisen -3001 Spanish Trail, Delray Beach, Florida 33483
Eric Eisen – 7229 Arcadia Court, Boca Raton, Florida 33433

hereinafter referred to as grantor, and

### JEFFREY D. ISAACS

whose address is:  11482 Key Deer Circle, Lake Worth, Florida  33449

hereinafter referred to as grantee,

### W I T N E S S E T H:

that said grantor, for and in consideration of the sum of TEN AND NO/100TH DOLLARS ($10.00), and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Palm Beach County, Florida, to wit:

Lot 106, HOMELAND, according to the plat thereof, as recorded in Plat Book 33, Page 111, of the Public Records of Palm Beach County, Florida.

n.b.  Grantor, Eric Eisen, warrants and represents that the property is not the homestead of grantor, Eric Eisen, nor is it contiguous to the homestead of grantor, Eric Eisen, and that no member of Eric Eisen's family has resided therein, as grantor Eric Eisen resides at 7229 Arcadia Court, Boca Raton, Florida 33433.

SUBJECT TO restrictions, limitations, easements, reservations and conditions of record, zoning ordinances and taxes for the year 2020 and all subsequent years.

and said grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

*"Grantor" and "Grantee" are used for singular or plural, as context requires.

Page 2
Warranty Deed
Eisen s/t Isaacs

IN WITNESS WHEREOF, grantor has hereunto set grantor's hand and seal on this 16th day of September, 2020.

Signed sealed and delivered in our presence:

Sign: _____

Print Name: GABRIELA PIMENTA

Sign: _____

Print Name: Nancy Ramos

**DENNIS EISEN**

**ERIC EISEN**

**STATE OF FLORIDA**

**COUNTY OF PALM BEACH**

**I HEREBY CERTIFY THAT** the foregoing instrument was acknowledged before me by means of [  ] physical presence or [  ] online notarization, this 16 day of September, 2020, an officer duly qualified to take acknowledgments, personally appeared **DENNIS EISEN**, who is [X] personally known to me; or [  ] produced a driver's license or [  ] _____ as identification, and before me by means of [X] physical presence or [  ] online notarization, this 16 day of September, 2020, an officer duly qualified to take acknowledgments, personally appeared **ERIC EISEN**, who is [X] personally known to me; or [  ] produced a driver's license or [  ] _____ as identification, and who acknowledged executing the foregoing instrument.

NOTARY PUBLIC, STATE OF FLORIDA

Print Name: GABRIELA PIMENTA

My Commission expires: April 15, 2021

GABRIELA PIMENTA
MY COMMISSION # GG 90928
EXPIRES: April 15, 2021
Bonded Thru Notary Public Underwriters

NOT A CERTIFIED COPY

# Exhibit "C"

## ASSIGNMENT OF CONTRACT

**THIS ASSIGNMENT OF CONTRACT** (the "Assignment") is made and entered into as of this _____3/2/2023_____, by and between **JORGE LUIS FONT VERDUGO** (the "Assignor") and **EQUESTRIAN PALMS LLC, a Florida limited liability company** (the "Assignee").

## RECITALS

**WHEREAS**, Assignor is desirous of assigning all of his right, title, and interest in that certain "AS IS" Residential Contract for Sale and Purchase dated effective February 22, 2023 (the "Contract"), by and between JEFFREY D. ISAACS, as Seller, and Assignor, as Buyer, for the sale and purchase of the property located at 11482 Key Deer Circle, Lake Worth, FL 33449 (the "Property"), and all of Assignor's rights as the Buyer of the Property, in favor of Assignee, and Assignee is desirous of succeeding to all of Assignor's right, title and interest under and with respect to the Contract.

**NOW THEREFORE**, in consideration of the mutual promises herein made, the sum of Ten Dollars ($10.00), payable by Assignee to Assignor, and other good and valuable consideration, the receipt, adequacy and sufficiency whereof are hereby conclusively acknowledged, the parties hereto agree as follows:

1.      The foregoing recitals are true and correct and are incorporated herein by this reference.

2.      Assignor hereby expressly assigns, transfers and sets over unto Assignee all of Assignor's right, title and interest in and to the Contract (including specifically, without limitation, the deposits paid under the Contract).

