UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  23-CV-81393-ROSENBERG/REINHART

JEFF ISAACS

      Plaintiff,

v.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER
WILLIAMS REALTY WELLINGTON), and
EQUESTRIAN PALMS, LLC,

      Defendants.

_____/

**DEFENDANT, MAKAI SOUTHEAST, LLC'S,**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, MAKAI SOUTHEAST, LLC (d/b/a KELLER WILLIAMS REALTY WELLINGTON) (hereinafter "Makai" or "Defendant"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby files this Motion to Dismiss Plaintiff's Amended Complaint [D.E. 25] ("the Motion"), and in support thereof, states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 16, 2020, a Warranty Deed was executed in connection with 11482 Deer Circle in Lake Worth, Florida (the "Property").  Said Property was deeded at that time to JEFF ISAACS ("Plaintiff").  *See* Ex. C of Complaint filed in Case. No. 50-2023-CA-011575 in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Underlying Action"), attached hereto as **Exhibit A**.[1]

On June 29, 2022, a class action lawsuit was filed against KELLER WILLIAMS REALTY, INC. ("KWRI") in the Circuit Court for the Nineteenth Judicial Circuit in and for Indian River County, Florida (Case No. 312022CA000457) alleging violations under the Telephone Consumer Protection Act (the "Deshay Case").  *See* Deshay Complaint, attached hereto as **Exhibit B**.  On November 30, 2022, the parties in the Deshay Case entered into the Class Action Settlement Agreement (the "Deshay Class Action Settlement Agreement").  *See* Deshay Class Action

---

[1] This Court "may take judicial notice of and consider documents which are public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment." *Haddad v. Dudek,* 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

Settlement Agreement, attached hereto as **Exhibit C.**  On December 7, 2022, the court in the Deshay Case entered the Order Preliminarily Approving Class Action Settlement, Conditionally Certifying Class and Granting Other Relief ("Preliminary Approval Order").  *See* Preliminary Approval Order, attached hereto as **Exhibit D.**

According to the Amended Complaint, on August 2, 2022, Nico Maruri sent Plaintiff a text message stating: "Hello Jeffrey good morning, this is Nico. I have been trying to reach you, to talk about your house in homeland."  *Id. ¶¶ 13, 54.*  On December 14, 2022, Plaintiff claims to have received another text message from Mr. Maruri, which stated: "The market is going down, and I think to get it on the market, with all of my marketing strategies that I use with my team, that are very aggressive, would be very beneficial." *Id. ¶¶ 14, 54.*  The Amended Complaint vaguely alleges that between August 2 and December 14, Plaintiff and Mr. Maruri engaged in other conversations. *Id. ¶ 15.*  These communications demonstrate that Plaintiff and Mr. Maruri had participated in many conversations over the course of several months, some of which were initiated by Plaintiff. *See,* text message exchange between Plaintiff and Nico Maruri, attached hereto as **Exhibit E.**

On December 17, 2022, Plaintiff and Makai entered into the Exclusive Listing Agreement. *See* Ex. A of **Exhibit A**.[2] .  On February 23, 2023, Plaintiff, Makai, and EQUESTRIAN PALMS, LLC ("Equestrian Palms") entered into the Sales Agreement. *See* Ex. B of **Exhibit A**.  Ultimately, Plaintiff reneged on both agreements without legal justification.

On June 27, 2023, Makai filed the complaint in the Underlying Action.  *See*, **Exhibit A.** The Underlying Action raises breach of contract claims against Plaintiff in connection with Plaintiff breaching the Exclusive Listing Agreement and Sales Agreement.

On October 17, 2023, Plaintiff filed his lawsuit against Makai, KWRI, and Equestrian Palms alleging and seeking: (1) violation of the Telephone Consumer Protection Act ("TCPA")

---

[2] Because Plaintiff incorporates the Exclusive Listing Agreement by reference in his Amended Complaint, this Court may rely on the Exclusive Agreement in ruling on this Motion. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on 12(b)(6) motions, in addition to considering the complaint in its entirety, "courts ordinarily examine documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); see also *Traffic Jam Events, LLC v. Cortes*, 2009 WL 2175640 (M.D. Fla. July 21, 2009) ("When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Tellabs*, 551 U.S. 308)).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

under 47 U.S.C. § 227(c) (Count I); (2) violation of the Racketeer Influenced Corrupt Organization Act ("RICO") under 18 U.S.C. § 1962(c) (Count II); (3) Breach of Contract (Count III); (4) Abuse of Process (Count IV); (5) violation of the Fair Housing Act ("FHA") under 42 U.S.C. § 3604 (Count V); and (6) violation of the Sherman and Clayton Antitrust Acts under 15 U.S.C. §§ 1-2 & 15 (Count VI); and (7) Permanent Injunction.

