UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DR. JEFF ISAACS, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER WILLIAMS REALTY WELLINGTON),
EQUESTRIAN PALMS, LLC,

    Defendants.
_____/

Case No. 9:23-cv-81393-RLR

**DEFENDANT KWRI'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, KELLER WILLIAMS REALTY, INC. ("KWRI"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1), 12(b)(6) and Local Rule 7.1, moves to dismiss KWRI from this case and to dismiss all claims asserted against KWRI in plaintiff's first amended complaint ("FAC") [DE 25], and in support states as follows:

**INTRODUCTION**

Plaintiff is embroiled in a personal dispute and state court lawsuits with both co-defendants, Equestrian Palms, LLC ("Equestrian") and Makai Southeast, LLC d/b/a Keller Williams Realty Wellington ("KW Wellington") over a property sale. *See* Equestrian's motion to dismiss and exhibits 1-2 attached thereto [DE 29 & 29-1]. KWRI has absolutely no role in those disputes nor any relationship to them. However, plaintiff now seeks to escalate and migrate those personal disputes into this federal court and involve KWRI. He has filed a confusing, shotgun FAC, all claims of which directed at KWRI[1] should be dismissed.

---

[1] Count III for breach of contract is not directed at KWRI. Therefore, this motion seeks dismissal of KWRI from Counts I-II and IV-VI, as well as plaintiff's request for a permanent injunction.

The FAC improperly refers to "Keller Williams," "Defendants," "Makai Southeast, LLC (d/b/a Keller Williams Realty Wellington)," "KW" and KWRI seemingly as interchangeable entities. It should be dismissed on this basis alone. To be clear, KWRI is an entirely separate company from KW Wellington. KWRI is not KW Wellington nor does it do business as that entity. Therefore, plaintiff's misguided attempt to entangle KWRI in his disputes with these separate entities should be rejected by this Court. In reality, KWRI has no involvement at all with the facts alleged in this case. Just because "Keller Williams Realty, Inc." has a similar name to "Keller Williams Realty Wellington" does not mean they are the same companies. This Court should not force KWRI to remain in this lawsuit, which is apparently based almost entirely on the existence of a similar sounding name.

## SUMMARY OF THE ALLEGATIONS

The facts specifically alleged <u>against KWRI</u> in the FAC are few and far between. First and foremost, the FAC does not allege any facts explaining KWRI's relationship to either co-defendant. Rather, it appears that plaintiff has just assumed, incorrectly, that KWRI is somehow related to KW Wellington sufficiently enough to repeatedly group these entities together for purposes of liability across all the FAC's claims.

Plaintiff alleges receipt of two text messages. [DE 25 ¶¶ 13-14]. However, the FAC selectively quotes words from the text messages and is misleading as to timing of the messages. The entire text message document is attached to co-defendant KW Wellington's motion to dismiss as an exhibit, Exhibit E thereto.[2] [DE 38-5].

---

[2] *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the

Plaintiff alleges that on August 2, 2022 he received the first text message "from Keller Williams." [DE 25 ¶ 13]. However, the allegations in the FAC and the state court lawsuit exhibits referenced in Equestrian's motion to dismiss[3] [DE 29-1] make it clear that this message did not come from KWRI. The text message itself indicates it is from Nico Maruri of KW Wellington ("*this is Nico*"), who was a listing agent for the plaintiff. [DE 29-1 at Exs. 1 & 2]. He is also the "Agent Nico" referenced in the FAC at paragraphs 15, 17-20, 54 and 64. The FAC does not allege any facts concerning Agent Nico's (non-existent) relationship with KWRI.

Plaintiff next vaguely alleges that "[t]he messages continued through December 14, 2022." [DE 25 ¶ 14]. Under this statement is text from a purported second text. However, paragraph 14 is misleading because the cited text was not from any text message made on December 14, 2022. Rather, the cited text in FAC paragraph 14 is clearly from a text message made on November 10, 2022 not December 14, 2022. [DE 38-5]. This November 10, 2022 text was also from Agent Nico of KW Wellington, not KWRI.

