UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:23-CV-81393-RLR/BER

DR. JEFF ISAACS, on behalf of himself and
others similarly situated,

    Plaintiffs,

v.

KELLER WILLIAMS REALTY, INC,
MAKAI SOUTHEAST, LLC, d/b/a KELLER
WILLIAMS REALTY WELLINGTON, and
EQUESTRIAN PALMS, LLC

    Defendants.
_____/

**DEFENDANT, EQUESTRIAN PALMS, LLC'S, REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO EQUESTRIAN PALMS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, WITH SUPPORTING MEMORANDUM OF LAW**

Defendant, EQUESTRIAN PALMS, LLC ("Equestrian"), pursuant to Rule 12(b)(6), Fed.R.Civ.P., and Rule 7.1, S.D.Fla.L.R., hereby replies to the Consolidated Opposition to Defendants' Motion to Dismiss (the "Response") [D.E. 58] filed by Plaintiff, DR. JEFF ISAACS ("Isaacs") on or about January 2, 2024.

    **I.**    **INTRODUCTION**

    1.    On November 15, 2023, Isaacs, individually and on behalf of others similarly situated, filed his First Amended Complaint ("FAC") alleging claims against Equestrian and codefendants, Keller Williams Realty, Inc. ("KW") and Makai Southeast, LLC, d/b/a Keller Williams Realty Wellington ("Makai"), for: (i) violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against KW and Makai; (ii) violations of the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961-68 (the "RICO"), against Equestrian, KW and Makai; (iii) breach of contract(s) against Equestrian and Makai; (iv) abuse of process, against Equestrian and Makai; (v)

violations of the Fair Housing Act, 42 U.S.C. § 3604 ("FHA") against Equestrian, KW and Makai; (vi) violations of the Sherman and Clayton Antitrust Acts, 15 U.S.C. § 1-2 and 15 against KW and Makai; and (vii) permanent injunction against Equestrian, KW and Makai.

2. On November 29, 2023, Equestrian filed its Motion to Dismiss Plaintiffs' First Amended Complaint and Incorporated Memorandum of Law (the "Motion") [D.E. 29], as a result of Isaacs': (1) failure to properly plead the necessary "predicate acts" under RICO; (2) failure to allege fraud with particularity under RICO; (3) failure to properly allege that Isaacs reasonably relied on any "predicate acts" under RICO; (4) failure to allege any agreement between defendants to conspire to commit the predicate acts under RICO; (5) failure to properly allege violations of the FHA; and (6) comingling claims directed to Equestrian and Makai for state law claims for alleged breaches of contracts and for abuse of process.

3. On January 2, 2024, Isaacs filed a "Consolidated" Response directed to Equestrian's Motion, as well as the Motions to Dismiss filed by Co-Defendants, KW and Makai. A large portion of the Motion is directed to alleged "an incomplete and potentially misleading excerpt from a text message conversation" relating to Isaacs' TCPA claim against KW and Makai an "converting" KW and Makai's Motions to Dismiss to Motions for Summary Judgment pursuant to Rule 12(d), Fed.R.Civ.P. As the Response relates to Equestrian's Motion, Isaacs argues the FAC states a valid cause of action under RICO, because it alleges a "pattern of racketeering behavior" and Equestrian's purported omission of §825.103, Fla. Stat. as an extortion predicate act. *See* Response [D.E. 58] at pp. 11 and 12.

4. In his Response, Isaacs further argues that the FAC asserts a valid breach of contract claim for the alleged disregard for ADR provisions enumerated in two (2) separate contracts (i.e., "As-Is" Residential Contract for Sale and Purchase (the "Contract") signed by Isaacs on February

24, 2023 for the sale of the residence located at 11482 Key Deer Circle, Lake Worth, Florida 33449 (the "Property"), and the "Exclusive Sale" contract entered into between Isaacs and Makai on December 14, 2022). Specifically, Isaacs argues that the alleged breaches are grounded in breaches that are "functionally identical" in that both, Equestrian and Makai, allegedly, (i) disregarded the alternative dispute resolution provisions encompassed within their respective contracts, (ii) refused to honor the *force majeure* clause in the Contract; and (iii) "repudiated" the contracts by requesting an earlier closing date that April 21, 2023 enumerated in paragraph 4 of the Contract. *See* the Response [D.E. 58] at p. 14.

