# Exhibit N

**To: Google LLC Legal Team**
**Date: January 2, 2024**
**Re: Deposition Subpoena –**
   ***Thanksgiving 2022 Adverse Event & December 2022 Anti-Semitic Event***

Dear Google Legal Team:

I am writing on behalf of my client, Dr. Jeff Isaacs, in reference to the ongoing legal matter involving Alphabet Inc, Google LLC, and OkCaller.com, notably referred to as the "Thanksgiving 2022 Adverse Event." This letter serves as formal notice that a subpoena has been issued demanding a witness familiar with this matter testify at deposition. We are amenable to modifying the location or conducting the deposition remotely; we chose a hotel in Palo Alto near Google Mountain View in efforts to facilitate the witness' travel to the deposition.

As you are aware, we have previously communicated with you regarding the alleged termination of Google LLC's reverse phone search partnership with OkCaller.com and the subsequent impact on witnesses, including Dr Isaacs. Our concerns particularly revolve around potential violations of 18 U.S.C. §1512 and related statutes, as detailed in our correspondence dated August 24, 2023, and subsequent communications.

Despite our attempts to engage in a constructive dialogue and our requests for confirmation of an investigation into these serious allegations, we have not received satisfactory responses. Our last communication, underscoring the need for evidence preservation and a thorough investigation into the abrupt changes in Google's search algorithm impacting OkCaller.com, has not been adequately addressed.

Given the gravity of the situation and the immediate legal implications in *Keller Williams*, we find it necessary to proceed with this subpoena to obtain testimony covering your investigation and reservation of all relevant documents, communications, emails, internal memos, and other electronically stored information (ESI) related to this case. This includes, but is not limited to, information pertaining to the decision-making process regarding OkCaller.com's status in Google's reverse phone search algorithm; Google's ten largest phone search websites by organic referral volume; testimony about infringers of the reissue patent; testimony of Google's investigation into infringement; Google's induced/passive profits from infringement; testimony about correspondence about OkCaller.com; and any other information related to Dr Isaacs' attendance as a "trusted partner" at Google Miami or other relevant information to this matter. We also seek information as to the auto-delete impact on relevant evidence, as documented by FBI.

Please be advised that failure to comply with this subpoena may result in legal consequences, including but not limited to, sanctions for contempt or obstruction of justice. We expect full cooperation in this matter.

I would also like to take this opportunity to provide further documentation on the Thanksgiving 2022 Adverse Event. In 2013, Dr. Isaacs, an aspiring neurosurgeon, invented the OkCaller.com website. He was awarded a US patent (RE48847) for the reverse phone search technology

implemented on OkCaller.com, which remains valid today. Google immediately recognized the value of Dr. Isaacs work, and quickly ranked OkCaller amongst the top reverse phone sites:



By Google's own Analytics records, OkCaller received 293 million new users since launch, and 605 million pageviews. This traffic was notably steady over nearly a decade, ranging between 100,000 and 300,000 daily sessions. This ranked OkCaller typically amongst the Top 2000 websites on Google, roughly on par with well-known brand sites like Jeep.com. Dr. Isaacs' site was run almost entirely by himself, which places the site amongst the Top Fifty individually (non-blog) managed sites featured by Google. In short, these sites were curated by Google's teams and obtained a placement on the web that nearly every programmer aspires to.

Google communicated with Dr. Isaacs regularly. I have attached a 2015 email in which Google states:
> "You are one of the few partners who we have invited for Enhanced Support and Optimization. Thank you for working with us! We are grateful to count you as a trusted partner, and we hope to continue improving our relationship to suit your business needs."

This "trusted partnership" went beyond mere ranking of a website. OkCaller, a hand-picked Google success story, resulted in Dr. Isaacs regularly attending workshops with senior Google personnel in their Miami office. The site generated around $5 million per year, consistently, in

AdSense revenue. Sites like this fundamentally allowed Google to reach the success it enjoys today.

However, on the day Dr. Isaacs tendered a Closing Brief in an Apple antitrust lawsuit, Google abruptly terminated this partnership without any prior notice. Other competitors in Reverse Phone Search continue to receive millions of organic referrals monthly from Google/Alphabet. Blatant copycat sites (which infringe upon the reissue patent) such as RevealName continue to receive millions of referrals monthly from your service. Consumers are being overcharged with sites like Whitepages and Spokeo, which also appear to infringe upon the reissue patent (or warrant investigation). We have spent a year now asking you to investigate and preserve evidence, only to be stonewalled.

