UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  23-cv-81393-LEIBOWITZ/REINHART

DR. JEFF ISAACS,

     Plaintiff,

v.

KELLER WILLIAMS REALTY, INC., *et al.,*

     Defendants.

_____/

## <u>OMNIBUS REPORT AND RECOMMENDATION ON<br>MOTIONS TO DISMISS [ECF Nos. 29, 38, 39]</u>

Defendants Equestrian Palms, LLC ("Equestrian"), Makai Southeast, LLC d/b/a Keller Williams Realty Wellington ("Makai"), and Keller Williams Realty, Inc. ("KWRI") each move to dismiss Plaintiff Jeff Isaacs' ("Plaintiff" or "Dr. Isaacs") First Amended Complaint, ECF No. 25.[1] Dr. Isaacs filed a Consolidated Response in Opposition to the motions, and each Defendant filed a reply. ECF Nos. 58, 62, 67–68. Having reviewed the motions and being otherwise fully advised, it is hereby **RECOMMENDED** that Makai's Motion to Dismiss (ECF No. 38) be **GRANTED IN PART AND DENIED IN PART**, KWRI's Motion to Dismiss (ECF No. 39) be **GRANTED**, and Equestrian's Motion to Dismiss (ECF No. 29) be **DENIED AS MOOT**.

---

[1] Dr. Isaacs' Complaint was stricken twice for technical defects and refiled as an "Amended Complaint" on the docket. ECF Nos. 1, 6, 9. On November 15, 2023, Dr. Isaacs filed the operative "First Amended Complaint." ECF No. 25. The Court will refer to ECF No. 25 as the "First Amended Complaint."

## <u>BACKGROUND</u>

According to the First Amended Complaint, this dispute began on August 2, 2022, when Dr. Isaacs received an unsolicited text message about his home in Florida, from "Keller Williams."[2] ECF No. 25 ¶¶ 9, 13. The text message read:

> Hello Jeffrey good morning, this is Nico. I have been trying to reach you, to talk about your house in homeland.

*Id.* ¶ 13. The sender, Nico, was a real estate agent interested in selling Dr. Isaacs' home (the "Agent"). *Id.* ¶ 18. Dr. Isaacs responded to the Agent and "continued to accept calls," and "answer questions about his home" through at least December of 2022. *Id.* ¶ 15.

On December 14, 2022, the Agent sent Dr. Isaacs another text message:

> The market is going down, and I think to get it on the market, with all of my marketing strategies that I use with my team, that are very aggressive, would be very beneficial.

*Id.* ¶ 14. The same day, through the Agent, Dr. Isaacs entered into a contract with Makai (a local real estate company doing business as Keller Williams Realty Wellington) giving "Keller Williams" the exclusive rights to sell his home (the "Listing Contract").[3] *Id.* ¶ 16.

---

[2] As discussed in more detail below, Dr. Isaacs conflates the terms "KW Defendants," "KWRI," "Keller Williams," "Makai" and "KW" throughout the First Amended Complaint. Dr. Isaacs alleges that the text messages were sent from "Keller Williams," but does not define that term to mean Defendant KWRI, Defendant Makai, or both.

[3] Dr. Isaacs did not attach the Listing Contract to the First Amended Complaint but does not challenge the validity of the Listing Contract provided by Defendant Makai in its Motion to Dismiss, ECF No 38-1 at 8–13.

In February 2023, the Agent found a buyer for Dr. Isaacs' home: Equestrian. *Id.* ¶ 18. Dr. Isaacs then entered into a separate agreement with Equestrian, where he agreed to sell his home for $2,350,000.00 (the "Home Sale Contract"). *Id.* ¶¶ 18–19; ECF No. 38-1 at 14–31.[4] But the home sale never happened. Dr. Isaacs says that he and Equestrian agreed on a closing date in April, but a week after that agreement, the Agent informed Dr. Isaacs that "Mr. Font would be in Europe"[5] on that date so they "could not close." ECF No. 25 ¶ 20. Soon after he received that information, Dr. Isaacs told "Defendants" in writing that he would not be going through with the sale due to the war in Ukraine—invoking the *force majeure* provision of the Home Sale Contract. *Id.* ¶¶ 22, 79. Dr. Isaacs says that both Equestrian and the Agent were pressuring him to move out of his home as quickly as possible, by "harass[ing]" Dr. Isaacs' partner, and "mock[ing] his medical disabilities." *Id.* ¶¶ 21–22. Dr. Isaacs also challenges the commission for the sale as so high that it was anticompetitive. *Id.* ¶¶ 36, 42.

