# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 9:23-CV-81393-LIEBOWITZ

DR. JEFF ISAACS, on behalf of himself and
others similarly situated,

      Plaintiff,

v.

KELLER WILLIAMS REALTY, INC,
MAKAI SOUTHEAST, LLC, and
KCK DEVELOPMENT, L.L.C.

      Defendants.

_____/

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR**
**PALM BEACH COUNTY, FLORIDA**

MAKAI SOUTHEAST, LLC,           CASE NO.: 50-2023-CA-00000
                                    General Jurisdiction Division

      Plaintiff,

v.

JEFFREY ISAACS, individually,

      Defendant.

_____/

**<u>SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS</u>**

THIS SETTLEMENT AGREEMENT AND RELEASE (hereafter the "<u>Agreement</u>") is

made and entered into this _____ day of June 2024 (hereinafter "<u>Effective Date</u>"), between DR.

JEFFREY ISAACS ("<u>Isaacs</u>") and KELLER WILLIAMS REALTY, INC ("KWRI") and MAKAI

SOUTHEAST LLC ("<u>Makai</u>") (Collectively "KW"), and each of their heirs, administrators,

insurers, reinsurers, representatives, shareholders, directors, employees, members, managers,

affiliates, successors, assigns, subsidiaries, parent companies, sister companies, predecessor or successor companies, and/or any other individuals or entities related hereto (collectively referred to as the "Parties" or individually as "Party").

## RECITALS

**WHEREAS,** on or about September 20, 2020, Isaacs purchased the property located at 11482 Key Deer Circle, Lake Worth, Florida 33449 (the "Property") formerly owned by Eisen Family; with Makai acting as buyer's agent and receiving 3% commission and

**WHEREAS,** on or about December 16, 2022, Isaacs and Makai entered into an exclusive sale agreement to sell the Property, this agreement having been procured by a telemarketing call by Nico Maruri while Isaacs was on the National Do-Not-Call registry, and

**WHEREAS,** on or about February 22, 2023, Isaacs and "Jorge Luis Font Verdugo &/or Assigns" entered into an "AS IS" Residential Contract for Sale And Purchase (the "Residential Contract") for the purchase and sale of the property; and

**WHEREAS,** around May 2024, Makai failed the above captioned Circuit Court lawsuit against Isaacs, because of Isaacs' invocation of the *force majeure* clause due to the war in Ukraine and Dr. Isaacs' other home being located within 80 miles of an active war zone; Makai filed suit before any form of mediation and/or arbitration, both required by the exclusive sale agreement, and

**WHEREAS,** at time of this agreement, Makai continues to prosecute this lawsuit, despite the buyer, Equestrian, having "walked away" from the transaction months ago, and whereas Isaacs' contends the unwarranted litigation, now in its second year, has caused him loss of this time and substantial medical complications due to unnecessary stress, and

**WHEREAS,** at time of this agreement, KWRI has filed pleadings in the USDC action referencing acquitted claims, and despite their falsity, KWRI has refused to retract such pleadings on the basis of purported relevance; Isaacs had been exonerated of these allegations in two hearings by the Academy of Medical Colleges and New Hampshire Employment Tribunal, but had spent nearly a decade petitioning the Supreme Court for declaratory judgment regarding other entities' publication of the acquitted claims; Keller Williams' false publication therefore exacerbated the matter,  and

**WHEREAS,** significant media coverage of this matter has resulted in unjust reputational damage to Dr. Isaacs, where prior to this lawsuit brought by Makai, the entirety of Isaacs' litigation concerned the sole issue of defending his right to practice medicine, and

**WHEREAS,** at time of this agreement, KWRI has strict liability for TCPA violations for the putative class associated with this lawsuit, exceeding $80 million, and whereas Isaacs' termination of the case and lead Plaintiff likely avoids assessment of the TCPA fees, and

**WHEREAS,** at time of this agreement, an active legal dispute exists with KCK DEVELOPMENT concerning a fence/survey line boundary of approximately ½ acre on the Northwest corner of the Property.

**NOW THEREFORE**, for and in consideration of the promises and mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## <u>TERMS AND CONDITIONS</u>

1.      **Incorporation by Reference.** The Parties agree to adopt and incorporate the foregoing recitals by reference into this Agreement as though fully rewritten herein.

