UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 23-CV-81393-LEIBOWITZ/REINHART

Dr. Jeff Isaacs

    Plaintiff,

v.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER WILLIAMS
REALTY WELLINGTON), and EQUESTRIAN PALMS,
LLC

    Defendants.

---

**JOINT SCHEDULING REPORT**

Pursuant to the Court's Order dated July 23, 2024 (Docket No. 146), Fed. R. Civ. P. 16 and 26, and Local Rule 16.1(b), Plaintiff Dr. Jeffrey Isaacs and Defendants Keller Williams Realty, Inc. and Makai Southeast, LLC have met and conferred in efforts to submit this Joint Scheduling Report.  In accordance with Local Rule 16.1(b)(1), Plaintiff and Defendants communicated by phone and email beginning on August 22, 2024. Notably, the parties met & conferred for an earlier 26(f) conference throughout November, 2023, by Zoom and email. Both instances have resulted in a total roadblock by Defendants, who are simply unwilling to agree to any schedule or discovery plan, or to even sign a joint report. After now dozens of emails evidencing their disruptive approach to the 26(f) procedure, Plaintiff has no choice but to file this unilateral proposed report and schedule. Plaintiff as attaching Defendant's last draft "joint report," which was a refusal to engage in case management and discovery scheduling. Plaintiff therefore under Rule 11 is unable to jointly

– 1 –

sign that their document represents any form of compliance with FRCP 16 and 26.

For sake of consistency, and in the event Defendants join this effort at the last minute[1], the document shall refer to "signing parties" or "participating parties" of the joint report. Presently, the Plaintiff is the only signing/participating party in this report. An alternative report provided by Defendants is attached, which contains repeated boiler-plate objections to any discovery, on the purported basis of this case having been settled. Defendants' position on settlement is therefore apparently in defiance to the Magistrate's order determining that KW's motion to enforce settlement was not reasonable.

Oddly, KW refuses to participate in this planning any discovery for this litigation, despite the fact that it was commenced by Keller Williams and their subsidiary Makai. That litigation remains active in state court, having been remanded after an unsuccessful attempt to remove it to this federal court. The underlying dispute concerns KW's demand for commissions totaling about 10% of the value of Plaintiff's home and net worth. 5% of that commission was paid in 2020 when Plaintiff purchased his home with KW serving as buyer's agent. The other 5% is sought by KW for a 2023 transaction in which the buyer "walked away," due to difficulties closing relating to the war in Ukraine and Plaintiffs' disabled health status. In all, KW participated in about 4 showings, totaling about 4 hours, and minimal MLS listing/publicity efforts. For those four hours of work, $200,000 in commissions is sought, or about $50,000 per hour. KWRI's perceived entitlement could not greater; KWRI has harassed Plaintiff and burdened him with two years of litigation, while he faces deteriorating and serious health challenges. Although FHA and RICO charges have been dismissed, Plaintiff maintains that their conduct is highly unethical and warrants redress.

---

[1] As of 5PM end of business day Defendants had not provided a reply to Counsel. Plaintiff's position is that their continued stonewalling of discovery, on the basis of a purported settlement agreement, represents contempt for this Court's order that no settlement occurred. Defendants have apparently filed a Joint Report with Plaintiff counsel signature block, which was not approved by Plainitiff.

From the perspective of the forest versus the trees, this case exemplifies ongoing national debate and antitrust reform concerning the real estate industry. Last October, the *Sitzer* Missouri verdict found KWRI guilty of monopolizing the industry with unfair commissions, a felony, though the case was civil. KWRI and co-Defendants retained Skadden Arps on Appeal, and were able to set aside the verdict in place of a settlement. That settlement went into effect last week. Already, there is deep public concern about its terms. First, it is unclear it will meaningfully reduce the average commission (5%) paid by Americans, which is 2x-5x higher than what a competitive rate should be, and indeed, the rate in other countries. Second, it now requires all potential buyers to sign *written contracts* with realtor firms whenever they wish to merely view a home for sale. As this case evidences, signing a contract with a firm such as KWRI is not a trivial request – it can result in two years of life-changing complex litigation.

Given the Defendants' refusal to participate in proper planning of discovery, for nearly one year, the Plaintiff requests the Court's authority be exercised to rectify the situation. This is a matter of national importance.

It should also be noted that this underlying dispute began with several unsolicited cold calls by KW. This is a *res ipsa loquitor* situation concerning conduct violations subject to strict liability under TCPA. KWRI has no intent to comply with TCPA. Plaintiff has documented about a dozen further cold calls as recent as last month sent from KWRI agents seeking to sell his home, apparently who have no knowledge of this lawsuit. The case is ripe for summary judgement on TCPA, and tactics to subvert discovery must be recognized for what they are.

