UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  23-CV-81393-ROSENBERG/REINHART

JEFF ISAACS

      Plaintiff,

v.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER
WILLIAMS REALTY WELLINGTON), and
EQUESTRIAN PALMS, LLC,

      Defendants.

_____/

## DEFENDANT, MAKAI SOUTHEAST, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 15th
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIVIL DIVISION

CASE NO:

MAKAI SOUTHEAST, LLC d/b/a
KELLER WILLIAMS REALTY WELLINGTON,

       Plaintiff,

vs.

JEFFREY ISAACS,

       Defendant.

_____/

## COMPLAINT

Plaintiff, MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, files this Complaint against, Defendant, JEFFREY ISAACS, and alleges as follows:

### JURISDICTION VENUE AND PARTIES

1.      This is an action for damages in excess of Fifty Thousand and 00/100 Dollars ($50,000.00) exclusive of prejudgment interest on a liquidated sum, costs and attorney's fees, arising out of the material breaches of both an Exclusive Right of Listing Agreement (**Exhibit "A"** to this Complaint) and an "AS IS" Residential Contract for Sale and Purchase (**Exhibit "B"** to this Complaint).

2.      These contractual breaches by Defendant arose in connection with the sale of Defendant's residence located at 11482 Key Deer Circle, Lake Worth, Palm Beach County,

Florida 33449 (the "Property") to a third-party buyer EQUESTRIAN PALMS, LLC or its assigns.

3.      MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, is a limited liability company organized under the laws of the State of Florida, with its Principal address in Palm Beach County, Florida.

4.      Upon information and belief, Defendant, JEFFREY ISAACS, is a resident of either Palm Beach County, Florida or Berwyn, Pennsylvania, is over the age of eighteen (18) years old and otherwise *sui juris.*

5.      Defendant is the sole, fee simple title holder of the Property. A true and correct copy of the Warranty Deed for the Property recorded on September 24, 2020 at Official Records Book 31773, Page 1252 of the Public Records of Palm Beach County, Florida is attached hereto as **Exhibit "C"** to this Complaint.

6.      Venue is proper in Palm Beach County, Florida pursuant to Section 47.011, Florida Statutes, as the Defendant is a resident of Palm Beach County, Florida, and the Property giving rise to this claim is situated is in Palm Beach County, Florida. In addition, the causes of action accrued in Palm Beach County, Florida by Defendant who committed a breach of both **Exhibit "A"** and **Exhibit "B"** in Palm Beach County, Florida.

## FACTS OF THE CASE

7.      On or about December 17, 2022 Defendant entered **Exhibit "A"** with Plaintiff, through its licensed real estate salesperson, Nicholas Maruri ("Maruri") who listed the Property for sale on the Multiple Listing Service (MLS).

8.    On February 22, 2023, Defendant entered **Exhibit "B"** with a third-party buyer for the sale and purchase of the Property for the sum of Two Million Three Hundred Fifty Thousand and 00/100 Dollars (2,350,000.00).

9.    Pursuant to Paragraph 4 of **Exhibit "B",** Defendant was required to close on the sale of the Property on or before April 21, 2023.

10.    In late March, 2023, Defendant informed Mauri that he would not be closing as per **Exhibit "B"** with the third-party purchaser.

11.    Upon information and belief and at all times material, the third-party purchaser and/or its assign(s) were ready willing and able to close the sale and purchase transaction with Defendant but Defendant refused to consummate the sale breaching both **Exhibit "A"** and **Exhibit "B"** with Plaintiff by not consummating the sale on or before April 21, 2023.  To date Defendant has refused to honor the terms and conditions of **Exhibit "A"** and **Exhibit "B"** and remains in breach of these contracts necessitating the institution of this action.

12.    All conditions precedent to the filing of this action have been performed, excused, or waived.  Defendant is obligated to pay Plaintiff its liquidated, earned commission on this transaction as more specifically plead herein.  Plaintiff is obligated to pay Plaintiff's attorney's fees incurred in pursing this action.