3.      Assignee hereby assumes all obligations of Assignor under the Contract pertaining to the Property and specifically agrees to be bound by all of the terms and conditions of the Contract until the Closing Date.

4.      The parties acknowledge and agree that this Assignment may be executed in multiple counterparts, and transmitted via facsimile, each such counterpart (whether transmitted via facsimile or otherwise), when executed, shall constitute an integral part of the one and the same agreement between the parties.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals on the date first written above.

**ASSIGNOR:**                                    **ASSIGNEE:**

                                                          **EQUESTRIAN PALMS LLC, a Florida limited liability company**

                                                          **By: ANDALUCIA EQUESTRIAN INC., a Nevis corporation, its Manager**

_____                         By: _____
JO  *JORGE LUIS FONT VERDUGO*                            Name  *JORGE LUIS FONT VERDUGO*
    F9607CE5C88245D...                                         F9607CE5C88245D...
                                                          Title: Director

# Exhibit "D"



**Peterson, Baldor & Maranges, PLLC**
ATTORNEYS AT LAW

| MICHAEL P. PETERSON | JOSE I. BALDOR | MATTHEW MARANGES* |
|---|---|---|
| MICHAEL@PBMLEGAL.NET | JOSE@PBMLEGAL.NET | MATT@PBMLEGAL.NET |
| | | *Board Certified in Construction Law |

March 28, 2023

<u>**VIA CERTIFIED MAIL: 7022 1670 0001 4727 3573**</u>

Jeffrey D. Isaacs
11482 Key Deer Circle
Lake Worth, Florida 33449

<u>**VIA ELECTRONIC MAIL: nicomaruri92@gmail.com**</u>

Nicholas Maruri
Keller Williams Realty – Wellington
1400 Corporate Center Way
Second Floor
Wellington, Florida 33414

Re: <u>"As Is" Residential Contract For Sale and Purchase entered into between Jeffrey D. Isaacs and Jorge Luis Font Verdugo &/or assigns for the Purchase of the Property located at 11482 Key Deer Circle, Lake Worth, Florida 33449 – Potential Anticipatory Breach & Demand for Performance.</u>

Dear Mr. Isaacs:

This law firm represents Jorge Luis Font Verdugo ("Font") and his assign, Equestrian Palms LLC ("Buyer") in connection with the "As Is" Residential Contract For Sale and Purchase (the "Contract") entered into between Jeffrey D. Isaacs ("Seller") and Font &/or his assigns on February 22, 2023 for the purchase of the property located at 11482 Key Deer Circle, Lake Worth, Florida 33449 (the "Property"), as well as the subsequent Assignment of Contract (the "Assignment") entered into between Verdugo, as Assignor, and Buyer, as Assignee, dated March 2, 2023. True and correct copies of the Contract and the Assignment are enclosed herein for your reference. It has come to the Buyer's attention that you recently informed the listing broker for the sale of the Property, Nicholas Maruri, that you would not be selling the Property to the Buyer and that you have no intention of executing any documents or consummating the transaction contemplated by the Contract. We truly hope this is not the case and ask that you confirm to the undersigned, in writing, that the information Buyer has received is inaccurate.

Jeffrey D. Isaacs
Nicholas Maruri
Keller Williams Realty – Wellington
March 28, 2023
Page 2

Pursuant to Paragraph 2 of the Contract, Buyer has deposited the sum of Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00) with the Escrow Agent, Felipe Frias, Esq., and is currently conducting a title review of the Property pursuant to Section 9 (C) of the Contract. Notwithstanding the foregoing, Buyer has all intentions of proceeding to closing on this transaction on or before the anticipated Closing Date of April 21, 2023 in accordance with Section 4 of the Contract.