## MEMORANDUM OF LAW

## I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.  Legal Standard Governing Motions to Dismiss for Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant can also attack such a pleading under Rule 12(b)(6) by arguing it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is not facially plausible when the complaint's factual content does not allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"In considering a motion to dismiss, the Court must "accept well-pleaded facts and reasonable inferences drawn from those facts." *Carter v. Frito-Lay*, Inc., 144 F. App'x 815, 818 (11th Cir. 2005), quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). However, "conclusory" statements and "[t]hreadbare" allegations will not suffice. *Ashcroft*, 556 U.S. at 678 (2009); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1883 (2017). Courts need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Rankin v. Bd. of Regents of Univ. Sys. of Georgia*, 2018 WL 1974995, at *1 (11th Cir. 2018), citing *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Moreover, certain claims such as RICO claims and a conspiracy to commit RICO violations must be pled with particularity.  *See O'Rear v. American Family Life Assurance Co.* 139 F.R.D. 418 (M.D. Fla. 1991). Likewise, mere allegations that a party has violated the antitrust laws are insufficient to survive a motion to dismiss under rule 12(b)(6); the party must plead sufficient facts to establish each element and cannot use terms which are conclusory. *America Online, Inc. v. GreatDeals.Net*, 49 F.Supp.2d 851, 857 (E.D. Va. 1999).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

### B.  Plaintiff's TCPA Claim (Count I) Must be Dismissed

Plaintiff alleges in Count I of the Amended Complaint that Makai and KWRI sent him unsolicited text messages to procure commercial business, and made calls to him of a similar nature. *See* Am. Compl., ¶ 54.  Plaintiff further alleges that Makai and KWRI were conducting "a telemarketing campaign directed at Plaintiff." *Id.*  He specifically maintains that on August 2, 2022, he received a text message from Mr. Maruri stating: "Hello Jeffrey good morning, this is Nico. I have been trying to reach you, to talk about your house in homeland." *Id. ¶¶ 13, 54.*  The only other contact specified in the Amended Complaint is another text message from Mr. Maruri on December 14, 2022, which stated: "The market is going down, and I think to get it on the market, with all of my marketing strategies that I use with my team, that are very aggressive, would be very beneficial." *Id. ¶¶ 14, 54.*  The Amended Complaint elaborates that between August 2, 2022 and December 14, 2022, "Plaintiff actually listed his home himself on Zillow.com, but continued to accept calls from KW and answer questions about his home… Plaintiff had hoped to avoid paying a 6% commission through a For Sale By Owner ('FSBO') listing on Zillow." *Id.* ¶ 15.  The Amended Complaint explains that due to Zillow's policy of not promoting FSBO homes and Zillow's presence in the homebuying market, Plaintiff decided that he would need the assistance of Zillow and MLS to sell his home, and therefore needed a realtor.  *Id.* ¶ 16.  In light of the foregoing, the Amended Complaint maintains that on December 14, 2022, Plaintiff entered into the Exclusive Listing Agreement with Makai. For the reasons set forth below, Plaintiff's TCPA claims fail and must be dismissed.

#### i.  Plaintiff's Allegations Fail to Amount to a TCPA Claim

Plaintiff brings claims against Makai under the TCPA, but either lacks or fails to allege the necessary elements to properly establish a TCPA claim.

##### a.  The text messages were not solicitations or advertisements.

A TCPA claim requires a "telephone solicitation," which is defined under the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. § 64.1200(f)(15).  Where text messages are only transactional in nature, they do not constitute telephone solicitations, telemarketing, or advertisements. *An Phan v. Agoda Company Pte. Ltd.*, 351 F. Supp. 3d 1257, 1262-63 (N.D. Cal. 2018).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

Even assuming arguendo that one call was a "telephone solicitation" as defined above, a TCPA violation requires more than one in a 12-month period. The Court should reject these allegations on their face. *See, e.g., Nicholas Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. 2021) (dismissing, noting: "[A]t best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation. Plaintiff, however, has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."). Without a "telephone solicitation," or at least more than one in a year, Plaintiff's TCPA claim fails on this basis, as well. *See, e.g., Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. 2013) ("Because neither of the messages in this case encouraged [plaintiff] to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. N. Illinois Gas Co.*, 2014 WL 184774, at *2 (N.D. Ill. 2014) (ruling similarly).[3]

Plaintiff alleges that on August 2, 2022, he received this text message from Mr. Maruri: "Hello Jeffrey good morning, this is Nico. I have been trying to reach you, to talk about your house in homeland."  As explained above, such a message does not constitute a solicitation that would amount to a violation under the TCPA.  Accordingly, even when taking the allegations in the Amended Complaint as true, Plaintiff has failed to specifically allege two instances of contact that could amount to violations.

> b.   The business relationship exception bars Plaintiff's TCPA claim.

Plaintiff's TCPA claim also fails under the business relationship exception prescribed by the statute.  Under the TCPA, certain claims are barred, including communications "[t]o any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(3); 47 C.F.R. § 64.1200(f)(14)(ii). Here, Plaintiff's Count I should be dismissed because Plaintiff had an established business relationship with Makai. Pursuant to TCPA regulations, an "established business relationship" exists "on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

---

[3] Merely baldly alleging that Plaintiff "continued to accept calls from KW and answer questions about his home" (FAC ¶ 15) is insufficient. Rather, Plaintiff must plead specific facts as to each call that he allegedly received to avoid dismissal. *See, e.g., Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987-988 (N.D. Cal. 2014), aff'd in part, 670 F. App'x 573 (9th Cir. 2016); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983-84 (N.D. Ill. 2013).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

As noted above, the Amended Complaint's reference to the text message exchange between Plaintiff and Mr. Maruri provides a basis for this Court to judicially notice and consider **Exhibit E**, the corresponding conversation. *Tellabs*, 551 U.S. 308. The text messages directly undermine and contradict the allegations in the Amended Complaint.  As an initial matter, the text messages clearly demonstrate the inaccuracy of the claims and unreliability of Plaintiff's assertions concerning the nature of his conversations with Mr. Maruri.  For example, the text message referenced in which Mr. Maruri discussed his aggressive marketing strategies was cited by Plaintiff as having been sent on December 14, 2022 when it was actually sent on November 10, 2022. *See* **Exhibit E**.  Further, the text messages reveal multiple instances where Plaintiff initiated conversation with Mr. Maruri.  In fact, Mr. Maruri's above-referenced text message from Mr. Maruri on November 10, 2022 was in response to a message from Plaintiff, who initiated the conversation the prior evening.  *Id.*  Importantly, as touched on throughout the entirety of the conversation, many conversations were had over the telephone.  *Id.*