The FAC asserts that "[o]n December 14, 2022, Plaintiff and [KW Wellington] entered into an 'Exclusive Sale' contract in which Keller Williams was granted exclusive rights to sell his Homeland property." [DE 25 ¶ 16]. Again, the allegations in the FAC and the state court lawsuit exhibits referenced in Equestrian's motion to dismiss [DE 29-1 at Exs. 1 & 2] make it clear that the "Keller Williams" being referenced in paragraph 16 is *not* KWRI but rather KW Wellington and/or Agent Nico, who were the listing agent(s). To be clear, KWRI is not mentioned anywhere

---

motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

[3] *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that a court can take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment).

3

in the 78 pages of exhibits attached to Equestrian's motion to dismiss, which are the state court litigation documents relevant to plaintiff's property dispute. [DE 29-1]. Furthermore, KWRI is not mentioned anywhere in the text messages attached to KW Wellington's motion to dismiss, which are central to plaintiff's claims.

Paragraphs 17 and 18 of the FAC also make it clear that the "Exclusive Sale" contract referenced in paragraph 16 of the FAC, was between plaintiff and KW Wellington and/or Agent Nico. The contract did *not* involve KWRI. *See* DE 25 ¶¶ 17-18 (stating that "Agent Nico initialed and signed" provisions allegedly binding "[Agent Nico], and []KW Wellington" … and that "[a]fter obtaining their exclusive agreement, [Agent Nico and/or KW Wellington] showed Plaintiff's home on two occasions …") While the FAC often confusingly refers to "KW" without providing any specific description as to what the "KW" abbreviation is intended to reference, it is clear that the "KW" being referenced throughout the FAC is KW Wellington, not KWRI. In fact, when the FAC at paragraph 18 alleges that "KW" was listed as a "transaction agent" [DE 25 ¶ 18] and that term is compared to the agreement shown in the exhibits to Equestrian's motion to dismiss, [DE 29-1 at 22 (specifically paragraph 20 entitled "Additional Terms," which states "1) Nicolas Maruri with KW Realty Wellington, will be representing Seller and Buyer as a <u>transaction agent</u>" (emphasis added)], it is obvious that the abbreviation "KW" as it is used in the FAC is referencing KW Wellington throughout and not KWRI.

As mentioned in FAC paragraphs 9 & 73, KWRI was previously involved in a Telephone Consumer Protection Act ("TCPA") class settlement in *Deshay v. Keller Williams Realty, Inc.*, Case No.: 2022CA000457 (Indian-River County, Florida), wherein all liability for any allegedly violative text messages referenced in the FAC prior to December 12, 2022 was released by court

1068566\315488818.v1

order. *See Deshay* settlement documents, attached hereto as Exhibit 1. The *Deshay* case was dismissed with prejudice on April 19, 2023. *Id*.

## MEMORANDUM OF LAW

**I.      Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6).**

Count I against KWRI should be dismissed pursuant to Rule 12(b)(6) because it fails to state either a direct or vicarious liability TCPA claim against KWRI. Count I fails to even allege "more than one" text message, which is a required element to have a private right of action under TCPA Section 227(c).

**A.      Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Direct Liability TCPA Claim Against KWRI.**

Count I should be dismissed as to KWRI because plaintiff's FAC does not plausibly allege that plaintiff received any text messages sent by KWRI. Simply put, the FAC fails to show that KWRI has any connection or involvement in the sending of the text messages at issue period. Rather, as detailed above, the FAC only alleges that the text messages were sent from Nico Maruri of KW Wellington, or "Agent Nico," who was a listing agent for the plaintiff.

In some circumstances, a text message can qualify as a "call" within the meaning of the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *See In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6583 (2013). "[P]ersons or entities, such as third-party[ ]retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call" do *not* "initiate a[] telephone call" within the meaning of the TCPA. *Id*. Accordingly, "the mere fact that a company produces and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product." *Id*.