5.  Isaacs further argues that he has stated a valid cause of action for abuse of process because the "filing [and] perpetuation of a suit," violates the "Mediation, and force majeure provisions, which lies at the heart of the claim."[1] Response [D.E. 58] at p. 16.

6.  Lastly, Isaacs argues that the FAC states a valid cause of action for alleged violations of the FHA based on "national origin."

7.  Contrary to the position taken by Isaacs in his Response, the FAC does not state valid causes of action. There is also no basis in law, or fact, that can support the claims alleged by Isaacs against Equestrian.

II. **ARGUMENT AND INCORPORATED MEMORANDUM OF LAW**[2]

A. *Isaacs's Claim for RICO Fails to State a Cause of Action.*

As discussed extensively in the Motion, in order to satisfy the stringent requirements of Rule

---

[1] Isaacs argues in his Response that the ADR provisions violated are the "Arbitration, Mediation…," provisions. However, the Contract that Isaacs entered into with Equestrian for the sale of the Property does not contain an "arbitration" provision. It does, however, contain a mediation clause at Paragraph 16(b). Equestrian and Isaacs participated in mediation on September 28, 2023.

[2] Equestrian has not included in its Reply any argument relating to Count V for alleged violations of the FHA, as there are no new arguments to be presented. Equestrian rests on the arguments presented in its Motion and seeks dismissal of the FHA claim, as such claims relate to Equestrian.

9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [Isaacs]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir. 1997) (applying the Rule 9(b) requirements to a RICO fraud complaint); *Hopper v. Solvay Pharmaceuticals, Inc.,* 588 F.3d 1318, 1324 (11th Cir. 2009) (A complaint satisfies Rule 9(b) if it sets forth, "facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them" (internal quotation marks omitted)). Moreover, "the plaintiff must allege facts with respect to each defendants' participation in the fraud." *Brooks,* 116 F.3d at 1381.

In this case, the only allegations relating to Equestrian's alleged participation in the "enterprise" is that KW, "actually recruited Equestrian [ ] as an enterprise member to breach his [sic] contract with Plaintiff and pursue intimidation tactics to force a transaction. These tactics included abuse of process and violations of Florida state laws regarding disability." *See* FAC [D.E. 25] at ¶ 68. As discussed in more detail below, Equestrian did not breach the Contract and the allegations relating to Isaacs's alleged claim against Equestrian for an alleged breach of contract fails to state a cause of action, even when taking the allegations in the FAC as true.

A plain reading of paragraph 68 of the FAC reveals that Isaacs seeks civil RICO remedies against Equestrian, as an alleged enterprise member, for allegedly failing to recognize his non-sensical invocation of the force majeure clause, and for exercising its rights to seek specific performance pursuant to Paragraph 15(b) of the Contract. In his response, Isaacs argues that an alleged predicate act was Equestrian's alleged violation of §825.103, Fla. Stat.

Section 825.103, Fla. Stat., titled, "Exploitation of an elderly person or disabled adult,

4

penalties," provides,

(1) "Exploitation of an elderly person or disabled adult" means:

(a) Knowingly, by deception or intimidation, obtaining or using, or endeavoring to obtain or use, an elderly person's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the elderly person or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult, by a person who:

1. Stands in a position of trust and confidence with the elderly person or disabled adult; or

2. Has a business relationship with the elderly person or disabled adult;

(b) Obtaining or using, endeavoring to obtain or use, or conspiring with another to obtain or use an elderly person's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the elderly person or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult, by a person who knows or reasonably should know that the elderly person or disabled adult lacks the capacity to consent.