After Thanksgiving Day, Dr. Isaacs experienced significant respiratory issues, necessitating a troponin test to rule out myocardial damage. With the financial insecurity from his sudden OkCaller career termination and your ongoing subversion of his IP, Alphabet placed Dr. Isaacs under duress, and he placed his primary home for sale with Defendant Keller Williams. Because Alphabet refused to even dignify a response, Dr Isaacs remains in a state of limbo, watching his Google Analytics traffic daily for signs his work-product has been restored to its rightful position in search. Shutting down OkCaller would be costly as well; Dr. Isaacs requests Google's confirmation of partnership status to make an efficient decision. Because Google won't even disclose whether or not this change is a permanent end to his career with Google, he cannot make an informed decision in the dispute with KW. We request that Google LLC investigate and testify as to all evidence in their possession pertaining to the financial and emotional distress such decisions have caused developers, including Dr. Isaacs. All documentation, notes, or memoranda supporting or refuting the assertion that "trusted partners" may constitute "independent contractor," "worker," "employee," "agent," or "representative" subject to legal protections around such privity is hereby requested to be known to your representative at deposition.

Additionally, testimony on the circumstances leading to near-outright sudden termination of Top 2000/Top 50 sites is requested, as it is believed an event like this, especially on a holiday, is nearly unprecedented.

By running OkCaller individually, Dr. Isaacs was able to operate a phone site for 300 million people at enormous efficiency savings, estimated at over $100m saved to the domestic economy. Google is asked to provide testimony on all evidence of their profit streams and ranking factors from lucrative, over-priced competitors that charge users to look up phone records (eg WhitePages). OKCaller has been and always was a free service. We request you furnish testimony that corroborates or contradicts Dr. Isaacs' claim of his site contributing a $100 million savings to the domestic economy.

Despite repeated requests, Google failed to even acknowledge the termination of this partnership: a basic tenet of human employment dating back as far as records go. This termination appears to be the latest in escalating witness retaliation spanning nearly two decades, in violation of Section 1512. (*See generally*, USC, Dartmouth Email Destruction & World Bank President Resignation, and Apple litigation, which all directly relate back to a Rehabilitation Act prohibited anti-Semitic bullying event in 2005.) Just like Dr. Isaacs was summarily pulled from his promising neurosurgery

career, Google has now improperly cancelled him as a "trusted partner" serving *three hundred million* Google users, with absolutely no good cause. In fact, Alphabet's woefully inadequate responses thus far leave little room for doubt OkCaller's cancellation is part and parcel of this never-ending § 1512 saga.

During the *United States v. Google* antitrust trial last month, it was revealed that Google pays Apple Inc over 30% of revenue corresponding to iOS/Mac Search. This subpoena requests testimony on financial estimates of payments OkCaller generated that were directed to Apple. Likewise, all payments generated by websites that infringe upon the reissue patent are requested for testimony. Similarly, testimony familiar with documentation of any other agreements, contracts, or *de facto* relationships with Apple that could impact OkCaller's operations and/or rankings is hereby requested, including, but not limited to, communications channels discussing website security, privacy, reputation, affiliations, IP, or other matters.

This letter hereby demands that Google testify about all evidence that may support (or refute) these claims. The individual at deposition shall be familiar with all relevant facts mentioned in this letter, the Ninth Circuit Motion for Referral, and other documents previously provided to Google LLC.

As described more fully in Plaintiff's Ninth Circuit request for referral, that individual may reference any organization chart identifying all individuals (staff, managers, attorneys, etc) that played a role in either the Thanksgiving 2022 Adverse Event or the December 2022 Anti-Semitic Reference Event. She/he shall be familiar with any evidence Alphabet possesses documenting any investigation into either of these events.

We are amenable to a confidentiality order to given the sensitivity of the requested information. Please contact me at least fourteen (14) days in advance of the production date, should Google wish to formalize such an order.

For the purposed of this subpoena, "termination" shall refer to any partial termination or removal of OkCaller pages from Reverse Phone Search. These removals are estimated to approximate 97-99% of steady-state levels over the past decade. Should you have any questions or require further clarification, do not hesitate to contact me.

Sincerely,
Keith Mathews