Shortly thereafter, on May 9, 2023, Equestrian filed a lawsuit in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, against Dr. Isaacs (the "Equestrian State Action"). ECF No. 56-1. Equestrian sued Dr. Isaacs for breach of the Home Sale Contract, seeking specific performance, or, in the alternative, monetary damages. *Id.* Separately, on June 27, 2023, Makai filed a lawsuit in the same court against Dr. Isaacs (the "Makai State Action"). ECF No. 56-13. Makai sued

---

[4] Dr. Isaacs did not attach the Home Sale Contract to the First Amended Complaint but does not challenge the validity of the Home Sale Contract provided by Defendant Makai in its Motion to Dismiss, ECF No 38-1 at 14–31.
[5] The First Amended Complaint does not explain who "Mr. Font" is.

3

Dr. Isaacs for breach of the Home Sale Contract and breach of the Listing Contract. *Id.*

On October 16, 2023, while Equestrian and Makai were still trying to serve Dr. Isaacs in the state court actions, Dr. Isaacs filed this case in federal court. ECF No. 1. On November 15, 2023, he filed the First Amended Complaint at issue here. ECF No. 25. Dr. Isaacs now asserts six claims: (1) violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by KWRI and Makai; (2) violation of the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c), by all Defendants; (3) breach of contract by Makai and Equestrian; (4) abuse of process by all Defendants; (5) violation of the Fair Housing Act (FHA), 42 U.S.C. § 3604, by all Defendants; and (6) violation of the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1-2, 15, against the "KW Defendants," which is not defined. *See generally* ECF No. 25.

The First Amended Complaint, however, is not isolated to the events between Dr. Isaacs and the Defendants. Rather, Dr. Isaacs attempts to bring a class action against all Defendants, relying on two main theories: (1) the Defendants conducted a telemarketing scheme to solicit business without regard for the national do-not-call registry, in violation of the TCPA; and (2) the Defendants' underlying goal of the telemarketing scheme was "to illicitly obtain between 6% and 12% of Florida resident's life savings" in commissions on home sales in violation of federal antitrust laws. *See, e.g., id.* ¶¶ 3–4.

Each Defendant now moves to dismiss the First Amended Complaint. ECF Nos. 29, 38, 39. These motions are ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) says a complaint states a claim for relief only if it "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party attacks the sufficiency of the pleading by filing a motion to dismiss under Rule 12(b)(6). In resolving that challenge, the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed that way, the factual allegations must be enough to raise a right to relief above the speculative level, "on the assumption that all the allegations in the claim are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007) (citations omitted). "[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted).

 "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U. S. at 678 (citing *Twombly*, 550 U.S. at 570). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard.").

One way to violate Rule 8 is to file a so-called shotgun pleading, which is a complaint that "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has repeatedly instructed lower courts to dismiss shotgun pleadings, *sua sponte* if necessary. *See Jackson v. Bank of Am.*, 898 F.3d 1348, 1357 (11th Cir. 2018). "[T]he Court cannot be forced to speculate on what someone is complaining about." *Shillingford v. Rolly Marine Serv., Inc.*, No. 14-cv-61936, 2014 WL 6682477, at *2 (S.D. Fla. Nov. 25, 2014). The Court cannot simply "fill in the blanks" to state a claim, and "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8." *Id.* (citations omitted); *see also Richardson v. Route 1, Inc.*, No. 8:12-cv-2888-T-33TBM, 2013 WL 4055857, at *4 (M.D. Fla. Aug. 12, 2013) ("This Court is not duty-bound to scrutinize [plaintiff's] factual allegations and hypothesize as to what potential cause of action these facts might support."); *accord United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (The Court will not act "like [a] pig, hunting for truffles.").

## DISCUSSION

### I.   Shotgun Pleading

As an initial matter, the First Amended Complaint should be dismissed as a shotgun pleading. KWRI asserts this argument in its Motion to Dismiss, and the Court may *sua sponte* assess it as to the remaining Defendants. *See* ECF No. 39 at 1–2; *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) ("When faced with a shotgun pleading, a district court must *sua sponte* give the plaintiff at least one chance to replead a more definite statement of her claims before dismissing her case with prejudice.") (citing *Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)). The Eleventh Circuit has outlined four categories of

7

shotgun pleadings meriting dismissal: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The First Amended Complaint squarely fits within the fourth category.

Dr. Isaacs asserts six claims against various groupings of the Defendants. In doing so, Dr. Isaacs repeatedly conflates the Defendants and the actions attributable to each of them. In the First Amended Complaint, Dr. Isaacs defines Defendant Makai as "Makai" and Defendant Equestrian as "Equestrian Palms," but does not create a defined term for Defendant KWRI. *See* ECF No. 25 ¶¶ 9–10. This omission quickly proves problematic for his key allegations. Dr. Isaacs states, for instance, that "Keller Williams" sent him a text message through "Agent Nico,"[6] but that Dr. Isaacs accepted calls from "KW." *Id.* ¶¶ 13, 15. Then, Dr. Isaacs states that he entered into

---

[6] As discussed more fully below, Dr. Isaacs fails to allege the identity and affiliation of "Agent Nico," implying that he is somehow an employee or agent of both Makai and KWRI.

a contract with "Makai" which gave "Keller Williams" the exclusive right to sell his property. *Id.* ¶ 16. Later, Dr. Isaacs says the "KW Defendants" filed a lawsuit in state court for breach of contract, although he never defines that term. *Id.* ¶ 21.