2.      **Settlement Consideration:** As a material inducement to and in consideration for the Parties entering into this Agreement, the Parties agree as follows:

(a) Isaacs shall file a Stipulation of Dismissal <u>with prejudice</u> in the Federal Court Action pursuant to Rule 41 with respect to Makai and KWRI.  The parties shall bear their respective attorneys' fees and costs.  The Stipulation of Dismissal will include a complete dismissal of any and all claims that were or could have been brought between the parties in the Federal Court Action. Isaacs and KWRI and Makai represent and warrant to each other that there are no known claims against each other that are not being dismissed herein.   The form of the Stipulation of Dismissal in the Federal Court Action shall relate solely to the claims between Isaacs and Makai/KWRI and is attached hereto as **Exhibit "A"** and specifically incorporated herein by reference. This paragraph shall not constitute any intent by Isaacs, nor shall it apply to any of the remaining claims by Isaacs against KCK or Google LLC. The Stipulation of Dismissal shall specifically provide that the claims against KCK remain pending and that the Dismissal shall only relate to Isaacs' claims against KW.

(b) Isaacs and Makai shall file a Stipulation of Dismissal <u>with prejudice</u> in the State Court Action.   The Parties shall bear their respective attorneys' fees and costs.  The Stipulation of Dismissal will include a dismissal of any and all claims that were or could have been brought between Isaacs and Makai in the State Court Action. Isaacs and Makai represent and warrant to each other that there are no known claims against each other that are not being dismissed herein.  The form of the Stipulation of Dismissal in the State Court Action is attached hereto as **Exhibit "B"** and specifically incorporated herein by reference.

(c) During the course of litigation, numerous ongoing disputes have arisen that involve the parties but cannot be resolved entirely by Settlement Agreement. The Parties hereby agree to participate in a motion for Court Approved Settlement pursuant to the Federal Declaratory Judgment Act.  The Motion for Settlement Approval is attached hereto as **"Proposed Court Approved Settlement."**  In the event any portion of this Motion is not granted, the Parties hereby stipulate that settlement is voided in entirety, as the subject matter of the motion represents a substantial part of Isaacs' consideration for this "walk-away" non-monetary settlement. In other words, with the absence of a buyer, Isaacs believes Makai's state court claim has no basis, and on the other hand, Makai and KWRI have substantial strict liability fees owed. This unnecessary near two-year litigation caused Isaacs substantial damages to his health, reputation, and economic well-being; a declaratory judgement clarify the acquittal of allegations, and resolution of the fence dispute, represent Isaacs' sole interest in this non-monetary settlement.

**3.** **Release from Isaacs to Makai/KWRI Releasees.** For ten and 00/100  ($10.00) paid by the KW Releasees (as hereinafter defined) to counsel for Isaacs, Keith Matthews, Esq., for the benefit of Isaacs , the covenants set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged by KW and Isaacs, Releasor Isaacs does hereby release, acquit, satisfy and forever discharge: (i) Makai (ii) KWRI; (iii) their counsel from any and all manner and manners of action, cause and causes of action, arbitral claims, legal, administrative law claims, common law claims, judicial or arbitral relief or remedy, whether in contract, statutory, tort, alleged criminal law violations, quasi-criminal law violations, alleged administrative violations, professional ethics violations, or otherwise, whether legal, administrative,  or equitable, which have arisen or may hereafter arise or accrue, including, but not limited to, all suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, attorneys' fees, costs, controversies, agreements, promises, variances, trespasses, damages, executions, claims and demands whatsoever, in law or in equity, whether known or unknown, whether suspected or not, foreseen or unforeseen, which have arisen, may have arisen, whether previously existing, presently existing, or arising hereafter, from the beginning of time through the date of this Release, that arise out of or otherwise relate to: (1) the Property; (2) the Sale Contract; (3) the State Court Action; (4) the Federal Court Action; (5) any of the allegations set forth in the Complaint filed in the State Court Action; (6) any of the allegations set forth in the Second Amended Complaint filed in the Federal Court Action against KW, (7) any alleged violations of law by KW or Makai, including, but not limited to, any alleged RICO violations, alleged violations of the FHA, alleged violations of the Americans With Disabilities Act, alleged violations of law that caused emotional distress, alleged violations of any laws protecting the disabled, including, but not limited to Section 825.102 and 825.103, Florida

Statutes; (8) any alleged ethical violations of the Florida Bar Rules of Professional Ethics; (9) any other matter whatsoever relating to any communications, actions, inactions, and/or dealings between Isaacs and any of the KW Releasees.

Releasor represents and warrant that Releasor specifically waives all claims or rights to assert any cause of action, alleged cause of action, claim or demand which has, through oversight or error, intentionally, unintentionally or through a mutual mistake, been omitted from this release to the extent it arose out of, or is related to the Claims and that this release from the Releasor to the KW Releasees shall be given the broadest possible interpretation and application for the purpose of resolving any and all disputes arising out of, or relating to, the Claims. It is the intention of Releasor that the rights and remedies of Releasor with respect to any claim that may be covered under this General Release shall henceforth and forevermore be regarded as irrevocably and forever released.