## I. DIFFERENTIATED CASE MANAGEMENT

The Parties agree to a complex trial track.  Trial of this matter will occupy 10-12 trial days. The likelihood of settlement

**A.** Likelihood of settlement

The Parties will explore the possibility of settlement as appropriate throughout the pendency of this action, and will keep the Court apprised of the status of any possible settlement.

**B.     The likelihood of appearance in the action of additional parties**

Besides Defendant KCK Development, LLC which was the subject of recent pleadings the parties do not anticipate the addition of any more parties.

**C.     Proposed limits on time**

The parties agree to the schedule attached hereto as exhibit 1.

**D.     Proposals for the formulation and simplification of issues, including the elimination of frivolous claims or defenses, and the number and timing of motions for summary judgment or partial summary judgment**

The parties will continue to work on simplification as necessary. Absent further agreement between the parties, the Federal Rules, Local Rules, and this Court's standing orders will govern.

**E.     The necessity and desirability of amendments to the pleadings**

The Plaintiff does not expect to require further amendment of its pleadings unless hereto unknown discovery requires it.

**F.     The possibility of obtaining admissions of fact and of documents, electronically stored information or things which will avoid unnecessary proof, stipulations regarding authenticity of documents, electronically stored information or things, and the need for advance rulings from the Court on admissibility of evidence**

The parties will endeavor, in good faith, to obtain admissions of fact, make appropriate stipulations, exchange documents, and do such other things as will avoid unnecessary proof. The parties will endeavor to stipulate regarding authenticity of relevant documents and reserve arguments to interpretation of such documents. At this time, the parties do not see any need for advance rulings on admissibility of evidence.

**G.    Suggestions for the avoidance of unnecessary proof and cumulative evidence**

At this time, the parties do not have specific suggestions for the avoidance of unnecessary proof and cumulative evidence, but they will endeavor to eliminate such issues through stipulated facts, stipulated authentication of certain documents, and joint exhibits at trial, where appropriate.

**H.    Suggestions on the advisability of referring matters to a Magistrate Judge or master**

The Parties do not have any current stance as to what matters would be appropriate for referral.

**I.    Preliminary estimate of the time required for trial**

The signing Parties agree that this case will require 3 days of trial time. This is assuming TCPA claims were adjudicated summarily, and the Sherman claims are focused on revisions to Skadden's Sitzer settlement buyer's contract terms and related FSBO matters.

**J.    Requested date or dates for conferences before trial, a final pretrial conference, and trial**

Please see the Proposed Scheduling Order attached as Exhibit 1.

**K.    Any Issues About:**

**1.    Disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced**

The Parties will work toward agreement on a protocol to govern the general exchange of such material and may adapt the form and timing of such production based on specific production issues. The Parties also may submit a proposed order addressing such issues for the Court's consideration.

Obtaining early, comprehensive ESI is critical to determining the full extent of KWRI's TCPA violations. The DeShay settlement apparently never quantified the scale of KWRI's uncolicitied mass text message/phone call campaigns. When possible , KWRI should immediately

preserve and analyze their agents' historical SMS and phone logs, screening for TCPA infractions. Considering the scale of this, and that some of these logs may no longer exist for the five year timeframe, it may be informative to employ data analytics firns to analyze third party sources, such as stored telco records, Google Voice, Google Mail, and others. Statistical sampling may be more practical at times, ie analyzing s subset of KW agents' TCPA violations and extrapolating. Since it is established KWRI has already violated the Deshay agreement, KW should bear costs for a comprehensive, initial disclosure of the true scale of their TCPA breach.

> **2.  Claims of privilege or of protection as trial-preparation materials, including – if the parties agree on a procedure to assert those claims after production – whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502**

At this time, the parties do not foresee issues with claims of privilege or protection of trial-preparation materials. The parties agree that the inadvertent disclosure of information protected by the attorney-client privilege, the work-product privilege, or any other privilege shall not constitute a waiver of an otherwise valid claim of privilege. A party that receives privileged information shall return it to the producing party immediately upon demand by the producing party or upon discovery of the privileged information by the receiving party, and the receiving party shall not retain a copy of the privileged information.

The parties will comply with the Court's rules governing redaction of account and social security numbers.

> **3.  When the parties have agreed to use the ESI Checklist available on the Court's website (www.flsd.uscourts.gov), or matters enumerated on the ESI Checklist**

The parties have not agreed to use the Court's ESI Checklist, but expect that any agreed protocol to govern the disclosure and production of electronically stored information will incorporate appropriate provisions in the Court's ESI Checklist.

## II.      RULE 26(f) DISCOVERY PLAN

In accordance with Federal Rule 26(f), the signing parties provide the following views and proposals on a discovery plan.

The signing/participating parties agree that discovery starts immediately.