## COUNT I

## BREACH OF EXCLUSIVE RIGHT OF SALE LISTING AGREEMENT

## (EXHIBIT "A")

13.    Plaintiff reincorporates the allegations of paragraphs 1 – 12 above as though fully set forth herein.

14.     Defendant by his actions has breached the contract language set forth in Exhibit "A." Pursuant to **Exhibit "A"**, Defendant was to compensate Plaintiff for its services in listing Defendant's real property for sale and utilizing its best efforts to procure a purchaser. Paragraph 8 (a) of Exhibit "A" provided for a sales commission in the amount of six per cent (6%) of the amount of the agreed purchase price to be paid to Defendant.

15.     Plaintiff and Defendant agreed pursuant to **Exhibit "A"** that Plaintiff would receive a three per cent (3%) sales commission based upon the purchase price and that the remaining three per cent (3%) of the purchase price would be paid to another real estate sales brokerage for their services in procuring the purchaser.  In fact, Plaintiff was the real estate broker on both sides of this transaction, representing the seller and was the procuring cause of the purchaser. Accordingly, the parties agreed upon an adjusted commission to Plaintiff for its services in the amount of five per cent (5%) of the purchase price or the liquidated amount One Hundred Seventeen Thousand Five Hundred Dollars ($117,500.00).

16.     As a result of Defendant's breach Plaintiff has been caused to retain the undersigned attorney to prosecute this action and is obligated for payment of a reasonable attorney's fee. Paragraph 12 of **Exhibit "A"** provides for an award of attorney's fees to the prevailing party in any litigation brought pursuant to **Exhibit "A"**.

WHEREFORE, Plaintiff, MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, pleads this Court for an award of damages against Defendant, JEFFREY ISAACS in the amount of its liquidated damages ($117,500.00); for prejudgment interest on any award from the date of the breach or April 21, 2023; for costs incurred in the prosecution of this action and an award of a reasonable attorney's fee pursuant to **Exhibit "A"** and for such further

relief as the Court deems just and proper.

Plaintiff, MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, demands trial by jury of all issues so triable as a matter of right.

<div align="center">

**COUNT II**

**BREACH OF "AS IS" RESIDENTIAL CONTRACT FOR SALE AND PURCHASE**

**(EXHIBIT "B")**

</div>

17.     Plaintiff reincorporates the allegations of paragraphs 1 – 12 above as though fully set forth herein.

18.     Defendant by his actions has breached the contract language set forth in **Exhibit "B."** Pursuant to **Exhibit "B"** Defendant was contractually obligated to close the transaction for the sale and purchase of the Property on April 21, 2023.  On April 21, 2023 Plaintiff refused to proceed with the closing placing him in breach of **Exhibit "B"**.

19.     Page 12 of 12 of **Exhibit "B"** sets forth the entitlement of Plaintiff to be paid a real estate commission in the amount of five percent (5%) of the Property sales price or the liquidated amount of One Hundred Seventeen Thousand Five Hundred Dollars ($117,500.00). These monies were to be disbursed to Plaintiff by the closing agent at the time of closing.

20.     In addition, page 12 of 12, paragraph 20 (2) provides for payment to Plaintiff of the sum of Two Hundred ninety-five ($295.00) Dollars as a transaction fee.  Again, these monies were to be disbursed to Plaintiff by the closing agent at the time of closing.

21.     As a result of Defendant's breach Plaintiff has been caused to retain the undersigned attorney to maintain this action and is obligated for payment of a reasonable

attorney's fee. Paragraph 17 of **Exhibit "B"** provides for an award of attorney's fees to the prevailing party in any litigation permitted by and brought pursuant to **Exhibit "B"**.

WHEREFORE, Plaintiff, MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, pleads this court for an award of damages against Defendant, JEFFREY ISAACS in the amount of its liquidated damages ($117,795.00); for prejudgment interest on any award from the date of the breach or April 21, 2023; for costs incurred in the prosecution of this action and an award of a reasonable attorney's fee pursuant to **Exhibit "B"** and for such further relief as the Court deems just and proper.

Plaintiff, MAKAI SOUTHEAST, LLC d/b/a KELLER WILLIAMS REALTY WELLINGTON, demands trial by jury of all issues so triable as a matter of right.