In the unfortunate event Seller fails, neglects, or refuses to perform Seller's obligations under this Contract, or otherwise refuses to close this transaction on or before April 21, 2023, Seller will be in material breach of the Contract.  Buyer will, thereafter, have no choice but declare Seller in default of the Contract and file an action in the Circuit Court of Palm Beach County, Florida seeking injunctive relief and specific performance of Seller's obligations under Articles 15(b) and 16 of the Contract. Seller may want to acquaint himself with the remedies available to Buyer in the event Seller fails, neglects, or refuses to close this transaction, not the least of which will be Buyer's recovery of all attorneys' fees and costs incurred by Buyer for being forced to take such action pursuant to Paragraph 17 of the Contract.

Please contact the undersigned immediately to discuss the foregoing to ensure the closing will proceed on or before April 21, 2023 in accordance with the Contract, and hopefully, to confirm the information received by Buyer is inaccurate.  I can be reached at (305) 270-3773 and jose@pbmlegal.net.  Otherwise, Seller should govern himself accordingly.

Sincerely,

Jose I. Baldor, Esq.
Michael Peterson, Esq.

cc:   Client
      (via electronic mail)

      Felipe Frias, Esq.
      (via email)

# Exhibit "E"

| | |
|---|---|
| **From:** | Felipe Frias |
| **To:** | "jeffreydi@gmail.com" |
| **Cc:** | Nicholas Maruri; Eliana N. Salas |
| **Subject:** | EQUESTRIAN PALMS (FONT) P/F ISAACS – 11482 KEY DEER CIR. LAKE WORTH, FL - OUR FILE NO. 13464-B |
| **Date:** | Wednesday, April 19, 2023 11:34:18 AM |
| **Attachments:** | Buyer_Seller_Closing_Statement.pdf |
| **Importance:** | High |

Dear Mr. Isaacs:

My name is Felipe Frias, and I am both legal counsel for the Buyer (EQUESTRIAN PALMS LLC) and the closing/title agent in connection with the above referenced transaction.

Attached please find the Closing Statement for the transaction.

Pursuant to Section 18(I) of the Contract, please provide drafts of the proposed Closing Documents as soon as possible for our review and approval.  Furthermore, kindly provide wire transfer instructions for the delivery of Seller proceeds upon closing.

We expect to close in a timely fashion on Friday, April 21, 2023.

If you have any questions, please let me know.

Thank you,
Felipe Frias


**Felipe Frías, Esq.**
Licensed to Practice in Florida and in the District of Columbia.
Packman, Neuwahl & Rosenberg, P.A.
TOWN CENTER ONE
8950 S.W. 74th Court, Suite 1901
Miami, FL  33156
Email – ff@pnrlaw.com
Telephone - (305) 665-3311 (Ext. 162)
Telefax - (305) 665-1244
Web Address - www.pnrlaw.com

This e-mail message and any attached messages or text may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message that arise as a result of e-mail transmission. If verification is required please request a hard-copy version.
*          *          *          *          *
The Internal Revenue Service now requires written advice (including electronic communications) regarding one or more Federal (i.e., United States) tax issues to meet certain standards.  Those standards involve a detailed and careful analysis of the facts and applicable law which we expect would be time consuming.  We have <u>not</u> made and have not been asked to make that type of analysis in connection with any advice given in this e-mail.  **As a result, we are required to advise you that any Federal tax advice rendered in this e-mail is not intended or written to be used and cannot be used for the purpose of either avoiding penalties that may be imposed by the**

**Internal Revenue Service or promoting, marketing or recommending to another party any transaction or matter addressed herein.** In the event you would like us to perform the type of analysis that is necessary for us to provide an opinion that does not require the above disclaimer, as always, please feel free to contact us directly.