Moreover, as mentioned above, the very first text message from Mr. Maruri does not contain any language that would amount to a solicitation.  *Id.*  Further, more telling than what is said in Mr. Maruri's text message is what Mr. Maruri did not state.  It is notable that Mr. Maruri's message, despite allegedly being a solicitation, does not convey that he works with Keller Williams or even introduces himself as a realtor.  *Id.*  The next message, Plaintiff's response, states that the house is for sale, but is not listed.  *Id.* Thus, this exchange predates Plaintiff's efforts to sell his house on Zillow.  Same is confirmed in the August 25, 2022 message initiated by Plaintiff in which he advised Mr. Maruri that he had listed his home on Zillow, and requested that Mr. Maruri "take over the listing." *Id.* Overall, review of the conversation reveals a clearly defined and established business relationship existed between Plaintiff and Mr. Maruri.

Even if the Court did not consider the full conversation from the text messages, **the Amended Complaint explicitly admits that "Defendants had a business relationship with a disabled adult, Plaintiff."** See Am. Compl. ¶ 70.   Given the business relationship exception, the foregoing allegation directly undermines Plaintiff's TCPA claim and warrants dismissal of same with prejudice.

        c.    <u>Plaintiff fails to allege that the subject phone number was residential.</u>

First, on its face, the TCPA's Do Not Call Registry provision applies only to subscribers of residential numbers. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); *see also Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. 2018) ("The language

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

of the TCPA specifically provides that the regulations implemented pursuant to ... 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'"); *Cunningham v. Politi*, 2019 WL 2517085, at *4 (E.D. Tex. 2019).

Plaintiff's allegations regarding the purported "use" of the subject 610 phone number in this case fail to establish a claim under the TCPA. Indeed, Plaintiff does not allege that the subject phone is used at all for "residential" purposes, let alone exclusively for such reasons. Therefore, this Court should dismiss Plaintiff's TCPA claim on this basis alone under Rule 12(b)(6).

> **ii.      Alternatively, to the Extent this Court Determines the Amended Complaint's Allegations Constitute a TCPA Claim, Plaintiff's Claims are Barred by Res Judicata**

The Deshay Class Action Settlement Agreement bars Plaintiff's TCPA claims in the pending action. "It is well settled that the doctrine of res judicata bars a plaintiff who is a member of a class certified in a prior settled lawsuit from bringing a later suit litigating the same claims covered by the previous action." *Papazian v. Gold Key Lease, Inc.*, 962 F. Supp. 1469, 1470 (M.D. Fla. 1997); *Cooper v. Fed. Res. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001) ("All members of the class are bound by the res judicata effect of the judgment in a class action.") (citations omitted).

With regard to the purpose of res judicata, judicially approved settlement agreements, such as the Class Action Settlement Agreement, are considered final judgments on the merits. *See Arrieta-Gimenez v. Arrieta-Negron*, 441 So. 2d 1184 (Fla. 1989) ("a consent judgment is entitled to res judicata effect"). "However, a somewhat modified form of res judicata applies if a settlement agreement triggers the dismissal and the defendant's consequential discharge." *Horton v. Metro. Life Ins. Co.*, 459 F. Supp. 2d 1246, 1251 (M.D. Fla. 2006) (citations omitted). When a class action is resolved pursuant to a settlement agreement, said agreement is treated as a judgment. Accordingly, a class action settlement agreement is "not simply a contract entered into by private parties, but is one that has been given a stamp of approval by the court." *Id.* (quoting *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1557 (3d Cir. 1994)). Thus, in applying the principles of res judicata from the Deshay Case to Plaintiff's claims, "the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Horton*, 459 F. Supp. 2d at 1252.

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

Under Florida case law, there are four conditions considered in determining whether a matter should be precluded by res judicata: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the person for or against whom the claim is made. *ICC Chem. Corp. v. Freeman*, 640 So. 2d 92 (Fla. 3d DCA 1994). In the above-captioned matter, dismissal with prejudice is warranted due to all four of the foregoing elements being present.

With regard to "identity of the thing sued for," Plaintiff has brought forth claims pursuant to TCPA that were previously litigated in the Deshay Case. The "Released Claims" under Paragraph 1.1.33 of the Deshay Class Action Settlement Agreement, which "determine the bounds of preclusion," are defined to include "any violations of the Telephone Consumer Protection Act, 47 USC § 227, the FCC's related regulations—including internal Do Not Call requirements, or unfair or deceptive practices act)…" Here, Plaintiff is suing Makai and KWRI under the TCPA pursuant to 47 USC § 227.  As such, these exact issues have previously been litigated and resolved.