5

Here, the FAC fails to allege any facts that suggest KWRI could be held directly liable pursuant to the TCPA. While plaintiff may claim throughout the FAC that "Defendants" or "Keller Williams" sent the text messages at issue, the facts he pleads do not plausibly support the contention that KWRI itself was involved in sending the texts in any way. *See Gayle v. Bill Holt Auto, Inc.*, 2023 U.S. Dist. LEXIS 171179, *25-28 (N.D. Ga. 2023) (granting 12(b)(6) motion to dismiss filed by Mitsubishi and rejecting direct liability TCPA claim where complaint similarly alleged "Defendants" sent the text messages at issue but messages themselves only referenced a solicitation from a local Mitsubishi dealership co-defendant).

### B. Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Vicarious Liability TCPA Claim Against KWRI.

Count I is vague as to whether plaintiff is also alleging a vicarious liability TCPA claim against KWRI. Paragraph 58 of Count I only states: "Defendants made these calls directly, encouraged them directly, and/or were responsible under the principals of vicarious liability and *respondeat superior*." [DE 25 ¶ 58]. There are no other allegations regarding vicarious liability.

Count I should be dismissed as to KWRI because it does not allege any relationship whatsoever existed between KWRI and either co-defendant, such that vicarious liability might be plausible. The FAC also entirely fails to allege any facts concerning Agent Nico's relationship with KWRI. Overall, the FAC fails to plead any supporting facts to establish an agency relationship between KWRI and the sender of the texts. Therefore, the FAC falls woefully short of what courts nationwide require to state a vicarious liability TCPA claim in this situation. *See Rahimian v. Adriano*, 2022 U.S. Dist. LEXIS 46437, *10-15 (D. Nev. 2022) (dismissing vicarious liability TCPA claims against Century 21 based on calls made by local realtor under Rule 12(b)(6)); *Dave v. Century 21 Real Estate, LLC*, 2021 U.S. Dist. LEXIS 225282, *11-14 (D.S.C. 2021) (same); *Valdes v. Nationwide Real Estate Execs.*, 2021 U.S. Dist. LEXIS 100931, *8-12 (C.D. Cal. 2021)

(dismissing vicarious liability TCPA claims against real estate agency for local realtor calls under Rule 12(b)(6)); *DeClements v. RE/MAX LLC*, 2020 U.S. Dist. LEXIS 253299, *5-11 (D. Colo. 2020) (dismissing vicarious liability TCPA claims against RE/MAX for calls made by RE/MAX franchisees under Rule 12(b)(6)); *Declements v. Americana Holdings LLC*, 2020 U.S. Dist. LEXIS 130213, *2-3 (D. Ariz. 2020) (dismissing vicarious TCPA claims against real estate agency owner for calls made by agents under Rule 12(b)(6)). All of the above cited cases involved pleadings that had far more facts pled in support of vicarious liability than the FAC here, and all of them still resulted in dismissal under Rule 12(b)(6).

  **C. Count I Should be Dismissed as to KWRI Pursuant to Rule 12(b)(6) Because it Fails to Allege "More Than One" Text Message Sufficient for a Private Right of Action.**

Count I should also be dismissed as to KWRI because while the FAC appears to allege two text messages, [DE 25 ¶¶ 13-14], it is misleading. As shown by the entire text message document attached to co-defendant KW Wellington's motion to dismiss exhibit, the first text message (allegedly sent and received on August 2, 2022) starts a chain of text messages that go through December 14, 2022. [DE 38-5]. However, none of the text messages after August 2, 2022 can plausibly be alleged to be a "solicitation" to which plaintiff "object[ed]." Rather, all of the text messages after August 2, 2022 appear to be elicited by plaintiff in an attempt to establish a business relationship with Agent Nico.

Count I is brought pursuant to "[47] U.S.C. 227(c)" only, [DE 25 at Count I, and Section 227(c) requires a "telephone solicitation." *See Mierzwicki v. Citigroup, Inc.*, 2015 U.S. Dist. LEXIS 178509, *5-6 (S.D. Fla. 2015) citing 47 U.S.C. § 227(c) (concerning "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object"); *see also Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (noting

that § 227(c) "prohibits an entity from making more than one 'telephone solicitation' to the same person within a twelve-month period."). Indeed, the Eleventh Circuit in *Meadows* affirmed the district court's grant of summary judgment on a 47 U.S.C. § 227(c)(5) claim where the calls at issue did not fall under the definition of "telephone solicitations" contained in the statute.