The FAC clearly alleges, "Plaintiff and Equestrian Palms agreed to a sale contract in February 2023." *See* FAC [D.E. 25] at ¶ 19. The FAC alleges "exploitation," "intimidation," and "extortion," premised on threats to file "illegal lawsuits" to "force a transaction" in violation of Florida laws regarding disability. *See* FAC at ¶¶ 68 and 70. Aside from these allegations being completely inaccurate and unsubstantiated, they cannot form the basis of a RICO claim against Equestrian. The law is crystalline that Equestrian's exercise of rights under the Contract, and even threatening to commence litigation, cannot "state a claim for extortion under the federal RICO statutes." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004). There was no deception or intimidation, Equestrian is simply a buyer, that would like to close on the transaction agreed upon by the parties.

Indeed, Isaacs attempts to enumerate the "who, what/when, where, and why" in support of his RICO claim. *See* Response [D.E. 58] at p. 12. Notably, the "why" is for co-defendants, KW and Makai, to "procure an exclusive sale agreement on false promises." *Id.* There is no mention or even

5

reference to Equestrian. A cursory review of the FAC reveals that the allegations in support of Isaacs's claims against Equestrian for alleged violations of RICO fall woefully short of the heightened pleading requirements required under Rule 9(b), and do not give rise to violations of RICO. Accordingly, Equestrian respectfully requests the Court to enter an order dismissing Isaacs's claim against Equestrian for alleged violations of RICO.

### B. *Isaacs's Claim for Breach of Contract Fails to State a Cause of Action.*

Isaacs is the record owner of the Property. *See* the Notice of Removal [D.E. 56] at Exhibit "A" (Complaint filed in the Palm Beach County Circuit Court and referenced under Case No. 50-2023-CA-11575 (the "State Court Complaint")). Exhibit "2" to the State Court Complaint attaches a Warranty Deed recorded on September 24, 2020 at Official Records Book 31773, Page 1252 of the Public Records of Palm Beach County, Florida and lists "Jeffrey D. Isaacs" as the "grantee." Isaacs voluntarily executed the Contract on **February 22, 2023**, and based upon the allegations in the FAC, "were notified no later than April 2023 that Plaintiff had executed the 'Force Majeure' clause of the contract due to said disruption." *See* FAC [D.E. 25] at ¶ 79. What is clear from the allegations in the FAC is that: (1) Isaacs, the record owner of the Property, actively attempted to list and sell the Property via Zillow.com; *Id*. at ¶15; (2) Isaacs subsequently entered into the "Exclusive Sale" contract with Makai on December 14, 2022, where "KW was granted exclusive rights to sell the Property;" *Id*. at ¶ 16; (3) Isaacs voluntarily entered into the Contract with Equestrian on February 24, 2023 to sell the Property for $2,350,000.00; *Id*. at ¶ 16; and (4) Isaacs allegedly notified "the parties" that he was invoking the "force majeure" clause because of the Ukrainian War and "did not feel safe having their only apartment within 80 miles of an active international war zone." *Id.* at ¶ 79.

The FAC is devoid of the well-known and undisputed fact that the Russian invasion of Ukraine took place one (1) year earlier on **February 24, 2022**, and there was a war in Ukraine before: (1)

Issacs voluntarily listed the property for sale on Zillow.com; (2) entered into the "Exclusive Sale" contract with Makai; (3) entered into the Contract for the sale of the Property; and (4) cancelled the Contract because of the war that commenced one year earlier.

A *force majeure* clause is defined as "a contractual provision allocating the risk of loss if performance becomes impossible or impracticable, especially as a result of an event or effect that the parties could not have anticipated or controlled." *Black's Law Dictionary*, 718 (9th ed. 2009). *Force majeure* clauses are typically narrowly construed, and "will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified." *ARHC NVWELF01, LLC v. Chatsworth at Wellington Green, LLC*, 2019 WL 4694146 (S.D. Fla Feb. 5, 2019) (internal citations omitted). It is unavailing for Isaacs to argue that Equestrian violated the Contract by failing to recognize the force majeure clause of the Contract, is undisputedly something that could have been anticipated and a war in Ukraine is not something that would prevent Isaacs from performing his contractual obligation in West Palm Beach County, Florida.