Each count contains allegations that further cloud which, if any, defendant is participating. In Count I, Dr. Isaacs states that he received text messages from "Keller Williams and Makai" although he began the First Amended Complaint by saying that only "Keller Williams" sent the messages at issue through "Agent Nico". *Id.* ¶¶ 13, 54. In Count II, Dr. Isaacs asserts a RICO claim against all Defendants, stating broadly that "Defendants formed a telemarketing scheme meant to exploit homeowners by aggressively pursuing real estate transactions in a manner that violated federal code." *Id.* ¶ 62. Notably, Dr. Isaacs refers to the actions of "Keller Williams," "KW," and "Defendants" generally throughout Count II but does not mention Makai at all. *Id.* ¶¶ 60–73. In Count III, Dr. Isaacs sues both Makai and Equestrian for "breach of contract" but fails to specify whether the Listing Contract (to which Equestrian is not a party), the Home Sale Contract, or both, are at issue. *Id.* ¶¶ 74–84. Rather, Dr. Isaacs refers to the agreement(s) as "Plaintiff and Defendants' sale agreement," which is neither defined nor attached as an exhibit to the First Amended Complaint. *Id.* ¶ 79. As part of the alleged breach(es), Dr. Isaacs states that "[u]pon information and belief, Defendants filed multiple lawsuits in various jurisdictions, all prohibited by the Arbitration and Mediation clauses," which are both undefined terms. *Id.* ¶ 82. In Count IV, Dr. Isaacs again names all Defendants, despite providing no allegations that Defendant KWRI initiated an

action against him in state court that could serve as the foundation for an abuse of process claim. *Id.* ¶¶ 85–92. Dr. Isaacs says generally that "*Defendants* had agreed to forego litigation," and "*they* threatened Plaintiff for six months that they would sue him." *Id.* ¶ 87 (emphasis added). In Count V, Dr. Isaacs asserts an FHA claim against all Defendants, and again omits any mention of Makai, while grouping the actions of all "Defendants." *See, e.g., id.* ¶¶ 95 ("Defendants enacted discriminatory practices meant to exploit Plaintiff's medical disabilities"); 98 ("Defendants filed multiple lawsuits, prohibited by the Arbitration and Mediation clauses[.]"). In Count VI, Dr. Isaacs asserts a claim for violation of the Sherman and Clayton Antitrust Acts against "the KW Defendants," which is an undefined term. *Id.* ¶¶ 102–14. Throughout Count VI, Dr. Isaacs consistently refers to the conduct of "Defendants," despite the fact that Defendant Equestrian is not even named in that count. *Id.*

Because Dr. Isaacs' First Amended Complaint is an impermissible shotgun pleading, the undersigned recommends that it be DISMISSED WITHOUT PREJUDICE with one final opportunity to re-plead.

## II.   Failure to State a Claim

Defendants Makai and KWRI[7] additionally challenge the First Amended Complaint for failure to state a claim upon which relief can be granted. ECF Nos. 38, 39. For the following reasons, the undersigned recommends that Makai's Motion be GRANTED IN PART AND DENIED IN PART and KWRI's Motion be GRANTED.

---

[7] Dr. Isaacs filed a Stipulation of Dismissal with Prejudice as to Claims against Defendant Equestrian, ECF No. 116. As such, the undersigned recommends that Equestrian's Motion to Dismiss, ECF No. 29, be DENIED AS MOOT.

A. *Count I: Violation of the TCPA against Defendants Makai and KWRI*

Defendants Makai and KWRI each move to dismiss Count I for failure to state a TCPA claim. The TCPA provides a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" in the statute. 47 U.S.C. § 227(c)(5). Dr. Isaacs' claim relies on the allegation that he received at least two telephone solicitations in late 2022 although his mobile telephone number has been on the National Do Not Call Registry since 2008. ECF No. 25 ¶¶ 12–14. As relevant here, the TCPA's implementing regulation states:

(c) No person or entity shall initiate any telephone solicitation to:

[. . .]

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. . . .

47 C.F.R. § 64.1200(c)(2). The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" with certain exceptions. 47 U.S.C. § 227(a)(4).