This Release may not be changed orally, but only in writing signed by the party to be charged. Releasor acknowledges that this General Release and the terms set forth herein constitute settlement of genuine, pre-existing disputes, cases and controversies and the very real and substantial benefits received by the Releasors are reasonably and rationally related to any and all relinquishment, waiver or release of its rights, claims and causes of action, whether arising under state or federal law or otherwise.  Releasors expressly covenant and agree not to subsequently challenge the constitutionality or legality of this Release. Notwithstanding the foregoing, this Release from Isaacs and Petrea to the Equestrian Releasees shall not be interpreted in any way to apply to any of the claims Isaacs and Petrea have, or may have, against KW and Makai.

    **4.**      **Release from the KW Releasors to Isaacs.**  For ten and 00/100  ($10.00) paid by counsel for Isaacs, the covenants set forth in this Agreement, and for other good and valuable

consideration, the receipt and sufficiency which is hereby acknowledged by Makai, (i) KWRI; (ii) Isaacs; KW Releasors and each of their respective predecessors, successors, successors in interest, affiliates, divisions, assigns, insurers, and all other persons or entities claiming under or through the above referenced person(s) and entity(ies) of this Paragraph, do hereby release, acquit, satisfy and forever discharge Isaacs, his lawyers including, but not limited to, Keith Mathews, Esq., individually, and their respective predecessors, successors, successors in interest, parents, spouses, siblings, parents, representatives, attorneys, insurers, and all other persons or entities claiming under or through Isaacs from any and all manner and manners of action, cause and causes of action, arbitral claims, legal, administrative law claims, common law claims, judicial or arbitral relief or remedy, known or unknown, whether in contract, statutory, tort, alleged criminal law violations, quasi-criminal law violations, alleged administrative violations, professional ethics violations, or otherwise, whether legal, administrative,  or equitable, which have arisen or may hereafter arise or accrue, including, but not limited to, all suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, attorneys' fees, costs, controversies, agreements, promises, variances, trespasses, damages, executions, claims and demands whatsoever, in law or in equity, whether known or unknown, whether suspected or not, foreseen or unforeseen, which have arisen, may have arisen, whether previously existing, presently existing, or arising hereafter, from the beginning of time through the date of this Release, that arise out of or otherwise relate to: (1) the Property; (2) the Sale Contract; (3) the State Court Action; (4) the Federal Court Action; (5) any of the allegations set forth in the Complaint filed in the State Court Action; (6) any of the allegations set forth in the Second Amended Complaint filed in the Federal Court Action; (7) any alleged violations of law by Releasees; (8) any other matter whatsoever relating to any communications, actions, inactions, and/or dealings between Isaacs and any of the KW Releasors;

This Release may not be changed orally, but only in writing signed by the party to be charged. KW Releasors acknowledge that this General Release and the terms set forth herein constitute settlement of genuine, pre-existing disputes, cases and controversies and the very real and substantial benefits received by the Releasors are reasonably and rationally related to any and all relinquishment, waiver or release of its rights, claims and causes of action, whether arising under state or federal law or otherwise.   Releasors expressly covenant and agree not to subsequently challenge the constitutionality or legality of this Release.

5.     **Non-Disparagement.** The Parties specifically agree that they shall not, directly or indirectly, disparage, patronize, impugn, denigrate, malign, or otherwise speak negatively of each other, their attorneys, insurers, agents, representatives, and relations, with respect to any issue or aspect this Agreement, the Claims, or any of the dealings between any of the Parties, counsel for the Parties' respective predecessors, successors, successors in interest, parents, affiliates, divisions, assigns, employees, former employees, officers, directors, shareholders, members, managers, estates, attorneys, trustees, beneficiaries, representatives, owners, agents, partners, general partners, limited partners, spouses, parents, or insurers.

6.     **Agreement Not to Publish or Disseminate Information or Opinion.** The Parties specifically agree that they shall not directly, or indirectly, post any information or reviews on the internet or any social media, regarding this Agreement, the Claims, the attorneys representing the Parties or their respective law firms.

7.     **Governing Law.** This Agreement shall be construed and governed in accordance with the laws of the State of Florida and the sole and exclusive venue for any lawsuit relating to this Agreement is the USDC for FLSD.