### A.      Changes in timing, form, or requirement for disclosures under Rule 26(a)

The signing parties agree for initial disclosures to proceed as per FRCP without delay.

### B.      Subject, timing, and phases of discovery

Plaintiff asserts that the scope of discovery is reasonably ascertainable at this moment and consists, in an initial stage, of gathering telecommunication records evidencing KWRI and subsidiaries' mass abuse of the TCPA. Additionally, the discovery file from the *Sitzer* Missouri Sherman Act guilty verdict will be instrumental in guiding further discovery regarding FRBO matters, and streamlining this litigation.

Upon compilation of the TCPA violations, and review of the Missouri records, Summary Judgement will be likely on the TCPA claims, and a focused, expert-based approach will be appropriate for the remaining FSBO Sherman Claims. The DOJ has filed *amicus* briefings indicating that the FSBO market is restrained by NAR and realtor (ie KWRI) conduct; Plaintiff anticipates substantial availability of data and expert coverage of this matter by mid-next year, hence discovery should conclude in an expedited matter.

### C.      Any issues about disclosure, discovery, or preservation of electronically stored information

The Parties will meet and confer to agree on an appropriate ESI protocol and confidentiality agreement.

      **D.**    **Any issues about claims of privilege or of protection as trial-preparation materials**

The participating parties will consider appropriate agreements on a joint protective order and other confidentiality when appropriate.

      **E.**    **Changes in the limitations on discovery imposed under the Federal or Local Rules, and other limitations to be imposed**

At this time, the participating parties do not suggest any changes in the limitations on discovery imposed under the Federal and Local Rules. Should any other need arise, the parties will confer and submit any issues to the Court.

      **F.**    **Any other orders that should be entered by the Court under Rule 26(c) or under Local Rule 16(b) and (c).**

The Court should lift the present stay on discovery. This is a *res ipsa loquitor* sitation where KWRI is plainly guilty of TCPA violations, and have misrepresented settlements in the past. For nearly a year, KWRI has engaged in hostile and disruptive practices to prevent discovery, since last November's 26(f) conference, where their counsel laughed and ridiculed Dr. Isaacs that he "would never" see discovery in this case.

Date: August 28, 2024

Respectfully submitted,

/s/ Ayelet Faerman
Ayelet Faerman (Fl. Bar 102605)
FAERMAN LAW, P.A.
3859 NW 124th AVE
CORAL SPRINGS, FL 33065
ayelet@faerman.law

*Attorney for Plaintiff*

Keith Mathews, Esq. (pro hoc vice)

**Exhibit 1**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 23-CV-81393-LEIBOWITZ/REINHART**

Dr. Jeff Isaacs

    Plaintiff,

v.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER WILLIAMS
REALTY WELLINGTON), and EQUESTRIAN PALMS,
LLC

    Defendants.

---

## PROPOSED SCHEDULING ORDER

IT IS HEREBY ORDERED that this case shall proceed along the following schedule:

1. Pursuant to Local Rule 16.1(A), this case shall be assigned to the Standard Case Management Track, with the parties expecting trial to take 3 days and propose the following schedule:

    a. Discovery begins: Discovery begins immediately.

    b. The Parties shall file their initial disclosure under Federal Rule of Civil Procedure 26(a)(1): October 4, 2023

    c. The Parties shall designate a mediator and schedule a time, date, and place for mediation: October 4, 2023

    d. Any additional parties shall be added by, or amendments to the pleadings shall be made by, or motion filed by: January 14, 2025.

e. Any motions for class certification shall be filed by March 20, 2025.

f. Any reply to motions for class certification shall be filed April 18, 2025.

g. Fact discovery shall be completed: June 20, 2025.

h. Any non-expert discovery motions shall be filed: June 30, 2025.

i. The Parties shall identify experts and serve expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B): June 27, 2025.

j. Each party shall identify rebuttal experts, and serve rebuttal expert reports for the same July 31, 2025.

k. Expert discovery, including no more than one deposition per expert, absent Court order of the Parties' agreement, shall be completed: August 21, 2025.

l. Mediation shall occur by: November 20, 2025.

m. Dispositive motions (including summary judgment motions but excluding motions affecting the conduct of trial) may be filed at any time but shall be filed by this date. All responses to such motions shall be filed within two weeks of service of the initial motion. All replies shall be filed within seven days of service of any responses. November 3, 2025.

n. Motions *in limine* shall be filed by this date.  All responses to such motions shall be filed within two weeks of service of the initial motion.  All replies shall be filed within seven days of service of any responses. December 15, 2025.

o. Trial March 17, 2026.

2. Pretrial conference and trial dates will be scheduled at the convenience of the Court; however, the Parties submit that this case will be ready for trial any time after March 17, 2026.

      3.      The pretrial conference shall be held on _____ .

ORDERED THIS DATE:

Dated: _____                    _____