> JOHN W. CARROLL, P.A.
> Attorney for Plaintiff,
> MAKAI SOUTHEAST, LLC d/b/a
> KELLER WILLIAMS REALTY WELLINGTON
> 198 Santa Barbara Way
> P.O. Box 31794
> Palm Beach Gardens, Florida 33420
> Tel:    (561) 762-8923
> Fax:    (561) 841-6911
> E-mail: jwcarroll@jwcarroll.com
>
> By: _____
>        John W. Carroll
>        FL Bar No.: 297194

NOT A CERTIFIED COPY

# Exhibit "A"

## Exclusive Right of Sale Listing Agreement



1   This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2*  Jeffrey D Isaacs _____ ("**Seller**")

3*  and Keller Williams Realty Wellington _____ ("**Broker**").

4   **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5   property (collectively "Property") described below, at the price and terms described below, beginning
6*  12/17/2022 _____ and terminating at 11:59 p.m. on 07/31/2023 _____ ("Termination Date"). Upon
7   full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8   automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9   that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13* (a) **Street Address:** 11482 Key Deer Circle _____

14                              Lake Worth                          FL   33449

15* Legal Description: HOMELAND AS IN SEC/TWN/RNG/MER:SEC 35 TWN 44S RNG 41E HOMELAND LOT 106

16* _____ ☐ See Attachment _____

17* (b) **Personal Property, including appliances:** _____

18* _____ ☐ See Attachment _____

19  (c) **Occupancy:**
20* Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller:**
22* (a) **Price:** $2,790,000.00 _____
23* (b) **Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24* ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25* with the following terms: _____
26* ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27* an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28* _____, at an interest rate of _____ % ☐ fixed ☐ variable (describe) _____.
29* Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller: (1)** You may
30  remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31  lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32  escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33  (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34  authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35  whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36  advised to consult with a legal or mortgage professional to make this determination.
37* (c) **Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed 0 ____ % of the
38  purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property in accordance with
40  this Agreement until a sales contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42  because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43  obligated to enter the Property into the MLS within one (1) business day of marketing the Property to the public
44  (see Paragraph 6(a)) or as necessary to comply with local MLS rule(s). This listing will be published accordingly in
45  the MLS unless **Seller** directs **Broker** otherwise in writing. (See paragraph 6(b)(i)). **Seller** authorizes **Broker** to
46  report to the MLS this listing information and price, terms, and financing information on any resulting sale for use
47  by authorized Board / Association members and MLS participants and subscribers unless **Seller** directs **Broker**
48  otherwise in writing.

6. **Broker Authority: Seller** authorizes **Broker** to:
   (a) Market the Property to the Public (unless limited in Paragraph 6(b)(i) below):
      (i) Public marketing includes, but is not limited to, flyers, yard signs, digital marketing on public facing websites, brokerage website displays (i.e. IDX or VOW), email blasts, multi-brokerage listing sharing networks and applications available to the general public.
      (ii) **Public marketing also includes marketing the Property to real estate agents outside Broker's office.**
      (iii) Place appropriate transaction signs on the Property, except if Paragraph 6(b)(i) is checked below.
      (iv) Use **Seller's** name in connection with marketing or advertising the Property.
      ☐ Display the Property on the Internet except the street address.
   (b) Not Publicly Market to the Public/Seller Opt-Out:
      (i.) ☐ **Seller** does not authorize **Broker** to display the Property on the MLS.
      (ii.) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), a For Sale will not be placed upon the Property and
      (iii.) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), **Broker** will be limited to marketing the Property only to agents within **Broker's** office.
      _____/_____ **Initials of Seller**
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   (e) (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
      ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
   (f) Act as a transaction broker.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
      ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
      ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Recognize **Broker** may be subject to additional MLS obligations and potential penalties for failure to comply with them.
   (c) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (d) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   (e) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.
   (f) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (g) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:
   _____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
   (h) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

Seller (__NDI__) (_____) and Broker/Sales Associate (_____) (__MM__) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-18tb Rev 5/20                                                                    © 2020 Florida Realtors®

8. **Compensation:** Seller will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller. Seller** will pay **Broker** as follows (plus applicable sales tax):

   (a)* 6 % of the total purchase price plus $ 295 OR $ , no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

   (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

   (c)* _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.