Buyer/Seller
Settlement Statement

**A. Settlement Statement**

**B. Type of Loan**

| | | |
|---|---|---|
| ○ 1. FHA | ○ 2. FmHA | ○ 3. Conv. Unins. |
| ○ 4. V.A. | ○ 5. Conv. Ins. | |

**6. File Number** 13464-B

**7. Loan Number** ID:

**8. Mortg. Ins. Case Num.**

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BUYER:** EQUESTRIAN PALMS LLC, a Florida limited liability company

**Address of Buyer:** 8950 SW 74th COURT, SUITE 1901, Coral Gables, Florida 33156

**E. NAME OF SELLER:** JEFFREY D. ISSACS

**Address of Seller:**                                                                                                    TIN:

**F. NAME OF LENDER:**

**Address of Lender:**

**G. PROPERTY LOCATION:** 11482 KEY DEER CIRCLE, Lake Worth, Florida 33449

**H. SETTLEMENT AGENT:** Packman Neuwahl & Rosenberg P.A.                         TIN: 59-1712820

**Place of Settlement:** 8950 S.W. 74th Court, Suite 1901, Miami, Florida 33156         Phone: 305-665-3311

**I. SETTLEMENT DATE:** 4/21/23                    **DISBURSEMENT DATE:** 4/14/23

| J. Summary of buyer's transaction | | K. Summary of seller's transaction | |
|---|---|---|---|
| **100. Gross amount due from buyer:** | | **400. Gross amount due to seller:** | |
| 101. Contract sales price | 2,350,000.00 | 401. Contract sales price | 2,350,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to buyer (Line 1400) | 14,068.85 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance:** | | **Adjustments for items paid by seller in advance:** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments from 04/21/23 to 09/30/23 | 337.17 | 408. Assessments from 04/21/23 to 09/30/23 | 337.17 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross amount due from buyer:** | 2,364,406.02 | **420. Gross amount due to seller:** | 2,350,337.17 |
| **200. Amounts paid or in behalf of buyer:** | | **500. Reductions in amount due to seller:** | |
| 201. Deposit or earnest money | 550,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 134,410.30 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Principal amount of second mortgage | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | 507. Principal amt of mortgage held by seller | |
| 208. SELLER CREDIT | 12,000.00 | 508. SELLER CREDIT | 12,000.00 |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller:** | | **Adjustments for items unpaid by seller:** | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes from 01/01/23 to 04/21/23 | 4,624.78 | 511. County taxes from 01/01/23 to 04/21/23 | 4,624.78 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for buyer:** | 566,624.78 | **520. Total reductions in amount due seller:** | 151,035.08 |
| **300. Cash at settlement from/to buyer:** | | **600. Cash at settlement to/from seller:** | |
| 301. Gross amount due from buyer (line 120) | 2,364,406.02 | 601. Gross amount due to seller (line 420) | 2,350,337.17 |
| 302. Less amount paid by/for the buyer (line 220) | (566,624.78) | 602. Less total reductions in amount due seller (line 520) | (151,035.08) |
| 303. Cash ( ☑ From  ☐ To ) Buyer: | 1,797,781.24 | 603. Cash ( ☑ To  ☐ From ) Seller: | 2,199,302.09 |

**Substitute Form 1099 Seller Statement:**      The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS.  If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

**Seller Instructions:**      To determine if you have to report the sale or exchange of your main home on your tax return, see Instructions for Schedule D (Form 1040 or 1040-SR).  If not your main home, report the transaction on Form 4797, Form 6252, and/or Schedule D for the appropriate income tax form.