The second element is "identity of the cause of action." The "test of identity of the causes of action, for the purpose of determining the question of res adjudicata [sic], is the identity of facts essential to the maintenance of the actions." *Youngblood v. Taylor*, 89 So. 2d 503 (Fla. 1956) (emphasis in original); *see also Fields v. Sarasota-Manatee Airport Auth.*, 755 F. Supp. 377, 379 (M.D. Fla. 1991) ("identity of the cause of action is found where there is a 'similarity of the facts essential to the maintenance of both actions'") (quoting *Pumo v. Pumo*, 405 So. 2d 224, 226 (Fla. 3d DCA 1981)). In the Deshay Class Action Settlement Agreement, the KWRI is alleged to have violated the TCPA by directing or ratifying their realtors to contact persons on the National Do Not Call registry. (*See generally* **Exhibit C**.) Likewise, Plaintiff in the instant action alleges that "Defendants Keller Williams and Makai sent unsolicited text messages to the Plaintiff to procure commercial business, despite him being on the Do-Not-Call list. Similarly, the KW defendants placed telephone calls of a similar nature to Plaintiff's 610 area code mobile telephone." Am. Compl. ¶ 54. Thus, as the facts underlying the causes of action in both the above-captioned lawsuit and the Deshay Case are identical, the second element of res judicata is met.

The third element is "identity of the persons and parties to the actions." According to the allegation in the Amended Complaint, Plaintiff is a member of the Deshay Class, which is defined as:

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

> [A]ll Persons in the United States who, during the Class Period[4], (1) were called or received two or more calls and/or text messages made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors on a telephone number that (a) appeared on the National Do Not Call Registry for at least 31 days and/or (b) that appeared on any internal do not call list of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors; and/or (2) were called or received one or more calls and/or text messages made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors using (a) an artificial or prerecorded voice and/or (b) a cloud based dialing platform; and/or (3) were called or received one or more calls made using an automatic telephone dialing system made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors. Excluded from the Class are… (3) persons who properly execute and file a timely request for exclusion from the class.

See **Exhibit C** ¶ 1.1.9. Importantly, Plaintiff's name is not listed on the list of people who opted out the Deshay Case.  Accordingly, Plaintiff's failure to opt out of the Deshay Class is further evidence that Plaintiff is a member of the Deshay Class, and therefore has released his TCPA claims under the terms of the Deshay Class Action Settlement Agreement. *See Demint v. NationsBank of Fla., N.A.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) (plaintiffs who failed to effectively opt out of the class were class members who released their claims under the terms of the class action's final judgment). Being that the definition of "Releasing Parties" includes "Class Members who do not timely opt out," Plaintiff is bound by the terms of the Deshay Class Action Settlement Agreement.  See **Exhibit C** ¶ 1.1.35. Moreover, Defendants Makai and KWRI are included within the definition of "Released Parties" in the terms of the Deshay Class Action Settlement Agreement, which includes KWRI "and any respective corporate parent, subsidiary, or affiliated entities."[5] See **Exhibit C** ¶ 1.1.34. Thus, the identity of the parties element is met.

---

[4] Under the Deshay Class Action Settlement Agreement, "Class Period" timeframe is specified as "from May 2, 2014 through the date the Court enters the Preliminary Approval Order."  The Preliminary Approval Order was entered on December 12, 2022.  As mentioned above, Plaintiff specifies two text messages sent to him by Mr. Maruri – one on August 2, 2022 and the other on December 14, 2022.  However, as indicated in **Exhibit E**, the message Plaintiff alleges was sent to him on December 14, 2022 was actually sent to him on November 10, 2022.  Therefore, because both text messages were sent prior to the December 12, 2022 Preliminary Approval Order, even if they had constituted solicitations (which they do not), Plaintiff's claims would have accrued within the Class Period.
[5] Makai is both a subsidiary and an affiliated entity of KWRI.

Isaacs v. Makai Southeast, LLC, et al.
Case No.: 23-cv-81393-RLR

The last element necessary to preclude a claim pursuant to res judicata is "identity of the quality or capacity of the person for or against whom the claim is made." In both cases, the Plaintiff is seeking damages from KWRI. Further, Plaintiff in the instant case is included as class member and Releasing Party in the Deshay Class Action Settlement Agreement. Therefore, the fourth and final requirement for res judicata is met. As the claims for TCPA clearly meet the elements for establishing res judicata, they must be dismissed with prejudice.

C. **Plaintiff's RICO Claim (Count II) Must be Dismissed**

The Amended Complaint attempts to bring a cause of action under the Racketeer Influenced Corrupt Organization Act in line with 18 U.S.C. § 1962(c), but fails to properly do so. In this regard, Plaintiff baselessly and dogmatically alleges that "Defendants formed a telemarketing enterprise meant to exploit homeowners by aggressively pursuing real estate transactions in a manner that violated federal code." Am. Compl. ¶ 62. Plaintiff claims that the enterprise collectively intended to "force the sale of Plaintiff's home, in disregard of FHA, *force majeure* contract clauses, Arbitration and Mediation provisions, and TCPA…." and "also violated traditional RICO Telemarketing Fraud and Email Fraud regulations, including 18 U.S.C. § 2325." *Id.* ¶¶ 62-63.

Plaintiff's conclusory allegations of civil conspiracy under 18 U.S.C. § 1962(c) suffer from a number of pleading deficiencies. Most notably, Plaintiff's allegations are devoid of any specifics that bring Makai within the ambit of the RICO statutes and otherwise fail to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b) that applies to these claims.

i. **Failure to Allege RICO Elements**

Four elements are required to establish a violation under 18 U.S.C. § 1962(c): "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (citation omitted). Two acts of racketeering activity (i.e. "predicate acts") must be committed to meet the "pattern of racketeering activity" threshold. *Id.* at 1283 (internal citations omitted). Plaintiff's RICO claim also fails given the Amended Complaint's failure to adequately plead the underlying violation of the Federal RICO statute. See *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1227 n.4 (S.D. Fla. 2015). As demonstrated herein, Plaintiff failed to demonstrate even a single predicate act of racketeering activity pursuant to 18 U.S.C. § 1961(1). As such, Plaintiff fails to substantively plead RICO properly.