It is abundantly clear from the text message chain that plaintiff did not object to any of Agent Nico's texts beyond possibly the original August 2, 2022 text message. [DE 38-5]. To the contrary, the entire chain of text messages through December 14, 2022, appears to be prompted by plaintiff. Count I certainly does not plausibly allege that every message in the chain is a "solicitation" to which plaintiff "object[ed]." Rather, a simple read through of the text messages demonstrates that such an interpretation is not only implausible, but entirely unreasonable. [DE 38-5].

Furthermore, Section 227(c) of the TCPA only provides a private right of action to those who have received "<u>more than one</u> telephone call within any 12-month period by or on behalf of the same entity …" 47 U.S.C. § 227(c)(5) (emphasis added). At best, the August 2, 2022 text message referenced in FAC paragraph 13 might qualify for one. [DE 25 ¶ 13]. However, the November 10, 2022 text message referenced in FAC paragraph 14, [DE 25 ¶ 14], certainly does not constitute a solicitation to which plaintiff objected, nor does anything sent on December 14, 2022 either. [DE 38-5].

This matters as to KWRI because, as mentioned in FAC paragraphs 9 & 73, KWRI was previously involved in a TCPA class settlement in *Deshay v. Keller Williams Realty, Inc.*, Case No.: 2022CA000457 (Indian-River County, Florida), wherein all liability for any allegedly violative text messages referenced in the FAC prior to December 12, 2022 was released by court order. *See Deshay* settlement documents, attached hereto as Exhibit 1. The "Class Period" in the

8

*Deshay* settlement spanned from May 2, 2014 to December 12, 2022. *See* Exhibit 1, Class Settlement Agreement ¶ 1.1.12 and Preliminary Approval Order.

Plaintiff's FAC, at paragraph 73, appears to acknowledge that plaintiff's claims fall within the *Deshay* settlement definitions. [DE25 ¶ 73]. However, plaintiff appears to be mistaken about the timing of the Class Period and also appears to be under the assumption that his claims do not fall within it. Regardless, per plaintiff's own allegations in the FAC, plaintiff appears to have been a member of the "Class." *See* Exhibit 1, Class Settlement Agreement ¶ 1.1.9 and Final Approval Order ¶ 4(a). Therefore, when the *Deshay* case was dismissed with prejudice on April 19, 2023, any claim plaintiff may have had against KWRI as to any text messages prior to December 12, 2022 were released. *See* Exhibit 1, Final Approval Order ¶¶ 15-16.

Since no text messages referenced in the FAC sent prior to December 12, 2022 are actionable, KWRI should be dismissed from Count I. This is because "[the] principles of res judicata, or claim preclusion, apply to judgments in class actions as in other cases." *Lee v. Ocwen Loan Servicing, LLC*, 2023 U.S. Dist. LEXIS 38986, *51 (S.D. Fla. 2023) citing *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998); *see also Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.")

Here, not only does Count I fail to allege that plaintiff received "more than one" text message solicitation, it also fails to allege "more than one" actionable text message was sent after December 12, 2022. The August 2, 2022 text alleged in paragraph 13, and the November 10, 2022 text alleged in paragraph 14, [DE 25 ¶¶ 13-14], were released in the *Deshay* settlement. Therefore, plaintiff's FAC fails to plausibly allege *any* actionable text messages, much less the "more than

one" required for a private right of action. As a result, Count I of the FAC fails to state a claim under TCPA section 227(c) because it fails to allege "more than one" actionable text.

**II.     Count II Against KWRI Should Be Dismissed Pursuant to Rules 9(b) and 12(b)(6) Because the FAC Fails to Plead a RICO Violation.**

Plaintiff's FAC next frivolously attempts to allege a violation of the Racketeer Influenced Corrupt Organization Act ("RICO") in Count II against KWRI. KWRI should be dismissed from Count II because plaintiff cannot allege the elements of a RICO claim.