Similarly, Isaacs alleges that Equestrian materially breached the contract by failing to mediate the dispute prior to filing the State Court Complaint with the Circuit Court of Palm Beach County, Florida. Based on failing to recognize Isaacs cancellation of the Contract due to "force majeure" and failing to participate in mediation prior to filing the State Court Complaint, Isaacs demands $550,000.00. *See* Response [D.E. 58] at p. 15. Despite this contention, Isaacs fails to cite a single case in support of this demand, nor is there any case supporting the entitlement Isaacs seeks. Equestrian and Isaacs participated in mediation on September 28, 2023 before the Hon. David F. Crow (Ret.) and reached an impasse. In the context of failing to participate in pre-suit mediation prior to filing suit, courts routinely stay, rather than dismiss proceedings to allow the parties to a

7

Contract containing such clauses to engage in ADR. *Swartz v. Westminister Servs., Inc.*, No. 810-CV-1722-T-30AEP, 2010 WL 3522141 (M.D. Fla. Sept. 8, 2010). Equestrian recognizes that a court may, however, dismiss an action, *without prejudice,* and require the parties to engage in pre-suit mediation, as agreed upon by the parties. As stated, however, there is no case law that supports the filing of an affirmative claim for breach of contract for parties failing to participate in pre-suit mediation prior to filing suit.[3]

Taking the allegations of the FAC as true, and aside from Isaacs's co-mingling the allegations relating to the breaches allegedly committed by Makai with respect to the "Exclusive Sale" contract and allegedly committed by Equestrian in connection with the Contract, Equestrian respectfully suggests that Isaacs has failed to allege any facts that would entitle him to the relief requested under his breach of contract claim, or has alleged a claim upon which relief can be granted.

### C. Isaacs's Claim for Abuse of Process Fails to State a Cause of Action.

The FAC is far from a model of clarity with respect to the abuse oof process claims alleged in Count IV. As alleged, Isaacs alleges that abuse of process exists under Florida law when, Florida exists when: (1) Defendant willfully or intentionally made illegal, improper, or perverted use of process; (2) Defendant had ulterior motive or purpose in executing the process; and (3) Defendant's actions caused injury to the Plaintiff. *See* FAC [D.E. 25] at ¶ 86. The FAC then alleges that Defendants threatened to file lawsuits for six (6) months, published "unnecessary notices in popular

---

3     In addition to the foregoing, Isaacs materially breached the Contract in or about April of 2023 and advised that he was not proceeding to the closing with Equestrian, despite Equestrian being ready, willing and able to close on the Property. Isaacs's position on the *force majeure* provisions of the Contract and his misunderstanding of the mediation process being tantamount to arbitration, was a futile exercise. Nevertheless, the parties participated in mediation, which Equestrian respectfully suggests to this Court, it was excused from based on Isaacs's prior breach. *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. 5th DCA 2007). "Under the doctrine of futility, a party may be excused from performing a condition precedent to enforcement of the contract, if performance of the condition would be futile." *Id.* at 708-09; *see also IET, Inc. v. Intellocorp, LLC*, 357 So. 3d 755 (Fla. 3d DCA 2023).

Palm Beach newspapers," with the intent to "harm" Isaacs. Again, the facts are clear. Equestrian is simply a company formed to, "convert the [Property] to a commercial equestrian facility," and is enforcing its rights under the Contract to acquire the Property pursuant to the terms and conditions thereof. Isaacs's reliance that Equestrian's pursuit of its rights under the Contract is tantamount to an abuse of process is misplaced. Filing a lawsuit in alleged violation of ADR provisions, cannot support of claim for abuse of process, since the allegations in the FAC allege facts *before* process was issued and is, likewise, barred by the litigation privilege.