Makai says: (1) the text messages were not solicitations or advertisements under the TCPA because they were "transactional" in nature; (2) the business

11

relationship exception bars Dr. Isaacs' TCPA claim; (3) Dr. Isaacs failed to plead that his phone number was residential; and (4) Dr. Isaacs' claim is precluded by res judicata because he is part of an earlier settlement class (the "*De Shay* Class"). ECF No. 38 at 4–10. KWRI echoes Makai's final argument and adds: (1) Dr. Isaacs failed to plead direct liability against KWRI because he did not say that KWRI sent any text messages or initiated any calls; and (2) Dr. Isaacs failed to plead vicarious liability against KWRI because he did not say how KWRI was related to Makai or the Agent. ECF No. 39 at 5–10.

    i)  <u>The text messages were not "only transactional in nature" and the TCPA claim is not barred by the business relationship exception.</u>

Makai first argues that the Agent's text messages were not solicitations or advertisements as defined by the TCPA because they were "only transactional in nature." ECF No. 38 at 4–5 (citing *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal. 2018)). On this point, Makai relies on *An Phan*, where the court held that text message confirmations, sent after the plaintiff booked travel through the defendant's website, were not "advertisements" under the TCPA. 351 F. Supp. 3d at 1266. In its analysis, the *An Phan* court noted that the text messages were part of an ongoing transaction between the plaintiff and defendant, which would not be complete until the plaintiff's travel concluded. *Id.* at 1265. The text messages were deemed transactional because they were not intended to solicit or advertise any business, but rather to provide confirmation of a travel booking already completed and provide the opportunity for the plaintiff to modify his travel details prior to his stay. *Id.*

Here, however, the reasoning of *An Phan* does not apply. In Count I, Dr. Isaacs points to two text messages as violating the TCPA: the August 2, 2022, text message from the Agent, and the December 14, 2022, text message from the Agent. ECF No. 25 ¶¶ 13–14. Taking the allegations in the First Amended Complaint as true and viewing them in the light most favorable to Dr. Isaacs, the text messages were sent for the purpose of soliciting Dr. Isaacs' business—namely, convincing Dr. Isaacs to list his property with the Agent, who hoped to eventually receive a commission if the house was sold. Neither text message served as a confirmation of prior business such that the reasoning of *An Phan* would move the text messages from solicitations or advertisements to purely parts of an ongoing transaction.

Similarly, Makai argues that the business relationship exception applies to bar Dr. Isaacs' TCPA claim. ECF No. 38 at 5–6. The TCPA excludes from its definition of "telephone solicitation" any calls or messages "to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B).

Dr. Isaacs alleges that, at the time he received the first text message on August 2, 2022, he "had no prior relationship with Agent Nico, and had never met him," but "[t]o the extent [he] had transacted with KW years prior, it was with a different agent and beyond the 18-month requirements of TCPA." ECF No. 25 ¶ 54. Makai argues that even if that fact is true, the second text message identified by Dr. Isaacs would not be a solicitation or advertisement because the Agent and Dr. Isaacs established a business relationship in the interim after the first text message. ECF No. 38 at 5–6.

However, Makai relies on evidence which the Court declines to consider at the motion to dismiss stage. Makai submitted screenshots of purported text messages between the Agent and Dr. Isaacs to support its Motion to Dismiss. ECF No. 38-5. In his Response, Dr. Isaacs challenges the validity of the text message exchange as "partial and misleading". ECF No. 58 at 8. Without addressing the purported text messages, the Court finds that the First Amended Complaint does not contain enough information on its face to determine that a business relationship was established between the Agent and Dr. Isaacs at the time either text message was sent.

ii)  <u>Dr. Isaacs adequately plead his mobile phone number.</u>

Next, Makai argues that Dr. Isaacs failed to plead that his phone number was residential. The relevant portion of TCPA's implementing regulation applies to a "residential telephone subscriber" on the national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). The First Amended Complaint says that Dr. Isaacs' "Pennsylvania area code mobile telephone has been on the National Do Not Call Registry since 2008, continuously." ECF No. 25 ¶ 12. It does not explicitly allege that the phone number is "residential."

However, "the FCC extended the rule in [47 C.F.R.] section 64.1200(c)(2) to cover 'wireless telephone numbers.'" *Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) (citing 47 C.F.R. § 64.1200(e); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003)). In its order, the FCC "clarified that it 'will presume wireless subscribers who ask to be put on the [DNC Registry] to be 'residential

14

subscribers.'" *Id.* (citing 18 F.C.C.R. at 14039). As such, Dr. Isaacs' failure to allege that his phone number was "residential" is immaterial, and his allegation that it is a "mobile telephone" is sufficient to survive at the motion to dismiss stage.

    iii) <u>Dr. Isaacs failed to plead direct or vicarious liability against KWRI.</u>

As discussed above, the First Amended Complaint repeatedly conflates the Defendants—and most often, Defendants Makai (doing business as Keller Williams Realty Wellington) and KWRI. Dr. Isaacs says that the two text messages at issue were sent by "Keller Williams" and that he "continued to accept calls from KW." ECF No. 25 ¶¶ 14, 15. In Count I, Dr. Isaacs says that "Defendants Keller Williams and Makai sent unsolicited text messages," referring to the messages from the Agent, and that Dr. Isaacs had "transacted with KW years prior." *Id.* ¶ 54. Because Makai does business as "Keller Williams Realty Wellington," it is unclear which Defendant(s) Dr. Isaacs refers to in these statements.