8.   **Complete Agreement.** The Parties acknowledge that in deciding to execute this Agreement and then in executing this Agreement, they have not relied upon any agreement, statement or representation that is not specifically set forth herein, that this Agreement contains the entire agreement between the Parties hereto regarding the resolution of State Court Action, the Federal Court Action, and all matters defined as "Claims" in paragraphs 3 and 4 of this Agreement, and that the terms of the Agreement are contractual and not mere recitals.

9.   **Modifications.** This Agreement cannot be amended, modified or amplified except by agreement and written document, which is signed by all Parties hereto. No oral statement made by any person shall operate to modify this Agreement in any manner or otherwise affect its terms and provisions.

10.   **Exhibits.** All of the exhibits attached to this Agreement are incorporated in, and made a part of this Agreement.

11.   **Severability.** If any provision of this Agreement is held to be invalid or unenforceable on any occasion or in any circumstance, such holding shall not be deemed to render this entire Agreement invalid or unenforceable, and to that extent, the provisions of this Agreement are severable; provided, however, that this provision shall not preclude a court of competent jurisdiction from refusing to sever any provision if severance would be inequitable to one or more of the Parties.

12.   **Enforceability.** In the event of any pleading, motion, or hearing to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of attorney's fees for services in enforcing same from the Party or Parties whose conduct necessitated the pleading, motion, or hearing.

13.     **Non-Waiver.** The failure of either party to enforce at any time any of the provisions of this Agreement shall not constitute a waiver of any such provisions.

14.     **Authority to Bind.** The signatories hereto each warrant and represent that they are over the age of 18 and that they have the requisite authority to enter into this Agreement on their behalf, that the respective parties own the claims released herein, and that none of the Parties have assigned, pledged, or otherwise conveyed the claims released herein to any other person.

15.     **Counterparts.** This Agreement may be executed in counterparts, and facsimile or email copies shall be considered the same as an original signature.

16.     **Endorsement of Federal Declaratory Judgement Act veritable controversy:** The Parties recognize that an approved Motion for Court Approved Settlement represents the final closure of the dispute, and that this motion invokes the Federal Declaratory Judgement Act. The parties hereby specifically agree to the following material terms of the motion.

(1) The parties agree that the MLS listing which accompanied the September 2020 sale of the property to Isaacs was accurate, reasonable, and complete. The boundary line diagram on the MLS listing was accurate and not under any reasonable, known dispute. Isaacs took ownership reasonably believing that his irrigation system, present on the property for thirty plus years, irrigated the property he was purchasing. Isaacs reasonably believed the mature trees in the disputed annexed zone were being purchased as part of that transaction. Isaacs reasonably believed an open horse trail adjacent to FPL power lines created a safety buffer for FPL access thereto. Isaacs reasonably believed the fence on this property, erected forty years ago, was reasonably close to the actual and/or intended survey lines. Isaacs purchased this property sight unseen during a pandemic emergency, and KWRI was not negligent to not recommend

a property survey. Indeed, given the reasonable obviousness of the boundaries by fencing, such a survey would have been unnecessary delay during a pandemic emergency. Makai agrees Isaacs purchased this property in part due to the mature trees creating a space for intended aviary, safe FPL access, aesthetics of open horse trails, and safe buffer/flood areas by his pond. Makai and KWRI have no information to suggest KCK owned or had rights to any of the disputed annexed zone.

(2) KWRI acknowledges it filed references to allegations of which Isaacs was acquitted, by means of a 2007 federal court settlement agreement. KWRI did not mention this acquittal when they filed the references. KWRI referenced other out-of-date PACER filings when they filed their own document, thereby inadvertently perpetuating false allegations Isaacs had been acquitted of nearly twenty years ago. KWRI accepts that Isaacs has spent much of his adult life having to defend such false allegations, to the detriment of his health. KWRI recognizes that former AUSA Mark Josephs spent several years investigating the matter and seeking declaratory judgement to prevent exactly the type of unnecessary harms caused by KWRI's false pleadings. KWRI acknowledges AUSA Joseph's actions were frustrated by expired SOL or jurisdictional matters not present herein. In other words, by suing Isaacs, KWRI created a veritable controversy that can finally bring justice and closure to the matter through the Federal Declaratory Judgement Act. In light of the justice and fairness of this outcome, and KWRI's participating in the motion for Settlement/Declaratory Judgement, Isaacs specifically waives all fees, damages and other awards under TCPA or other statutes.

Makai and KWRI hereby authorize these assertions to be included as verified facts in the Motion.

MAKAI SOUTHEAST, LLC

By:_____

COUNSEL FOR MAKAI


By:_____

Dr. Jeffrey Isaacs, individually


KELLER WILLIAMS REALTY INC.
By:_____

COUNSEL FOR KWRI