   (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether the buyer is secured by **Seller, Broker,** or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to cancel an executed sales contract. (3) If, within 60 days after Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom **Seller, Broker,** or any real estate licensee communicated regarding the Property before Termination Date. However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another broker.

   (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive 50 % (50% if left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the Paragraph 8(a) fee.

9. **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if compensated by **Seller** or **Broker,** may represent the interests of the buyer. **Broker's** office policy is to cooperate with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of ☐ 3 % of the purchase price or $ to a single agent for the buyer; ☐ 3 % of the purchase price or $ to a transaction broker for the buyer; and ☐ 1 % of the purchase price or $ to a broker who has no brokerage relationship with the buyer. ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

10. **Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect the value of the residential property which are not readily observable to the buyer; will present all offers and counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with **Seller** unless waived in writing.

11. **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property, and pay a cancellation fee of $ 1000 plus applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph 8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

12. **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller** (___) (___), Sales Associate (_μ_), and **Broker** (___) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split the arbitrator's fees and administrative fees of arbitration.

13. **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives, administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This

Seller (_DS_ M ) (___) and Broker/Sales Associate (___) (_DS_ ML ) acknowledge receipt of a copy of this page, which is Page 3 of 4.
ERS-19lb Rev 5/20                                                                                   © 2020 Florida Realtors®

162     Agreement is the entire agreement between **Seller** and **Broker.** No prior or present agreements or representations
163     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
164     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
165     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
166     of potential or actual transferees.

167* **14. Additional Terms:** Seller has refused to let Agent (Nicholas Maruri) take professional

168     photos of property on this agreement. Agent will use pictures from a past Listing for this

169     current listing. Seller agrees to pay 100% of fines that Agent might get involved due to

170     using the pictures of a past listing.

171

172

173

174

175

176

177

178

179

180* **Seller's Signature:** _Jeffrey D Isaacs_      Date: 12/17/2022 | 4:59 PM PST

181* Home Telephone: (610)202-1460      Work Telephone: _____      Facsimile: _____

182* Address: 11482 Key Deer Circle      Lake Worth      FL    33449

183* Email Address: jeffreydi@gmail.com

184* **Seller's Signature:** _____      Date: _____

185* Home Telephone: _____      Work Telephone: _____      Facsimile: _____

186* Address: _____

187* Email Address: _____

188* **Authorized Sales Associate or Broker:** _Nico Maruri_      Date: 12/17/2022 | 11:31 A

189* Brokerage Firm Name: Keller Williams Realty Wellington      Telephone: _____

190* Address: 1400 Corporate Center Way      Wellington      FL    33414

191* | Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery. |

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only be real estate licensees who are members of the NATIONAL ASSOICATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S, Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller ( JDI ) ( _____ ) and Broker/Sales Associate ( _____ ) ( ML ) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-18tb Rev 5/20      © 2020 Florida Realtors®

Exhibit "B"

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 FloridaRealtors®

1* **PARTIES:** Jeffrey D Isaacs _____ ("Seller"),
2* and Jorge Luis Font Verdugo &/ or Assigns _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7*    (a) Street address, city, zip: 11482 Key Deer Circle         Lake Worth       33449
8*    (b) Located in: Palm Beach    County, Florida. Property Tax ID #: 00-41-44-35-01-000-1060
9*    (c) Real Property: The legal description is HOMELAND AS IN SEC/TWN/RNG/MER:SEC 35 TWN 44S RNG 41E
10       Homeland LOT 106
11
12       together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13       attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14       by other terms of this Contract.
15    (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16       which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17       purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18       and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19       television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20       keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*       Other Personal Property items included in this purchase are: Generator, Security Cameras
22
23       Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*    (e) The following items are excluded from the purchase:
25