| | | | Buyer POC | Seller POC | Buyer's Funds at Settlement | Seller's Funds at Settlement |
|---|---|---|---|---|---|---|
| 700. Total Sales/Brokers Com. based on price | $2,350,000.00 @ | 5.0000 % = 117,500.00 | | | | |
| 701. | 117,500.00 | 5.0000 % to KELLER WILLIAMS REALTY WELLINGTON | | | | |
| 702. | | % to | | | | |
| 703. Commission paid at settlement | | | | | | 117,500.00 |
| 704. TRANSACTION FEE | | to KELLER WILLIAMS REALTY WELLINGTON | | | 295.00 | |
| **800. Items payable in connection with loan:** | | | Buyer POC | Seller POC | | |
| 801. Loan origination fee | | % to | | | | |
| 802. Loan discount | | % to | | | | |
| 803. Appraisal fee | | to | | | | |
| 804. Credit report | | to | | | | |
| 805. Lender's inspection fee | | to | | | | |
| 806. Mortgage insurance application fee | | to | | | | |
| 807. Assumption Fee | | to | | | | |
| 808. | | to | | | | |
| 809. | | to | | | | |
| 810. | | to | | | | |
| 811. | | to | | | | |
| **900. Items required by lender to be paid in advance:** | | | Buyer POC | Seller POC | | |
| 901. Interest from | to | @ /day | | | | |
| 902. Mortgage insurance premium for | months to | | | | | |
| 903. Hazard insurance premium for | years to | | | | | |
| 904. Flood insurance premium for | years to | | | | | |
| 905. | years to | | | | | |
| **1000. Reserves deposited with lender:** | | | Buyer POC | Seller POC | | |
| 1001. Hazard insurance | | months @ per month | | | | |
| 1002. Mortgage insurance | | months @ per month | | | | |
| 1003. City property taxes | | months @ per month | | | | |
| 1004. County property taxes | | months @ per month | | | | |
| 1005. Annual assessments | | months @ per month | | | | |
| 1006. Flood insurance | | months @ per month | | | | |
| 1007. | | months @ per month | | | | |
| 1008. | | months @ per month | | | | |
| 1009. Aggregate accounting adjustment | | | | | | |
| **1100. Title charges:** | | | Buyer POC | Seller POC | | |
| 1101. Settlement or closing fee | | to | | | | |
| 1102. Abstract or title search | | to OLD REPUBLIC NATIONAL TITLE | | | 125.00 | |
| 1103. Title examination | | to | | | | |
| 1104. Title insurance binder | | to | | | | |
| 1105. Document preparation | | to | | | | |
| 1106. Notary fees | | to | | | | |
| 1107. Attorney's Fees | | to Packman Neuwahl & Rosenberg P.A. | | | 3,250.00 | |
| (includes above item numbers: | | ) | | | | |
| 1108. Title Insurance | | to OLD REPUBLIC NATIONAL TITLE/Packman Neuwahl | | | 8,450.00 | |
| (includes above item numbers: | | ) | | | | |
| 1109. Lender's coverage (Premium): | | | | | | |
| 1110. Owner's coverage (Premium): | $2,350,000.00 ($8,450.00) | | | | | |
| 1111. Endorse: | | | | | | |
| 1112. Courier, copies, Fed Ex, wires and Simplif | | to Packman Neuwahl & Rosenberg P.A. | | | 100.00 | 50.00 |
| 1113. | | to | | | | |
| **1200. Government recording and transfer charges:** | | | | | | |
| 1201. Recording fees | Deed | $23.85 Mortgage(s) Releases | | | 23.85 | |
| 1202. City/county tax/stamps | Deed | Mortgage(s) | | | | |
| 1203. State tax/stamps | Deed | $16,450.00 Mortgage(s) | | | | 16,450.00 |
| 1204. | | to | | | | |
| 1205. | | to | | | | |
| **1300. Additional settlement charges:** | | | Buyer POC | Seller POC | | |
| 1301. Survey | | to PRINCIPAL MERIDIAN SURVEYING, INC. | | | 1,420.00 | |
| 1302. LIEN SEARCH | | to SKYLINE LIEN SEARCH | | | 280.00 | |
| 1303. HOA REIMBURESEMENT | | to Packman Neuwahl & Rosenberg P.A. | | | | 299.00 |
| 1304. HOA BALANCE DUE | | to HOMELAND POA | | | | 111.30 |
| 1305. NEW OWNER SET UP POA | | to VICTORY ACCOUNTING | | | 125.00 | |
| 1306. | | to | | | | |
| 1307. | | to | | | | |
| 1308. | | to | | | | |
| 1309. | | | | | | |
| **1400. Total settlement charges:** | | | | | | |
| ( Enter on lines 103, Section J and 502, Section K ) | | | | | 14,068.85 | 134,410.30 |

# BUYER/SELLER
# SETTLEMENT STATEMENT ADDENDUM

**File Number:**      13464-B

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

## Buyer(s)

EQUESTRIAN PALMS LLC, a Florida limited liability company

By:  ANDALUCIA EQUESTRIAN, INC.