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

      a.    <u>The Amended Complaint fails to allege racketeering activity.</u>

Under 18 U.S.C. § 1961(1), racketeering activity is defined to include, in pertinent part, certain specific federal statutory violations.  Plaintiff's RICO cause of action alleges federal statutory violations under: (1) the FHA; (2) the TCPA; and (3) 18 U.S.C. § 2325.  The foregoing Acts/statute are not identified within the RICO statute's definition of racketeering activity.

      b.    <u>The Amended Complaint fails to allege predicate acts.</u>

The Amended Complaint is wholly devoid of allegations constituting any racketeering activity, let alone the statute's required two or more predicate acts. *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Given Plaintiff's failure to sufficiently plead a RICO statutory violation, his RICO claim fails. *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1227 n.4 (S.D. Fla. 2015) ("Plaintiffs cannot state a claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

      c.    <u>The Amended Complaint fails to allege sufficient duration of time.</u>

Despite Plaintiff's conclusory allegation that the predicate acts were engaged in for more than six (6) months, the specific allegations in Plaintiff's Amended Complaint, if taken as true, do not support same.  In this regard, Plaintiff alleges that the first text message he received from Mr. Maruri was on August 2, 2022 and the last one received was on December 14, 2022.  According to Plaintiff's own allegations, the text messages were received in a timespan of just over four (4) months.  However, as discussed herein, the text message allegedly received on December 14, 2022 was actually received on November 10, 2022.  Therefore, the two text messages were sent approximately three (3) months apart.  Regardless, the duration of time does not meet the continuity criteria necessary under RICO to maintain said cause of action.  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) ("We measure a "substantial period of time" in years, not in weeks.").

      d.    <u>The Amended Complaint fails to allege interstate activity.</u>

In addition to the foregoing, Plaintiff's RICO cause of action alleges that the text messages "were sent interstate from Florida to a Pennsylvania exchange."  Am. Compl. ¶ 65.  Pursuant to 18 U.S.C. § 1962, in order to properly plead a RICO claim, the prohibited activity must affect "interstate or foreign commerce."  Plaintiff attempts to satisfy this element by alleging that his cell phone number begins with an out-of-state area code, but misses the mark completely, as such an allegation does not indicate that the purported prohibited activity affected interstate commerce. On the other hand, the Amended Complaint explicitly alleges that Plaintiff is a resident of Palm

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

Beach County, Florida, the same county where Makai maintains its principal place of business. *Id.* ¶¶ 8, 10.  Therefore, the Amended Complaint fails to allege the necessary element of affecting interstate commerce.

### ii. Failure to Comply with Pleading Requirements

In the Eleventh Circuit, civil RICO claims "are essentially a certain breed of fraud claims," and a plaintiff brining such a claim is required to plead "with an increased level of specificity" under Fed. R. Civ. P. 9(b). *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citations omitted). To satisfy Rule 9(b), RICO claims must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id.* at 1316-17 (citation omitted) (affirming dismissal of civil RICO claims where plaintiff failed to plead with the required level of specificity). Further, to the extent the pleading incorporates multiple defendants into the RICO claim, "the complaint should inform each defendant of the nature of his [or her] alleged participation in the fraud." Id. at 1317 (citation omitted) (affirming district court dismissal of civil RICO claims where plaintiff failed to plead claims with the required level of specificity).

### a. The allegations against Defendants are improperly commingled.

Critically, the Amended Complaint fails to inform the Defendants, all of which are named in the RICO claim, what role each allegedly maintained in any purported conspiracy against Plaintiff. Rather, Count II lumps all Defendants into one without distinction. Such form of pleading is improper. See *Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994)). Based on the inadequately pled RICO cause of action, Makai cannot possibly defend the allegations against it without know what conduct it is alleged to have committed in furtherance of the purported "conspiracy." The Amended Complaint's lack of specificity concerning the alleged "conspiracy" is fatal to its RICO claim. *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)) (noting civil RICO allegations "must be made with specificity and cannot lump together of all the defendants"); see also *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.").

"Because fair notice is '[p]erhaps the most basic consideration' underlying Rule 9(b), the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.'  Therefore, in a case involving multiple defendants . . . 'the complaint should inform

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

each defendant of the nature of his alleged participation in the fraud.'" *Id.* (alterations in original) (internal citations omitted) (quoting *Viacom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)).   The Amended Complaint improperly "lumps" Defendants together throughout, thus failing to provide proper notice of the alleged misconduct.

b.    <u>The allegations are vague and conclusory.</u>

The Amended Complaint's contradictory, irrelevant, and conclusory assertions fall woefully short of Rule 9's strict pleading standard applicable to RICO claims, and therefore warrant dismissal of said cause of action. To satisfy the Rule 9(b) standard, a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud.  *Id.* (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).  Plaintiff's RICO claim indisputably fails to meet the foregoing standard in that it is devoid of any specificity as to time, place, content, substance, or any details regarding the alleged misrepresentations.