Both plaintiff (and his counsel) already know the RICO claim is frivolous because they previously filed nearly the same claim against Apple, Inc. in the Northern District of California in *Coronavirus Reporter v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 249564, *52-55 (N.D. Cal. Nov. 30, 2021), where it was dismissed. Their motion to reconsider the dismissal was then denied. *Coronavirus Reporter v. Apple, Inc.*, 2022 U.S. Dist. LEXIS 19200 (N.D. Cal. 2022). Finally, the Ninth Circuit affirmed the dismissal in *Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 2023 U.S. App. LEXIS 29293, *13 (9th Cir. Nov. 3, 2023).

The reason the Ninth Circuit affirmed the dismissal was twofold. First, to plead a civil claim under RICO, plaintiff (and his counsel) needed to allege, with particularity under Rule 9(b): (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property. *Coronavirus Reporter*, 2023 U.S. App. LEXIS 292943 at *13. If a corporation is the enterprise, it cannot also at the same time be the RICO defendant. *Id*. Therefore, because plaintiff in *Coronavirus Reporter* failed to describe with particularity conduct or activity outside of Apple, Inc. as a corporation, as articulated, it made both Apple, Inc. the enterprise and the RICO defendant, which is not permitted in a RICO claim. *Id*. at *14. Secondly, plaintiff's pleading was simply too vague and conclusory, without the particularity required by Rule 9(b), to sustain a RICO claim. *Id*.

The law on this issue is virtually the same in the Eleventh Circuit and this Court. *See Dj Lincoln Enters. v. Google, LLC*, 2021 U.S. Dist. LEXIS 135649 (S.D. Fla. July 21, 2021) and *Dj Lincoln Enters. v. Google, LLC*, 2021 U.S. Dist. LEXIS 8964 (S.D. Fla. Jan. 15, 2021) dismissing a similar claim against Google, LLC for similar reasons. In *Dj Lincoln Enters.*, plaintiff alleged that the enterprise consisted of a union or group of persons, including Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside engineers and consultants. *Dj Lincoln Enters.*, 2021 U.S. Dist. LEXIS 8964 at *4-10. The Court held that plaintiff had not "plausibly alleged the existence of two distinct entities" and "[t]o the extent that Plaintiff contends that Defendant was part of an enterprise with Alphabet, Inc. and YouTube, Plaintiff has not alleged any facts to support a conclusion that these related corporate entities are distinct for RICO purposes, rather than one corporate "person." *Id*.

Here, the FAC at paragraph 62, alleges that "Defendants formed a telemarketing enterprise" and said "enterprise specifically included all Keller Williams corporate and franchise agents who used illegal tactics to procure business." Therefore, the claim fails for the same reasons the RICO claims failed against Apple, Inc. in *Coronavirus Reporter* and the RICO claims failed against Google, LLC in *Dj Lincoln Enters*. As articulated in the FAC, the claim makes KWRI both the enterprise and the RICO defendant, which is not permitted in a RICO claim. The FAC fails to describe with particularity conduct or activity outside of KWRI because "a person acting as an agent cannot be distinct from its principal for RICO purposes." *White v. GM Law Firm, LLC*, 2021 U.S. Dist. LEXIS 263964, *28 (S.D. Fla. 2021) citing *United States v. Turkette*, 452 U.S. 576, 583 (1981). Therefore, the FAC fails to adequately allege "an enterprise."

In addition, plaintiff's FAC is far too vague and conclusory, without the particularity required by Rule 9(b), to sustain any of the elements of a RICO claim against KWRI. The FAC,

at paragraphs 61 through 73, is mostly a nonsensical laundry list of complaints, most of which have nothing to do with KWRI.

Paragraphs 61 through 67 and 72 through 73 appear to be attempting to base the RICO claim on the text messages to plaintiff. However, as discussed above, the FAC lacks facts that plausibly support the contention that KWRI itself was involved in sending the texts, either directly or vicariously. Therefore, plaintiff is just asserting conclusions as it relates to KWRI and lumping it in with "Defendants" throughout the FAC. This fails under Rule 9(b).

Furthermore, for the reasons indicated above in Section I.C., all texts prior to December 12, 2022 have been released and are non-actionable. Therefore, even if the texts could plausibly be described as "racketeering activity" or "predicate acts," the FAC fails to allege any. Thus, no "pattern" has been alleged nor the required two predicate acts. As it stands, KWRI cannot even discern from the FAC what "predicate acts" plaintiff is even alleging were undertaken by KWRI and qualify under the RICO Act.