As Makai recognizes in its Motion to Dismiss [D.E. 38], in order to properly allege a claim for abuse of process, a plaintiff must plead and prove, "(1) willful and intentional misuse of process for some wrongful or unlawful object, or collateral purpose, and (2) that the act or acts constituting the misuse *occurred after the process issued*." *Kodsi v. Branch Banking & Tr. Co.,* 2018 WL 830117, at *4 (S.D. Fla. 2018) (citing *Miami Herald Pub. Co., Div. of Knight-Ridder v. Ferre*, 636 F. Supp. 970, 974-75 (S.D. Fla. 1985); *Aulicino v. McBride*, 2017 WL 1113475, at *3 (M.D. Fla. 2017); *Blue Dolphin, Inc. v. United States*, 666 F.Supp. 1538, 1541 (S.D. Fla. 1987) (to sustain an abuse of process claim, "there must be some allegation that after suit has been legally filed, the process of the Court had been improperly used"); *see also Steinhilber v. Lamoree*, 825 F.Supp. 1003, 1006 (S.D. Fla. 1992)).

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

CASE NO: 9:23-CV-81393-RLR/BER

**III.   CONCLUSION**

For the reasons stated above, as well as the arguments presented by Defendant, EQUESTRIAN PALMS, LLC, IN ITS Motion, Equestrian respectfully requests that the Court enter an Order: (1) dismissing Isaacs's FAC; and (2) for such other and further relief that this Court deems just and proper.

DATED this 9th day of January, 2024.

                                                                  Respectfully submitted,

**PETERSON, BALDOR
& MARANGES, PLLC**
*Attorneys for Equestrian Palms, LLC*
8000 SW 117th Ave, Suite 206
Miami, Florida 33183
Telephone:   (305) 270-3773
Facsimile:    (305) 275-7410

By:   */s/* Jose Baldor
      Jose I. Baldor
      Florida Bar No. 657360
      Jose@pbmlegal.net
      Lourdes@pbmlegal.net
      Matthew Maranges
      Florida Bar No.: 91534
      Matt@pbmlegal.net
      Elizabeth@pbmlegal.net

CASE NO: 9:23-CV-81393-RLR/BER

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of January 2024, I electronically filed this document with the Clerk of Court using CM/ECF. I also certify that this document is being served this day on all counsel identified in the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    /s/ Jose I. Baldor
           Jose I. Baldor, Esq.

CASE NO: 9:23-CV-81393-RLR/BER

## SERVICE LIST

**Ayelet Faerman, Esq.**
FAERMAN LAW, P.A.
3859 NW 124th Avenue
Coral Springs, FL  33065
Telephone:  (954) 271-8484
ayelet@faerman.law

*Counsel for Plaintiff*

**Keith Matthews, Esq.**
AMERICAN WEALTH PROTECTION
Manchester NH 03105
Telephone: (603) 622-8100
Keith@awplegal.com

*Counsel for Plaintiff (Pro Hac Vice)*

**Eric L. McAliley, Esq.**
**Ilana J. Moskowitz, Esq.**
LYDECKER LLP
2300 Glades Road, Suite 340W
Boca Raton, FL  33431
Telephone: (786) 587-1899
Facsimile: (305) 416-3190
elm@lydecker.com
ijm@lydecker.com
christy@lydecker.com

*Counsel for Makai Southeast, LLC d/b/a Keller Williams Realty Wellington*

**Siobhan E. P. Grant, Esq.**
HINSHAW & CULBERTSON, LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
sgrant@hinshawlaw.com
lleon@hinshawlaw.com
kcongdon@hinshawlaw.com

*Counsel for Defendant, Keller Williams Realty, Inc.*

**Todd P. Stelter, Esq.**
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL  60606
Telephone:  312-704-3000
Email:  tstelter@hinshawlaw.com

*Pro Hac Vice Counsel for Defendant, Keller Williams Realty, Inc.*