Dr. Isaacs also does not include allegations regarding the employment of the Agent—whether he is employed by Makai and/or KWRI such that his text messages would possibly invoke vicarious liability as to either company. He also fails to include allegations of the relationship between Makai and KWRI such that the actions of one may implicate the other through vicarious liability. Without more, Dr. Isaacs fails to state a claim against KWRI through either direct or vicarious liability on Count I.[8]

---

[8] Both Makai and KWRI argue that Dr. Isaacs' TCPA claim is barred because he is a member of the earlier *De Shay* settlement class. The Court declines to reach this argument because Dr. Isaacs has failed to plead the relationship between the Agent, Makai, and KWRI. Without more, the Court cannot determine whether Dr. Isaacs was in fact a member of the settlement class such that his TCPA claim would be barred.

### B. *Count II: Violation of RICO against all Defendants*

Defendants Makai and KWRI each move to dismiss Count II for failure to state a RICO claim. To state a claim for RICO, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Omnipol, A.S. v. Multinational Defense Services, LLC*, 32 F.4th 1298, 1308–09 (11th Cir. 2022) (citations omitted). "In order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a 'pattern of racketeering activity' by alleging that the defendants committed two qualifying predicate acts." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) (citing *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 948–49 (11th Cir. 1997)). A "qualifying predicate act" is one described in 18 U.S.C. § 1961(1). *Id.* Vague references to a predicate act, however, are not enough. "[A] plaintiff [must] allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Id.*

Makai argues that the First Amended Complaint fails to plead any qualifying predicate acts. ECF No. 38 at 10–13. The First Amended Complaint seems to allege the following predicate acts: (1) TCPA violations; (2) "Telemarketing Fraud and Email Fraud regulations, including 18 U.S.C. § 2325"; (3) "exploitation of a disabled adult" in violation of Florida Statute § 825.103; and (4) FHA violations. ECF No. 25 ¶¶ 61–71. Additionally, the First Amended Complaint contains multiple vague references to unspecified "predicate acts." *Id.* ¶¶ 61 ("The predicate acts are alleged for a time frame spanning August 2022 through October 2023, and for the Class members, over a period spanning the last four years through class certification."); 66

("The enterprise engaged in predicate acts over a significant timespan exceeding six months, and violated multiple federal and Florida state laws in carrying out these predicate acts."); 70 ("This conduct, the predicate acts beyond TCPA and itself seeking to exploit a disabled person, falls under RICO's jurisdiction over state law extortion and fraud crimes."); 71 ("Plaintiff objected to Keller Williams [sic.] illegal tactics, including TCPA violations, he was met with harsh retaliatory actions by the enterprise which constitute further Obstruction of Justice predicate acts."); 73 ("Keller Williams' actions also demonstrate a disregard for the sanctity of the courts, and as such represent an ongoing obstruction of justice predicate act.").

Makai argues that none of the offenses listed in Count II of the First Amended Complaint are qualifying predicate acts for a civil RICO claim. ECF No. 38 at 10–11. The Court agrees. Section 1961 contains no reference to the TCPA, the FHA, 18 U.S.C. §§ 2325 or 2326, or the "exploitation of a disabled adult" under state laws. *See* 18 U.S.C. § 1961(1) (listing predicate acts).

KWRI say that Count II is vague in terms of both the activities alleged and the Defendant(s) to which each activity is attributed. ECF No. 39 at 10–12. The Court agrees. Count II does not mention either Makai or KWRI by name. Rather, the allegations are attributed to either "Defendants," "the enterprise," "Keller Williams," "KW," or "all Keller Williams corporate and franchise agents who used illegal tactics to procure business." ECF No. 25 ¶¶ 62–73. Count II is devoid of dates, times, and details of the alleged "racketeering activities." Instead, Dr. Isaacs relies on broad statements such as "Agent Nico's, and therefore Keller Williams' text messages

directed towards Plaintiff meet all criteria for 'telemarketing fraud' as defined and serve as specific pleading," and "Surely Plaintiff was not the only victim of Keller Williams [sic.] scheme, and others were made similar unfulfilled promises[.]" *Id.* ¶¶ 64, 67. Thus, in addition to failing to plead qualified predicate acts, the Court finds that the First Amended Complaint fails to state a claim.[9] As such, KWRI and Makai's motions should both be GRANTED as to Count II.

## C. *Count III: Breach of Contract against Defendants Makai and Equestrian*

Defendant Makai moves to dismiss Count III for breach of contract. Makai's sole argument is that the claim is barred by the litigation privilege. The litigation privilege in Florida "essentially provid[es] legal immunity for actions that occur in judicial proceedings." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). Makai argues that the basis for Dr. Isaacs' claim is the fact that Makai sued him in state court (the Makai State Action) allegedly violating the arbitration provision in a contract.[10] Makai says that the litigation privilege prevents Dr. Isaacs from "suing Makai for suing him." ECF No. 38 at 13.