### PURCHASE PRICE AND CLOSING

27* **2. PURCHASE PRICE** (U.S. currency):.............................................................................$ 2,350,000.00
28*    (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ...........$ 550,000.00
29       The initial deposit made payable and delivered to "Escrow Agent" named below
30*       **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within 10   (if left blank,
31       then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32       SHALL BE DEEMED SELECTED.
33*       Escrow Agent Name: Felipe Frias, Esq.
34*       Address: 8950 SW 74th Court suite 1901    Miami    FL 33156   Phone: 305-665-3311
35*       Email: ff@pnrlaw.com               Fax: 305-665-1244
36*    (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*       days after Effective Date ............................................................................$
38       (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*    (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.........
40*    (d) Other: _____ ...............$
41    (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*       transfer or other Collected funds (See STANDARD S)...........................................$ BALANCE
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*       02/22/2023 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46       Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47       the counter-offer is delivered.
48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49       initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51    received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52    furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

Buyer's Initials JLF            Page 1 of 12            Seller's Initials JDI
FloridaRealtors/F_____-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

53 * this Contract, the Closing shall occur on 04/21/2023 ("Closing Date"), at the time
54 established by the Closing Agent.

55 **5. EXTENSION OF CLOSING DATE:**
56     (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57     Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58     checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59     extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60     days.
61     (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62     unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63     extended as provided in STANDARD G.

64 **6. OCCUPANCY AND POSSESSION:**
65     (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66     to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67     personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68     codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69     to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70     shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71     CLOSING OCCUPANCY BY BUYER.
72     (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73     subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74     Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75     shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76     within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77     occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78     election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79     Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80     and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81     be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82     Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.
83 * **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 * this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86 **FINANCING**

87 **8. FINANCING:**
88 * ☒ (a) This is a cash transaction with no financing contingency.
89 * ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90 * Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91 * (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92 * adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 * blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").
97 *     (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106     (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111     (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115     (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120     (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126     (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132 ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133 ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136     (a) **COSTS TO BE PAID BY SELLER:**
137     • Documentary stamp taxes and surtax on deed, if any     • HOA/Condominium Association estoppel fees
138     • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)     • Recording and other fees needed to cure title
139     • Title search charges (if Paragraph 9(c)(iii) is checked)     • Seller's attorneys' fees
140     • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)     • Other:_____
141     • Charges for FIRPTA withholding and reporting
142     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143     a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144     Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145     such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146     (b) **COSTS TO BE PAID BY BUYER:**
147     • Taxes and recording fees on notes and mortgages     • Loan expenses
148     • Recording fees for deed and financing statements     • Appraisal fees
149     • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)     • Buyer's Inspections
150     • Survey (and elevation certification, if required)     • Buyer's attorneys' fees
151     • Lender's title policy and endorsements     • All property related insurance
152     • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
153     • Municipal lien search (if Paragraph 9(c)(ii) is checked)       9(c)(iii) is checked)
154     • Other: Transaction fee payed to kw wellington $295
155     (c) **TITLE EVIDENCE AND INSURANCE:** At least 15 (if left blank, then 15, or if Paragraph 8(a) is checked,
156     then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157     licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158     Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159     obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160     Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161     premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162     forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163     and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164     closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a



Buyer's Initials _JLF_          Page **3** of **12**          Seller's Initials _JDI_
FloridaRealtors/FloridaBar-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency. **(CHECK ONE):**

☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services related to the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; or

☒ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements and loan closing; or

☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments **(CHECK ONE):**

☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any installments of any assessment(s) allowed by the public body to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be deemed selected for such assessment(s).

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

## DISCLOSURES

## 10. DISCLOSURES:

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79, F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"



Buyer's Initials _____   Page **4** of **12**   Seller's Initials _____
FloridaRealtors   r-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.

229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.

231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.

233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.

250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* 10 ____ *(if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*



(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.



Buyer's Initials _____ Page **6** of **12** Seller's Initials _____
FloridaRealtors/ -ASIS-6  Rev.10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**
    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:
    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).
    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**
    **A. TITLE:**
    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.