By:  _____
.. ..

(Corporate Seal)

## Seller(s)

_____          _____
JEFFREY D. ISSACS

## Settlement Agent

The Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Packman Neuwahl & Rosenberg P.A.

By: _____          Date: _____

**WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see:  Title 18 U.S. Code Section 1001 and Section 1010.**

# Exhibit "F"

**Lourdes Alvarez**

| | |
|---|---|
| **From:** | Felipe Frias <ff@pnrlaw.com> |
| **Sent:** | Wednesday, April 19, 2023 4:59 PM |
| **To:** | Jose I. Baldor |
| **Subject:** | FW: EQUESTRIAN PALMS (FONT) P/F ISAACS - 11482 KEY DEER CIR. LAKE WORTH, FL - OUR FILE NO. 13464-B |

FYI

**From:** Jeffrey <jeffreydi@gmail.com>
**Sent:** Wednesday, April 19, 2023 4:43 PM
**To:** Felipe Frias <ff@pnrlaw.com>
**Subject:** Re: EQUESTRIAN PALMS (FONT) P/F ISAACS - 11482 KEY DEER CIR. LAKE WORTH, FL - OUR FILE NO. 13464-B

Mr. Frias,

I'm not sure how you can send that letter in good faith, as I've informed the realtor and your party that this closing can not occur. I have invoked the Force Majeure clause, as you are aware. Moreover, Yana is not listed on the voided contract for sale, and would not be amenable to signing the warranty deed. The contract was not made with diligence, as the property boundary described on the contract is incorrect and was under known dispute since January. Yana's name was omitted from the contract. This is a pressure sale where the agent and your party repeatedly refused to accept the fact the property is not for sale. I informed Nico in January that it would not be ethical to sell a property with a known boundary line dispute, and moreover, one that Keller Williams had represented differently for the same lot two years prior. I asked him to obtain KW's legal position, which he refused to do and continued to pressure a sale.

I hope this matter is over now.

Jeffrey

On Wed, Apr 19, 2023 at 11:34 AM Felipe Frias <ff@pnrlaw.com> wrote:

Dear Mr. Isaacs:


My name is Felipe Frias, and I am both legal counsel for the Buyer (EQUESTRIAN PALMS LLC) and the closing/title agent in connection with the above referenced transaction.


Attached please find the Closing Statement for the transaction.


Pursuant to Section 18(I) of the Contract, please provide drafts of the proposed Closing Documents as soon as possible for our review and approval.  Furthermore, kindly provide wire transfer instructions for the delivery of Seller proceeds upon closing.

We expect to close in a timely fashion on Friday, April 21, 2023.

If you have any questions, please let me know.

Thank you,
Felipe Frias

**Felipe Frías, Esq.**

Licensed to Practice in Florida and in the District of Columbia.

Packman, Neuwahl & Rosenberg, P.A.

TOWN CENTER ONE
8950 S.W. 74th Court, Suite 1901

Miami, FL  33156

Email – ff@pnrlaw.com

Telephone - (305) 665-3311 (Ext. 162)
Telefax - (305) 665-1244
Web Address - www.pnrlaw.com

This e-mail message and any attached messages or text may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message that arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

*       *       *       *

The Internal Revenue Service now requires written advice (including electronic communications) regarding one or more Federal (i.e., United States) tax issues to meet certain standards.  Those standards involve a detailed and careful analysis of the facts and applicable law which we expect would be time consuming.  We have <u>not</u> made and have not been asked to make that type of analysis in connection with any advice given in this e-mail.  **<u>As a result, we are required to advise you that any Federal tax advice rendered in this e-mail is not intended or written to be used and cannot be used for the purpose of either avoiding penalties that may be imposed by the Internal Revenue Service or promoting, marketing or recommending to another party any transaction or matter addressed herein.</u>**  In the event you would like us to perform the type of analysis that is necessary for us to provide an opinion that does not require the above disclaimer, as always, please feel free to contact us directly.