### D.    <u>Plaintiff's Breach of Contract Claim (Count III) Must be Dismissed</u>

Plaintiff maintains that Makai breached the Sale Agreement by not engaging in ADR prior to filing the underlying lawsuit.  Am. Compl. ¶¶ 75-83. Plaintiff's Breach of Contract claim fails as it is barred by the litigation privilege.  Under the litigation privilege, a plaintiff cannot bring a claim against another party based on that party's claims against it.  *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin."). Here, Plaintiff is doing just that.  As conceded by Plaintiff, Makai is attempting to enforce the Sales Agreement against Plaintiff.  Am. Compl. ¶ 83. The underlying litigation brought by Makai against Plaintiff serves as the sole basis for the Breach of Contract claim.  In other words, Plaintiff is suing Makai for suing him.  Such retaliatory litigation is specifically prohibited under Florida law.  "The litigation privilege may be addressed at the motion to dismiss stage where 'the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action.'" *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2023 WL 2924746, at *5 (M.D. Fla. 2023) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004)) (citations and internal quotation marks omitted). Accordingly, Plaintiff's Breach of Contract claim must be dismissed.

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

### E.    Plaintiff's Abuse of Process Claim (Count IV) Must be Dismissed

Plaintiff's claim for abuse of process fails due in part to its failure to satisfy the required elements.  To prevail on such a claim, Plaintiff must allege "(1) willful and intentional misuse of process for some wrongful or unlawful object, or collateral purpose, and (2) that the act or acts constituting the misuse *occurred after the process issued*." *Kodsi v. Branch Banking & Tr. Co.,* 2018 WL 830117, at *4 (S.D. Fla. 2018) (citing *Miami Herald Pub. Co., Div. of Knight-Ridder v. Ferre*, 636 F. Supp. 970, 974-75 (S.D. Fla. 1985); *Aulicino v. McBride*, 2017 WL 1113475, at *3 (M.D. Fla. 2017); *Blue Dolphin, Inc. v. United States*, 666 F.Supp. 1538, 1541 (S.D. Fla. 1987) (to sustain an abuse of process claim, "there must be some allegation that after suit has been legally filed, the process of the Court had been improperly used"); *see also Steinhilber v. Lamoree*, 825 F.Supp. 1003, 1006 (S.D. Fla. 1992)).

Plaintiff's Abuse of Process claim hinges on the alleged "undisputed fact that Defendants willfully violated ADR to injure Plaintiff."  *See* Am. Compl. ¶ 86.  Specifically, as explained in the prior count for Breach of Contract, the Abuse of Process claim arises from Plaintiff's allegation that "Defendants filed multiple lawsuits in various jurisdictions, all prohibited by the Arbitration and Mediation clauses." See Am. Compl. ¶ 82.  In other words, the crux of Plaintiff's Abuse of Process claim is based entirely on Makai filing the underlying lawsuit against Plaintiff allegedly in violation of the ADR provision in the Sales Agreement. Plaintiff's Abuse of Process claim is inherently fatal as the alleged abuse of process is the actual filing of the underlying lawsuit.  To be sure, Plaintiff does not allege that Makai's "abuse of process" is some event after the commencement of the lawsuit.  Rather, Plaintiff's allegation essentially reverses the criteria by alleging that Makai not participating in ADR *prior to* filing the underlying lawsuit was allegedly an abuse of process.

Further, as the allegations underlying the Abuse of Process claim revolve around actions related to court processes, the claim is barred by the litigation privilege. *E.g.,Western Surety Co. v. Steuerwald*, 2017 U.S. Dist LEXIS 6909, *4 (S.D. Fla. Jan. 17, 2017) (holding that any act with some relation to a judicial proceeding is protected by the litigation privilege, and that, accordingly, party's entering into a settlement agreement could not be basis for an abuse of process claim); *See generally*, *Kodsi*, 2018 WL 830117 (dismissing abuse of process claim based on litigation privilege).

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

Being that Plaintiff's Abuse of Process claim is based on an alleged "abuse of process" that took place prior to the commencement of the commencement of the litigation process, Plaintiff's Abuse of Process claim fails and must be dismissed.

**F.**      **Plaintiff's Violation of the Fair Housing Act Claim Pursuant to 42 U.S.C. § 3604 (Count V) Must be Dismissed**

The Amended Complaint sets forth claims of FHA violations based on national origin and disability.  With regard to national origin, Plaintiff asserts that Defendants discriminated against person "like Plaintiff based on their national origin, by unduly dismissing the disruption and peril caused by war events affecting those of a particular national origin. Defendants practice of choosing to disregard a foreign war, and even disputing its existence, amounts to national origin discrimination, in that it disproportionately harms and burdens individuals on the basis of their national origin." Am. Compl. ¶ 97.  Plaintiff alleges that he obtained permanent resident status in Ukraine in 2012.  As to disability, Plaintiff claims that Defendants exploited his disabilities "with the sole purpose of 'wearing down' a disabled Plaintiff. *Id.* ¶ 98.

According to the Amended Complaint, Defendants violated 42 U.S.C. § 3604, which prohibits: (1) Denial of housing or obstruction of housing transactions based on the national origin or disability of potential buyers; (2) Differential treatment in sale conditions or provision of services due to the buyer's national origin or disability. Am. Compl. ¶ 99.  Even assuming momentarily that Plaintiff's allegations are true, which they are not, same cannot sustain a claim for FHA under the foregoing provisions, both of which preclude discrimination against [potential] *buyers*.  Here, Plaintiff is a seller, and therefore not protected by the very statute he stands behind for his FHA claim.

Plaintiff's FHA claim also fails to establish discrimination based on national origin as the Amended Complaint is devoid of the allegations necessary to establish that Plaintiff has the ability to bring a discrimination claim based on national origin.  To that end, the Amended Complaint merely alleges that Plaintiff had obtained permanent resident status in 2012, but fails to mention if he currently maintains permanent resident status in Ukraine.  Furthermore, Plaintiff's permanent resident status fails to meet the criteria for national origin discrimination, which requires that an aggrieved person under national origin be a natural born citizen of said country.  Moreover, Plaintiff fails to establish how Defendants' determination that the war in Ukraine did not justify enacting the *force majeure* provision of the Sales Agreement amounts to national origin discrimination.