Paragraphs 68 through 71 appear to be attempting to base the RICO claim on the underlying state court property disputes and litigation referenced in Equestrian's motion to dismiss. *See* Equestrian's motion to dismiss and exhibits 1-2 attached thereto [DE 29 & 29-1]. KWRI has absolutely no role in those disputes nor any relationship to them. Again, as discussed above, the FAC lacks facts that plausibly support the contention that KWRI itself was involved in the property sale involving plaintiff and the co-defendants. Therefore, again, plaintiff is just asserting conclusions as it relates to KWRI and improperly lumping it in with the co-defendants. This again fails under Rule 9(b).

Without belaboring the point, plaintiff's RICO claim (based upon the receipt of one or two text messages), simply does not make sense. It should be dismissed as to KWRI.

**III.    Count IV Against KWRI for "Abuse of Process" Should Be Dismissed Pursuant to Rule 12(b)(6) and/or Rule 12(b)(1).**

**A.    Count IV Against KWRI for "Abuse of Process" Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Fails to Identify Any Process Abused By KWRI.**

For similar reasons, Count IV against KWRI alleging abuse of process should be dismissed. Paragraphs 86 through 92 of the FAC are entirely conclusory. Plaintiff seems to be attempting to allege that KWRI had some role in the state court litigation. Again, the FAC repeatedly just refers to "Defendants," apparently in an attempt to involve KWRI. However, again, KWRI is not mentioned anywhere in the 78 pages of exhibits regarding the state court litigation that are attached to Equestrian's motion to dismiss, which are the documents relevant to plaintiff's dispute. [DE 29-1]. Simply put, there are no facts pled in the FAC that connect KWRI to any of the state court litigation. KWRI is not a party to *Equestrian Palms v. Jeffrey Isaacs*, Case No.: 50-2023-CA-010133 (Palm Beach County, Florida) nor does the complaint in that matter reference KWRI. [DE 29-1 at 1-39]. Likewise, KWRI is not a party to *Makai Southeast, LLC d/b/a Keller Williams Realty Wellington v. Jeffrey Isaacs*, Case No.: 50-2023-CA-011575 (Palm Beach County, Florida) nor does the complaint in that matter reference KWRI. [DE 29-1 at 40-70].

Under Florida Law, abuse of process "involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." *Saito v. Collier Cnty. Mun. Corp.*, 2023 U.S. Dist. LEXIS 43738, *5 citing *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989). The three elements of an abuse of process claim are:

> (1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action.

*Saito*, 2023 U.S. Dist. LEXIS 43738 at *6 citing *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019). "[T]he tort of abuse of process is concerned with the improper use of

process *after it issues*, for some wrongful and unlawful object or collateral purpose." *Saito* at *6 citing *Verdon v. Song*, 251 So. 3d 256, 258 (Fla. 5th DCA 2018).

Here, the FAC fails to allege that KWRI acted with improper motive and that it took any action after process was issued to misuse the state court litigation. The FAC fails to allege any connection between KWRI and the state court litigation at all. Therefore, Count IV should be dismissed.

### B. Count IV Against KWRI for "Abuse of Process" Should Be Dismissed Pursuant to Rule 12(b)(1) Because This Court Should Decline to Exercise Supplemental Jurisdiction.

In the alternative, should this Court decide to dismiss the federal based claims in this case, it should decline supplemental jurisdiction over plaintiff's Count IV state law abuse of process claim under 28 U.S.C. § 1367(c). *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *Dulcio v. Arcadis United States, Inc.*, 2023 U.S. Dist. LEXIS 197241, *33-34 (S.D. Fla. 2023) citing *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

### IV. Count V Against KWRI for Violation of the Fair Housing Act Should Be Dismissed Pursuant to Rule 12(b)(6).

Count V of the FAC alleges a Fair Housing Act ("FHA") violation against KWRI. It should be dismissed pursuant to Rule 12(b)(6) because there are no facts plead as to KWRI. Rather, Count V is entirely made up of conclusions and labels that assert that "Defendants" engaged in vague discrimination in relation to plaintiff's property dispute. [DE 25 ¶¶ 94-101]. For the most part, KWRI cannot even discern what the claim against it asserted in Count V even involves. However, it is clear that this claim is based entirely upon plaintiff's personal dispute and state law litigation with the co-defendants. KWRI is not a party to plaintiff's property dispute with the co-defendants.