The Court disagrees. The purpose of the litigation privilege is to protect actions *within* legal proceedings—not to protect the initiation of the proceedings themselves.

---

[9] Defendant KWRI also argues that the First Amended Complaint fails to allege an enterprise because the members of the "enterprise" are agents of each other. As pled, the First Amended Complaint includes Defendant Equestrian in the alleged enterprise, albeit in a somewhat unclear manner. ECF No. 25 ¶ 68 ("In this case, Keller Williams actually recruited Equestrian Palms as an enterprise member[.]"). Neither KWRI nor Makai says that Equestrian is their agent. As such, Court rejects this argument.

[10] The First Amended Complaint does not specify whether the Listing Contract, the Home Sale Contract, or both are at issue in Count III.

Just as Dr. Isaacs could have filed a counterclaim in the Makai State Action for breach of contract, he can file a breach of contract action here. Such a claim is not protected by the litigation privilege as would be an allegedly defamatory statement or "other misconduct occurring during the course of a judicial proceeding." *Echevarria*, 950 So. 2d at 384. Because this is the only argument Makai presents to the Court regarding the breach of contract claim, the undersigned recommends that the Motion be DENIED on this ground as to Count III.

### D. Count IV: Abuse of Process against all Defendants

Defendants Makai and KWRI each move to dismiss Count IV for abuse of process for failure to state a claim. "Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." *Kodski v. Branch Banking and Trust Co.*, No. 15-cv-81053, 2018 WL 830117, at *4 (S.D. Fla. Feb. 12, 2018) (citing *Cline v. Flagler Sales Corp.*, 207 So. 2d 709, 711 (Fla. 3d DCA 1968)). To state a claim for abuse of process under Florida law, a plaintiff must show: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019) (citations omitted).

KWRI argues that the First Amended Complaint fails to allege that KWRI served Dr. Isaacs with process at all, as it was not involved in any of the underlying state court lawsuits (*i.e.,* the Makai State Action and the Equestrian State Action).

ECF No. 39 at 13–14. The Court agrees. Dr. Isaacs says that "Defendants had agreed to forego litigation" and "Defendants executed the process" but never refer to an action involving KWRI. ECF No. 25 ¶¶ 87–88. Rather, Dr. Isaacs says only that his counsel "reached out to KW" and "Keller Williams headquarters was asked if they endorse lawsuits brought in violation of ADR clauses, meant to harass and oust a couple impacted by the Ukrainian war from their home." *Id.* ¶ 92. Dr. Isaacs says that because KWRI did not respond to the vague request, their inaction is grounds for vicarious liability on this count. The Court rejects this argument whole cloth. Dr. Isaacs has not alleged any facts that would serve as a basis to involve KWRI in an abuse of process claim and one vague reference to "reach[ing] out" to an entire company in an undisclosed time and manner, and receiving no response cannot serve as grounds for vicarious liability. As such, KWRI's Motion should be GRANTED as to Count IV.

Makai acknowledges that it served process on Dr. Isaacs in the Makai State Action but takes issue with the timing of the allegations. Specifically, Makai argues that to state an abuse of process claim, a plaintiff must allege "that the act or acts constituting the misuse *occurred after the process issued.*" ECF No. 38 at 14 (citing *Kodsi v. Branch Banking & Tr. Co.,* 2018 WL 830117, at *4 (S.D. Fla. 2018) (emphasis added in Motion)). Makai argues that "the alleged abuse of process" in the First Amended Complaint "is the actual filing of the underlying lawsuit" rather than some action occurring after the process issued. ECF No. 38 at 14.  The Court agrees.

The First Amended Complaint says that "Defendants willfully violated ADR to injure Plaintiff," "threatened Plaintiff for six months that they would sue him," "were informed repeatedly that their actions were in violation of the ADR provisions, and caused Plaintiff harm," and "actually filed a false lawsuit claiming there was no war in the Ukraine." ECF No. 25 ¶¶ 86, 88, 90. Even if true, these allegations refer to the filing of the Makai State Action, and not to any misuse of process occurring thereafter. Indeed, "[t]he 'mere filing of a complaint and having process served is not enough to show abuse of process.'" *EmCyte Corp. v. XLMedica, Inc.*, No. 2:19-cv-769-JES-NPM, 2022 WL 394392, at *11 (M.D. Fla. Feb. 9, 2022) (citing *Della-Donna v. Nova Univ., Inc.*, 512 So.2d 1051, 1055 (Fla. 4th DCA 1987)). Dr. Isaacs also says that the Defendants "publish[ed] unnecessary notices in popular Palm Beach newspapers." *Id.* ¶ 87. This argument is a misunderstanding of alternative service, and not evidence of an abuse of process.