**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

386 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
401 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402 thereby releasing Buyer and Seller from all further obligations under this Contract.
403 **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410 preparation of such prior survey, to the extent the affirmations therein are true and correct.
411 **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
413 **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423 thereunder.
424 **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
429 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431 paid or will be paid at Closing.
432 **F. TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall
433 be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434 any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435 inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437 Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438 day on which a national legal public holiday is observed.
439 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440 this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441 obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

Buyer's Initials [ JLF ]                    Page **8** of **12**                    Seller's Initials [ JDI ]
FloridaRealtors/I      -ASIS-6  Rev.10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents performance, non-performance, or the availability of services, insurance or required approvals essential to Closing. All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however, if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance and will take place in the county where the Real Property is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic means.

(ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial Owners, including photo identification, and related to the transaction contemplated by this Contract which are required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to Closing Agent's collection and report of said information to IRS.

(iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

 

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

499  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505  maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
506  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507  shall survive Closing.

508  **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510  including a walk-through (or follow-up walk-through if necessary) prior to Closing.

511  **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
519  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

521  **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525  upon, nor extended or delayed by, such Exchange.

526  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT
527  EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528  Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529  interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530  delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531  shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532  facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533  hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534  signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

535  **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539  to be bound by it.

540  **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542  rights.

543  **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

545  **S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including
546  Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing
547  Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent
548  until such amounts have been Collected in Closing Agent's accounts.

549  **T. RESERVED.**

550  **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552  county where the Real Property is located.

553  **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557  from the IRS authorizing a reduced amount of withholding.

558  (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563  to the IRS.

564  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566  reduced sum required, if any, and timely remit said funds to the IRS.

567  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

574  (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575  transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577  disbursement in accordance with the final determination of the IRS, as applicable.

578  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579  8288 and 8288-A, as filed.

580  **W.  RESERVED**

581  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582  *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584  *subsequently discovered by the Buyer or anyone claiming* **by, through, under or against the Buyer.** *This*
585  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586  *Closing.*

587  **ADDENDA AND ADDITIONAL TERMS**

589 *  **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
590  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☒ B. Homeowners' Assn. | ☐ N. Coastal Construction Control | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing |     Line | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☑ O. Insulation Disclosure | ☐ AA. Licensee Property Interest |
| ☐ E. FHA/VA Financing | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ BB. Binding Arbitration |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ CC. Miami-Dade County |
| ☐ G. Short Sale | ☐ R. Rezoning |     Special Taxing District |
| ☐ H. Homeowners/Flood Ins. | ☐ S. Lease Purchase/ Lease Option |     Disclosure |
| ☐ I.  RESERVED | ☐ T. Pre-Closing Occupancy | ☐ DD. Seasonal/Vacation Rentals |
| ☐ J.  Interest-Bearing Acct | ☐ U. Post-Closing Occupancy | ☐ EE. PACE Disclosure |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | ☐ Other:_____ |
| ☐ L.  RESERVED | ☐ W. Back-up Contract | _____ |
| | | _____ |

591 * **20. ADDITIONAL TERMS:** _____
592 _____
593 _____
594 _____
595 _____
596 _____
597
598 1) Nicholas Maruri with KW Realty Wellington, will be representing Seller and Buyer
599 as a transaction agent.
600
601 2) Buyer to pay Keller Williams Realty Wellington a $295 transaction fee.
602
603 3)Seller shall be responsible for closing any open permits, and or code violations,in any,
604 prior to closing date.
605
606 4) Seller to provide buyer a sellers property disclosure within 3 days of effective date,
607 signed by seller.
608
609 <center>**COUNTER-OFFER**</center>

610* ☐ Seller counters Buyer's offer.

611 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
612 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

613 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

614 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
615 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
616 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
617 *interested persons.*

618 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
619* TO BE COMPLETED.

620 Buyer: _____   Date: ___2/2/2023  | 7:26 AM F___
621* Buyer: _____   Date: _____
622* Seller: ___Jeffrey D Isaacs_____   Date: ___2/22/2023  | 8:25 PM P___
623* Seller: _____   Date: _____

624 Buyer's address for purposes of notice          Seller's address for purposes of notice
625* 791 Crandon BLVD                                11482 Key Deer Circle
626* _____              _____
627* Key Biscayne              FL      33149        Lake Worth              FL      33449

628 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
629 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
630 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
631 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
632 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
633 made by Seller or Listing Broker to Cooperating Brokers.