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

### G.    Plaintiff's Violation of the Sherman and Clayton Antitrust Acts Claims Pursuant to 15 U.S.C. §§ 1-2 & 15 (Count VI) Must be Dismissed

Count VI of the Amended Complaint attempts to allege causes of action for violations under the Sherman and Clayton Antitrust Acts.  Am. Compl. ¶¶ 102 – 114.  Specifically, Count VI alleges that Makai is somehow responsible for Zillow's platform, namely, Zillow's alleged policy of not promoting FSBO homes.  The Amended Complaint's fails to state a claim for Violation of the Sherman and Clayton Antitrust Acts due to the significant gap in the allegations necessary to sustain the cause of action.  Count VI of the Amended Complaint is exclusively based on Plaintiff's gripes with the manner in which **Zillow** promotes FSBO homes.  *Id.* ¶ 104.  Plaintiff alleges earlier in his pleading that "since 2021, **Zillow** relegated FSBO listings to a seldom viewed section of their website. Zillow has the largest market share, around 60%, of internet users searching to locate homes for sale in Florida." *Id.* ¶ 16 (emphasis added). Critically, the Amended Complaint is devoid of any allegation that Makai controls Zillow's platform such that it could be responsible for Plaintiff's allegations against Zillow.

Further, Plaintiff lumps Makai and KWRI in violation of the Federal Rules of Civil Procedure.  *See, e.g., Jones v. Salley*, 2013 WL 1277892 (M.D. Fla. 2013); *Preyer v. McNesby*, 2009 WL 1605537 (N.D. Fla. 2009).   The commingling makes it difficult, if not impossible, to respond to Count VI.  Accordingly, in addition to the substantive reasons as set forth, *infra*, Count VI should be dismissed as a result of Plaintiff lumping Defendants together in the subject cause of action.

### H.    Plaintiff's Request for Injunctive Relief Must be Dismissed

Plaintiff's claim for injunctive relief fail as it is improperly pled. "A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Hoewischer v. Park Shopping, Ltd*., 2011 WL 4837259, 3 (M.D. Fla. 2011).  None of the foregoing factors are present in the Amended Complaint.  Indeed, the paragraph below represents the entirety of the request for permanent injunction from page 35 of the Amended Complaint:

Isaacs v. Makai Southeast, LLC, et al.
Case No.: 23-cv-81393-RLR

> The Court shall enter a permanent injunction, enjoining and
> restraining Defendants from further violations of the Sherman Act,
> FHA, TCPA and/ or RICO. Defendants shall be enjoined from
> engaging in abuse of process, including but not limited to ongoing
> and/or future breaches of the Arbitration Clause, Mediation Clause,
> and or Force Majeure Clause.

Second, injunctive relief is only appropriate when tied to an underlying cause of action.
*Feingold*, 2008 U.S. Dist. LEXIS 80468, at *6-7 ("A plaintiff must prevail on an underlying claim
in order to be entitled to [injunctive] relief."). As Plaintiff's claims fail for the many reasons stated
herein, there can be no injunctive relief relating to the same. For any one of these reasons,
Plaintiff's claims for injunctive relief should be dismissed.

## I.    **Other Pleading Fatalities Warrant Dismissal**

Plaintiff's Amended Complaint violates the federal pleading standard, which requires a
"short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.
P 8(a)(2).  The purpose of the pleading rules, as the Eleventh Circuit has put it, is:

> To require the pleader to present his claims discretely and succinctly
> so that, his adversary can discern what he is claiming and frame a
> responsive pleading, the court can determine which facts support
> which claims and whether the plaintiff has stated any claims upon
> which relief can be granted, and at trial, the court can determine that
> evidence which is relevant and which is not.

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). A
complaint that violates these requirements is considered a "shotgun" pleading. *Id.* In *Weiland*, the
Eleventh Circuit delineated the various types of shotgun pleadings, one of which is: "Complaints
that… are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not
obviously connected to any particular cause of action. *Id.* at 1322-23. Plaintiff's Amended
Complaint falls into this category.

Plaintiff's Amended Complaint violates the minimum pleading requirements of Fed. R.
Civ. P. 8, as it is a shotgun pleading, which is replete with conclusory, vague, and immaterial facts
that are not connected to a cause of action. The conclusory and vague facts make it difficult to
discern the grounds upon which relief is sought.

Furthermore, the Amended Complaint contains a myriad of allegations that lack relevance
and are speculative. The Amended Complaint is laced with numerous irrelevant diatribes
discussing politics, the war in Ukraine, and the real estate market. These allegations are not
relevant to any of Plaintiff's claims. Despite the lengthy irrelevant paragraphs, the allegations do

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

not include several material facts.  As such, Plaintiff's allegations fail to meet the minimum
pleading requirement and should be stricken.

Additionally, almost every paragraph of the Amended Complaint contains several
statements within each.  Stated differently, each paragraph contains a lengthy (and often irrelevant)
narrative that is far from a succinct, short and plain statement, further in violation of the Rules.
Finally, Plaintiff's Amended Complaint contains various unnumbered paragraphs in violation of
the Rules.