Likewise, KWRI is not a party to any of the state court litigation involving the property. Therefore, KWRI should never have been included in this claim and it should be dismissed from it.

### V. Count VI Against KWRI for Violation of the Sherman and Clayton Antirust Acts Should Be Dismissed Pursuant to Rule 12(b)(1) and/or Rule 12(b)(6).

#### A. Plaintiff's Sherman Act Challenge to the "Adversary Commission Rule" Must Be Dismissed for Lack of Standing.

Plaintiff's Sherman Act challenge to the "Adversary Commission Rule" must be dismissed for lack of standing. Plaintiff seeks to represent a class of people who "used a listing broker affiliated with Keller Williams," and who, allegedly because of what plaintiff refers to as the "Adversary Commission Rule," paid a commission to the buyer's broker in connection with the sale of their home listed on the BeachesMLS. [DE 25 ¶¶ 44, 114]. But plaintiff does not allege that he ever actually sold a home or paid a commission to a buyer's broker. Because plaintiff did not suffer an injury caused by the "Adversary Commission Rule," he lacks standing to challenge the rule on behalf of a purported class. *See Jackson v. City of Argo*, 2019 U.S. Dist. LEXIS 9883, *22 (N.D. Ala. Jan. 22, 2019) (dismissing complaint and holding that "because Jackson asserts no viable claims, he cannot bring claims on behalf of the putative class").

It is axiomatic that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). If plaintiff cannot allege and show he suffered an injury, he does not have standing to bring the case or to represent the class. *Big Five Properties, Inc. v. Certain Underwriters at Lloyd's, London*, No. 12-23916-CIV, 2013 WL 12091814, at *4 (S.D. Fla. Feb. 27, 2013) ("If the named plaintiff in a class action cannot establish the requisite case or controversy between itself and the defendant, it cannot seek relief for anyone—not for itself, and not for any other member of the class."). "This individual injury requirement is not met by alleging

'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.'" *Griffin v. Bugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also Franze v. Equitable Assurance*, 296 F.3d 1250, 1253–54 (11th Cir. 2002) (holding that, without individual standing to raise a legal claim against a specific defendant, a named representative may not raise the claim on behalf of a class).

### B. Plaintiff's Sherman Act Challenge Based on *Aspen Skiing* Must Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts to Support It.

Plaintiff's purportedly "novel (and first-to-file) claim" under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), [DE 25 ¶ 39], also fails to state a claim and must be dismissed. Plaintiff appears to allege some unspecified involvement by KWRI in preventing the sharing of listings with companies offering "efficient marketplace internet tools," *id.* ¶ 105, but his allegations do not "mirror[]" the concerns in *Aspen Skiing* or state a claim for relief.

*Aspen Skiing* is recognized to create a "limited exception" to the well-recognized rule under the Sherman Act that one competitor has no obligation to do business with another. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (explaining that *Aspen Skiing* "is at or near the outer boundary of § 2 liability"); *OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1245 (11th Cir. 2022) (noting that "the Supreme Court has declined to extend the exception when presented with facts that differ materially from those presented in *Aspen Skiing*"); *see also Arcesium, LLC v. Advent Software, Inc.*, 2021 U.S. Dist. LEXIS 62957, *17 (S.D.N.Y. Mar. 31, 2021) (explaining that the *Aspen Skiing* exception is that "a defendant's refusal to deal may be anticompetitive where the parties had previously been engaged in a voluntary, cooperative, and profitable venture that the defendant terminated and where the defendant's decision to do so cannot be explained by anything other than a desire to harm competitors").

*Aspen Skiing* applies to very narrow and specific circumstances simply not at issue here. To invoke *Aspen Skiing*'s limited exception, the plaintiff must show the following: (1) "a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival;" and (2) "the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) (Gorsuch, J.); *Tyntec Inc. v. Syniverse Techs.*, LLC, 2019 U.S. Dist. LEXIS 231273, *18 (M.D. Fla. Aug. 19, 2019).