Finally, Dr. Isaacs says, "Defendants executed the processes with intent to harm plaintiff, cause him distress, and inflict expensive attorney's fees as a result," "caused pain and suffering to Plaintiff and his relatives," and "attempt[ed] to exploit [Dr. Isaacs,] an individual with physical disabilities." *Id.* ¶¶ 88–89. So, Dr. Isaacs' theory is that Makai sued him, and served him with process, just to upset him. This theory is not enough to state a claim. *See T.V. Azteca de C.V. v. Telemundo Comm'ns Grp., Inc.*, No. 06-cv-22048, 2007 WL 9701166, at *7 (S.D. Fla. Feb. 21, 2007) ("There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or

21

ulterior purpose.") (citing *Scozari v. Barone,* 546 So.2d 750, 751-752 (Fla. 3d DCA 1989)). Even taking the allegations in the First Amended Complaint as true, if Makai did file its state court action and serve process to upset Dr. Isaacs, there is no allegation of collateral effects occurring *after* the process issued. Thus, Makai's Motion to Dismiss should be GRANTED on this ground as to Count IV.

### E. Count V: Violation of the FHA against all Defendants

Defendants Makai and KWRI each move to dismiss Count V for violation of the FHA for failure to state a claim. The FHA prohibits, in relevant part, "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," and "discriminat[ion] in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. §§ 3604(b), (f)(1). The First Amended Complaint alleges that the Defendants discriminated against Dr. Isaacs based on both his national origin and handicap. Specifically, Dr. Isaacs says "Defendants [sic.] practice of choosing to disregard a foreign war, and even disputing its existence, amounts to national origin discrimination, in that it disproportionately harms and burdens individuals on the basis of their national origin," and "Defendants exploited Plaintiff's medical disabilities for leverage in real estate transactions," to "force a sale of a home, in violation of the FHA." ECF No. 25 ¶¶ 95–98.

Makai argues first that the cited provisions of the FHA apply only to buyers and renters, and not to sellers. ECF No. 38 at 15. Makai focuses on Dr. Isaacs' allegation that:

> The actions of Defendants, as depicted, violate the FHA's provisions (42 U.S.C. § 3604), which clearly outlaw:
> a. Denial of housing or obstruction of housing transactions based on the national origin or disability of potential buyers.
> b. Differential treatment in sale conditions or provision of services due to the buyer's national origin or disability.

ECF No. 25 ¶ 99. Dr. Isaacs responds that the FHA applies instead to actions "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of race, color, religion, sex, familial status, or national origin." ECF No. 58 at 18–19 (citing 42 U.S.C. § 3604). Neither Makai nor Dr. Isaacs cites to any legal authority to support whether the FHA applies to buyers, sellers, or both. Because Makai's argument relies only on one paragraph of the First Amended Complaint, and ignores the remaining allegations referencing the FHA more broadly, the Court is not persuaded that this argument serves as a ground for dismissal.

Makai also argues that even if the FHA applies to Dr. Isaacs, he has failed to include allegations sufficient to state a claim for national origin discrimination. ECF No. 38 at 15. The Court agrees. Dr. Isaacs' national-origin-based claim rests vaguely on the assertion that the Defendants collectively "discriminate against individuals like Plaintiff based on their national origin, by unduly dismissing the disruption and peril caused by war events affecting those of a particular national origin," and "Defendants [sic.] practice of choosing to disregard a foreign war, and even disputing

its existence, amounts to national origin discrimination, in that it disproportionately harms and burdens individuals on the basis of their national origin." ECF No. 25 ¶ 97. The First Amended Complaint, however, does not say *which* national origin the Defendants are discriminating against. Dr. Isaacs alleges that he is "a United States citizen and a permanent resident of a former USSR country impacted by the Russia-Ukraine war," and he "obtained permanent resident status in his wife's birthplace former USSR country." *Id.* ¶¶ 8, 96. The Eleventh Circuit has recognized "that alienage—not being a citizen of the United States—differs from national origin, i.e. the particular country in which one was born." *United States v. Osorto*, 995 F.3d 801, 822 (11th Cir. 2021). Not only does the First Amended Complaint omit where Dr. Isaacs was born, it also implies that he is *not* from the "former USSR country" mentioned because he gained permanent resident status through his wife. An FHA national origin claim cannot stand where there is no allegation of Dr. Isaacs' national origin. As such, Makai's Motion to Dismiss should be GRANTED as to the national-origin-based FHA claim in Count V. However, Dr. Isaacs also asserts handicap as grounds for his FHA claim in Count V, which Makai does not challenge here.