634* _____          Nicholas Maruri          5%
635 **Cooperating Sales Associate, if any**       **Listing Sales Associate**

636* _____          Keller Williams Realty Wellington
637 **Cooperating Broker, if any**                **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6   Rev.10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 FloridaRealtors®

**When initialed by all parties,** the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between the parties and the clauses below will be incorporated therein:

Jeffrey D Isaacs _____ (SELLER)

and Jorge Luis Font Verdugo &/ or Assigns _____ (BUYER)

concerning the Property described as 11482 Key Deer Circle _____

Lake Worth _____ FL ___ 33449

**Buyer's Initials** ____NF____ _____   **Seller's Initials** ___JDI___ _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**PART A. DISCLOSURE SUMMARY**

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

**Disclosure Summary For** Homeland _____
(Name of Community)

1. AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
2. THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
3. YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ 217 PER MONTH . YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ NA PER NA .
4. YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
5. YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
6. THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ NA PER NA .
7. THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
8. THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
9. THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

2/21/2023 | 3:08 PM PST

DocuSigned by:

_____   BUYER _____
DATE                                    F9607CE5C88245D...

_____   BUYER _____
DATE

**Page 1 of 2   B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE**   **(SEE CONTINUATION)**
CR-6 Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE (CONTINUED)

**PART B.**

The Property is located in a community with a mandatory homeowners' association or an association that may require the payment of assessments, charges, or impose restrictions on the Property ("Association").

1. **APPROVAL:** The Association's approval of Buyer **(CHECK ONE):** x is ___ is not required. If Association approval of this transaction or the Buyer is required, this Contract is contingent upon Association approval no later than __5__ (if left blank, then 5) days prior to Closing. Within __5__ (if left blank, then 5) days after Effective Date, the Seller shall initiate the approval process with Association. Buyer shall pay application and related fees, as applicable, unless otherwise provided for in Association governing documents or agreed to by the parties. Buyer and Seller shall sign and deliver any documents required by the Association, provide for interviews or personal appearances, if required, and use diligent effort to timely obtain Association approval. If approval is not granted within the stated time period above, Buyer may terminate this Contract, and shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **PAYMENT OF FEES, ASSESSMENTS, AND OTHER ASSOCIATION CHARGES:**

   (a) Buyer shall pay any application, initial contribution, and/or membership or other fees charged by Association pursuant to its governing documents or applicable Florida Statutes. If applicable, the current amount(s) is:

   | | | | |
   |---|---|---|---|
   | $ 250 | per Application | for Application FEE | to Gulfstream Services Management, Inc. |
   | $ | per | for | to |
   | $ | per | for | to |
   | $ | per | for | to |

   (b) If special or other assessments levied by the Association exist as of the Effective Date, or any assessment(s) are levied after the Effective Date and prior to the Closing Date, and are due and payable in full prior to Closing Date, then Seller shall pay all such assessment(s) prior to or at Closing; or, if any such assessment(s) may be paid in installments, then Seller shall pay all installments which are due before Closing Date, prior to or at Closing, and **(CHECK ONE):** ☐ Buyer ☒ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

   (c) Seller shall pay, prior to or at Closing, all fines imposed against the Seller or the Property by the Association which exist as of the Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

The Association or Management Company to which assessments, special assessments or rent/land use fees are due and payable, is/are:

GULF STREAM SERVICE MANAGEMENT

**Contact Person** Jason Weeks      **Contact person** _____

**Phone** 561-777-3578      **Phone** _____

**Email** jason.gsmproperties@gmail.com      **Email** _____

**Additional contact information can be found on the Association's website, which is:**

**www.** _____

## Addendum to Contract



Addendum No. 1_____ to the Contract with the Effective Date of 03/01/2023_____ between

Jeffrey D Isaacs _____ (Seller)

and Jorge Luis Font Verdugo &/ or Assigns _____ (Buyer)

concerning the property described as: 11482 Key Deer Circle _____

_____ Lake Worth _____ FL   33449

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

1)Buyer and Seller agree that buyer will receive a $12,000.00 credit towards buyer's closing costs, at day of closing. All other terms and conditions remain the same.