## II.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.   Legal Standard Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) provides that a complaint is properly dismissed where there is a lack of
subject matter jurisdiction. *See, e.g., Cherry v. F.C.C.*, 2009 WL 4668405, at *5 (M.D. Fla. 2009)
(citation omitted).  Further, similar to Rule 12(b)(6), bald conclusory allegations are equally
insufficient under Rule 12(b)(1). *See, e.g., Tomelleri v. Natale*, 2020 WL 5887151, at *2 (S.D. Fla.
2020); see also *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. 2020) (dismissing TCPA
case under Rules 12(b)(1) and 12(b)(6) because "[b]ased on the deficiencies identified under Rule
12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing).

### B.   Plaintiff Lacks Standing to Bring the Claims Asserted

Article III of the U.S. Constitution confers on the federal judiciary the power to adjudicate
only certain cases and controversies. To establish Article III standing, Plaintiff must plausibly
allege that: (i) he suffered a concrete and particularized "injury in fact," (ii) there is a causal
connection between her injury and the conduct complained of (i.e., causation or "traceability"),
and (iii) his injury must be capable of being redressed by a favorable decision (i.e.,
"redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Lexmark
Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). As the party invoking
federal jurisdiction here, Plaintiff "bears the burden of establishing [all of] these elements." *Lujan*,
504 U.S. at 561.

Plaintiff lacks Article III standing because he alleges only a technical statutory violation
combined with, at most, *de minimis* injury (if any at all) that fails to rise to the level of actual,
concrete injury-in-fact. To establish standing (and thus federal jurisdiction) under Article III, a
plaintiff bears the burden of showing that he (1) … has suffered an "injury in fact" that is (a)
concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the
injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

The injury-in-fact requirement is the "irreducible constitutional minimum" for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) citing *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979). Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Id.* at 819.

In this case, Plaintiff does not plead a single cognizable injury in the Amended Complaint, either the federal or state claims, other than the alleged naked statutory violations. Because Plaintiff does not allege even a specific *de minimis* injury, his Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. *Friends of the Earth*, 528 U.S. at 180.

C.     **Plaintiff's Claims Are Compulsory Counterclaims**

To the extent Plaintiff is able to maintain any of his state-law claims, said claims are compulsory to the Underlying Action.  A cause of action is compulsory if it exists at the time the answer is filed in the underlying action and "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). "A counterclaim which is compulsory but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974).  In this regard, the state-law claims in this lawsuit arise out of the same facts and circumstances as the claims in the Underlying Action.  As additional support, in response to counsel for Makai's request for an extension to respond to the Amended Complaint, Plaintiff's counsel refused to agree to same based on the deadlines in the Underlying Action and the ties between both cases.

D.     **There Is No Federal Jurisdiction**

The dismissal of all federal claims does not automatically deprive the federal court of supplementary jurisdiction over remaining state-law claims. *See Palmer v. Hospital Authority of Randolph County*, 22 F. 3d 1559, 1568 (11th Cir. 1994). However, when federal claims are dismissed before trial, the preferred course for a Federal Court to follow is to decline jurisdiction over the state-law claims, especially when the plaintiffs can refile their complaint in the state court

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

without exposing their state-law causes of action to a statute of limitations defense. 28 U.S.C §
1367(c) and (d); *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7.  Further, based on
the above argument, any state law claims that survive this Motion could be adjudicated in the
Underlying Action. In accordance with the tenets of federalism and of comity, state courts should
be the primary deciders of questions of state-law. *See Hardy v. Birmingham Bd. of Educ.,* 954 F.2d
1546, 1553, (11th Cir. 1992).

　　　　For the reasons set forth herein, Plaintiff cannot state a claim under federal law.  As such,
to the extent any of Plaintiff's state law claims withstand this Motion, it is respectfully requested
that this Honorable Court dismiss the state law claims alleged in Counts III and IV of Plaintiff's
Amended Complaint and decline to exercise supplemental jurisdiction over same.

　　　　**WHEREFORE**, Defendant, MAKAI SOUTHEAST, LLC, respectfully requests that this
Court enter an Order dismissing Plaintiff's Amended Complaint, along with any and all further
relief that this Court deems is just and equitable.

## <u>CERTIFICATE OF SERVICE</u>

　　　　I HEREBY CERTIFY that a true copy of the foregoing was served via E-Portal to everyone
on the attached service list this 6th day of December, 2023.

> LYDECKER LLP
> 2300 Glades Road, Suite 340W
> Boca Raton, FL  33431
> (786) 587-1899 / (305) 416-3190
>
> By:　　 */s/ Eric L. McAliley*
> ERIC L. McALILEY, ESQ.
> Florida Bar No.: 174343
> E-mail: elm@lydecker.com
> ILANA J. MOSKOWITZ, ESQ.
> Florida Bar No.:  126094
> Email:  ijm@lydecker.com
> Secondary e-mail: christy@lydecker.com

Isaacs v. Makai Southeast, LLC, et al.
Case No.:  23-cv-81393-RLR

## <u>SERVICE LIST</u>

Ayelet Faerman, Esquire
FAERMAN LAW, P.A.
3859 NW 124th Ave.
Coral Springs, FL  33065
ayelet@faerman.law
***Counsel for Plaintiff***

Keith Mathews, Esquire
AMERICAN WEALTH PROTECTION
1000 Elm St., Suite 803
Manchester, NH 03105
keith@awplegal.com
***Counsel for Plaintiff – Pro Hac Vice***

Jose I. Baldor, Esquire
Matthew Maranges, B.C.S.
PETERSON, BALDOR & MARANGES, PLLC
8000 SW 117th Ave., Suite 206
Miami, FL 33176
jose@pbmlegal.net
matt@pbmlegal.net
lourdes@pbmlegal.net
elizabeth@pbmlegal.net
***Counsel for Equestrian Palms, LLC***