Plaintiff does not allege that KWRI "voluntarily engaged in a course of dealing with its rivals, or would ever have done so absent statutory compulsion." *Trinko*, 540 U.S. at 409; *OJ Com.*, 34 F.4th at 1245 (dismissing complaint where plaintiffs did not allege that the defendant voluntarily engaged in a course of dealing with its rivals). To the extent plaintiff's complaint is that information has been withheld from Zillow (and plaintiff's complaint is far from clear on this point), there also is no allegation that KWRI and Zillow are the only participants in the market. *Aspen Skiing* "relied heavily on the fact that the plaintiff and defendant were the only participants in the market and that the defendant refused to deal with plaintiff even at retail price." *Arcesium*, 2021 U.S. Dist. LEXIS 62951 at *17-18 (dismissing complaint where the plaintiff made no such allegations, and the plaintiff and defendants are not the only participants in the relevant markets).

Finally, to the extent plaintiff attempts to allege that KWRI conspired with others to prevent competitors from offering competing listing services, plaintiffs alleges no facts whatsoever in support of that claim. Plaintiff's wholly conclusory allegations of concerted conduct fail to state a plausible claim for relief under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to

17

show illegality."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a claim, supported by mere conclusory statements, do not suffice.").

Therefore, Count VI should be dismissed.

**VI.   Plaintiff's Request for a Permanent Injunction Against KWRI Should Be Dismissed Pursuant to Rule 12(b)(6) and/or 12(b)(1).**

The FAC does not state upon what grounds or legal theory plaintiff seeks a permanent injunction. [DE 25 at 35]. It simply states that plaintiff requests that "[t]he Court shall enter a permanent injunction, enjoining and restraining Defendants from further violations of the Sherman Act, FHA, TCPA, and/or RICO." *Id.* Likewise, "Defendants shall be enjoined from engaging in abuse of process, including but not limited to ongoing and/or future breaches of the Arbitration Clause, Mediation Clause, and or Force Majeure Clause." *Id.*

The Eleventh Circuit has made clear that any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action. *Seacoast Constr., Inc. v. JP Morgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 173339, *14-15 (S.D. Fla. 2020). "There is no such thing as a suit for a traditional injunction in the abstract." *Id*. "For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Id*. citing *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) (alteration adopted; internal quotation marks omitted; quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)). "An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed — if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Seacoast Constr.* at *14-15 citing *Alabama*, 424 F.3d at 1127 (internal quotation marks and citation omitted).

Here, plaintiff's request for a permanent injunction must be dismissed because an injunction is an equitable remedy, not a cause of action, and in order to be entitled to an injunction, a plaintiff must prevail on an underlying claim. As explained above, plaintiff has not adequately alleged any claims. Therefore, plaintiff has alleged no "independent legal right" that serves as a basis for the injunctive relief sought. *Seacoast Constr.* at *14-15 citing *Blue Water Innovations, LLC v. Fettig*, 2019 U.S. Dist. LEXIS 73605 (S.D. Fla. 2019).

WHEREFORE, Defendant, KELLER WILLIAMS REALTY, INC., respectfully requests this Court dismiss plaintiff's first amended complaint and grant any other appropriate relief in its favor that this Court finds equitable and just.

Dated: December 6, 2023

*SIGNATURE PAGE FOLLOWS*

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

*/s/ Todd P. Stelter*
**TODD P. STELTER**
*Admitted pro hac vice*
tstelter@hinshawlaw.com
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Tel: 312-704-3000 / Fax: 312-704-3001

*/s/ Siobhan E.P. Grant*
**SIOBHAN E. P. GRANT**
Florida Bar No. 68892
sgrant@hinshawlaw.com
Secondary: lleon@hinshawlaw.com
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Tel: 305-358-7747 / Fax: 305-577-1063
*Attorneys for Keller Williams Realty, Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Siobhan E.P. Grant*
Siobhan E.P. Grant
Florida Bar No. 68892
sgrant@hinshawlaw.com

1068566\315488818.v1