KWRI argues that it has no involvement, nor is involvement alleged, with the events surrounding the FHA claim. The Court agrees. The only possible mention of Defendant KWRI is through the use of "Keller Williams" in the statement "Plaintiff has been subject to unequal treatment on the basis of national origin and medical disability by Keller Williams, a real estate corporation engaged in residential property transactions within the jurisdiction of this Court, and Equestrian Palms, a

for-profit equestrian corporation." ECF No. 25 ¶ 95. The remaining allegations in this count, however, seem to reference only the transactions, and resulting state court actions, involving Makai and Equestrian. The broad statements such as "Defendants enacted discriminatory practices based on national origin, and Defendants enacted discriminatory practices meant to exploit Plaintiff's medical disabilities," are far from sufficient to state a claim against Defendant KWRI. *Id.* As such, KWRI's Motion to Dismiss should be GRANTED as to Count V.

F. *Count VI: Violation of the Sherman and Clayton Antitrust Acts against "KW Defendants"*

Finally, Defendants Makai and KWRI each move to dismiss Count VI for violation of the Sherman and Clayton Antitrust Acts for failure to state a claim. Dr. Isaacs alleges that the "KW Defendants," an undefined term, and the "Keller Williams Defendants along with their proven co-conspirators," another undefined term, actively "suppress[ed] efficient marketplace internet tools" including "suppressing non-affiliated listings from platforms like Zillow," such that home sellers are harmed by reduced visibility. ECF No. 25 ¶¶ 110–14.

Defendant KWRI asserts three arguments regarding Count VI: (1) Dr. Isaacs lacks Article III standing because he suffered no injury-in-fact; (2) Dr. Isaacs' reliance on *Aspen Skiing* is misplaced; and (3) Dr. Isaacs did not plead the involvement of KWRI. ECF No. 39 at 15–18. Defendant Makai additionally argues that Dr. Isaacs' commingling of defendants is fatal to these specific allegations, and Dr. Isaacs does not attempt to link the actions of Zillow to Makai. *Id.*

First, the Court addresses Article III standing. Article III standing is a prerequisite to the Court exercising subject matter jurisdiction over a claim. "Article III standing 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong,' . . . and it 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *AT&T Mobility, LLC v. Na'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007)). Without Article III standing, there is no constitutionally-cognizable case or controversy. A Court that lacks subject matter jurisdiction is without power to act. The party invoking the jurisdiction of a federal court bears the burden of establishing these elements to the extent required at each stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citations omitted). In turn, there are three elements to establish Article III standing. There must be an injury-in-fact, a causal connection between the plaintiff's injury and the challenged action of the defendant (often called "traceability"), and a likelihood that a favorable judgement will redress the plaintiff's injury. *Id.* at 1338. KWRI challenges whether Dr. Isaacs suffered an injury-in-fact.

Specifically, KWRI says that Dr. Isaacs seeks to challenge what he calls the "Adversary Commission Rule" and represent a class of plaintiffs who paid a

commission to a broker "affiliated with Keller Williams." ECF No. 39 at 15 (citing ECF No. 25 ¶¶ 44, 114). Dr. Isaacs, however, does not allege that he actually paid a commission to a broker at all, because his home sale never occurred. *Id.* Because he did not pay a commission he has not suffered a sufficient injury-in-fact, so he does not have Article IIII standing to represent the purported class of plaintiffs or proceed individually in challenging this Rule.

Dr. Isaacs does assert an additional premise for injury-in-fact, however: because the Defendants suppressed for-sale-by-owner listings on platforms such as Zillow, he received decreased views, and was forced to retain a broker for the sale of his home. ECF No. 25 ¶¶ 110–11. For the same reasons argued by KWRI, though, this argument also fails to allege injury-in-fact. While decreased views and the constructive requirement to retain a broker may *lead to* injury, that injury would be in the form of a commission payment. Because Dr. Isaacs did not pay a commission for the sale of his home—and indeed, did not sell his home—he does not allege an injury-in-fact sufficient to provide standing in this Court. As such, Count VI should be dismissed against Defendants KWRI and Makai for lack of Article III standing. Because the Court lacks standing, it cannot opine further on the merits of the claim.

## RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that Equestrian's Motion to Dismiss (ECF No. 29) be **DENIED AS MOOT**, Makai's Motion to Dismiss (ECF No. 38) be **GRANTED IN PART AND DENIED IN** PART, and KWRI's Motion to Dismiss (ECF No. 39) be **GRANTED** as follows:

1. Count I should be DISMISSED as to Defendant KWRI only;

2. Count II should be DISMISSED as to Defendants KWRI and Makai;

3. Count IV should be DISMISSED as to Defendants KWRI and Makai;

4. Count V should be DISMISSED as to Defendant KWRI on both national origin and handicap grounds, and DISMISSED as to Defendant Makai on national origin grounds;

5. Count VI should be DISMISSED as to Defendants KWRI and Makai for lack of Article III standing; and

6. In the alternative, the First Amended Complaint should be DISMISSED WITHOUT PREJUDICE as a shotgun pleading.

<u>**NOTICE OF RIGHT TO OBJECT**</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable David S. Leibowitz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE (5) DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 17th day of April 2024.

_____
BRUCE E. REINHART
United States Magistrate Judge