NOT A CERTIFIED COPY

Buyer: _____        Date: ___3/2/2023 | 1:30 AM PST___
F9807CE5C88245D...

Buyer: _____        Date: _____

Seller: _Jeffrey D Isaacs_____        Date: ___3/1/2023 | 2:22 PM PST___
F6EEC530A90140B...

Seller: _____        Date: _____

ACSP-4   Rev 6/17                                          © 2017 Florida \Realtors®

# Exhibit "C"

NOT A CERTIFIED COPY

CFN 20200300042
OR BK 31773 PG 1252
RECORDED 09/24/2020 11:41:38
Palm Beach County, Florida
AMT 975,000.00
DEED DOC 6,825.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1252-1253; (2Pgs)

THIS INSTRUMENT PREPARED BY:
RUDOLPH M. DI LASCIO, JR., ESQ.
5798 Johnson Street
Hollywood, Florida 33021

RETURN TO:
Reliable Title, Inc.
5792 Johnson Street
Hollywood, Florida 33021

Tax Folio Number:  00-41-44-35-01-000-1060

# WARRANTY DEED

THIS INDENTURE, made this **16** day of September, 2020, BETWEEN

### DENNIS EISEN, a single man and ERIC EISEN, a married man

whose addresses are: Dennis Eisen -3001 Spanish Trail, Delray Beach, Florida 33483
Eric Eisen – 7229 Arcadia Court, Boca Raton, Florida 33433

hereinafter referred to as grantor, and

### JEFFREY D. ISAACS

whose address is:  11482 Key Deer Circle, Lake Worth, Florida  33449

hereinafter referred to as grantee,

### WITNESSETH:

that said grantor, for and in consideration of the sum of TEN AND NO/100TH DOLLARS ($10.00), and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Palm Beach County, Florida, to wit:

Lot 106, HOMELAND, according to the plat thereof, as recorded in Plat Book 33, Page 111, of the Public Records of Palm Beach County, Florida.

n.b.  Grantor, Eric Eisen, warrants and represents that the property is not the homestead of grantor, Eric Eisen, nor is it contiguous to the homestead of grantor, Eric Eisen, and that no member of Eric Eisen's family has resided therein, as grantor Eric Eisen resides at 7229 Arcadia Court, Boca Raton, Florida 33433.

SUBJECT TO restrictions, limitations, easements, reservations and conditions of record, zoning ordinances and taxes for the year 2020 and all subsequent years.

and said grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

*"Grantor" and "Grantee" are used for singular or plural, as context requires.

CFN 20200358042
BOOK 31773 PAGE 1253
2 OF 2

Page 2
Warranty Deed
Eisen s/t Isaacs

IN WITNESS WHEREOF, grantor has hereunto set grantor's hand and seal on this ___16th___ day of September, 2020.

Signed sealed and delivered in our presence:

Sign: _____
Print Name: GABRIELA PIMENTA

**DENNIS EISEN**

Sign: _____
Print Name: Nancy Ramos

**ERIC EISEN**

**STATE OF FLORIDA**

**COUNTY OF PALM BEACH**

**I HEREBY CERTIFY THAT** the foregoing instrument was acknowledged before me by means of [  ] physical presence or [  ] online notarization, this ___16___ day of September, 2020, an officer duly qualified to take acknowledgments, personally appeared **DENNIS EISEN,** who is [X] personally known to me; or [  ] produced a driver's license or [  ] _____ as identification, and before me by means of [X] physical presence or [  ] online notarization, this ___16___ day of September, 2020, an officer duly qualified to take acknowledgments, personally appeared **ERIC EISEN,** who is [X] personally known to me; or [  ] produced a driver's license or [  ] _____ as identification, and who acknowledged executing the foregoing instrument.

NOT A CERTIFIED COPY

GABRIELA PIMENTA
MY COMMISSION # GG 90928
EXPIRES: April 15, 2021
Bonded Thru Notary Public Underwriters

NOTARY PUBLIC, STATE OF FLORIDA
Print Name: GABRIELA PIMENTA
My Commission expires: April 15, 2021