UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  23-CV-81393-ROSENBERG/REINHART

JEFF ISAACS

      Plaintiff,

v.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC (d/b/a KELLER
WILLIAMS REALTY WELLINGTON), and
EQUESTRIAN PALMS, LLC,

      Defendants.

_____/

## **DEFENDANT, MAKAI SOUTHEAST, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# **EXHIBIT "C"**

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement"), is made and entered into by and between Representative Beverly Deshay, on behalf of herself and the Settlement Class, and Keller Williams Realty, Inc. ("Defendant") to settle and compromise this action and settle, resolve, and discharge the Released Claims, as defined below, according to the terms and conditions herein.

## RECITALS

**WHEREAS**, *Deshay v. Keller Williams Realty, Inc.*, No. 312022CA000457XXXXXX is currently pending in the Circuit Court for the Nineteenth Judicial Circuit in and for Indian River County, Florida, alleging Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*;

**WHEREAS**, Defendant denies each and every one of Representative Plaintiff's allegations of unlawful conduct, damages, or other injuries and maintains that it complied with the TCPA and all applicable laws;

**WHEREAS**, based upon the investigation, and evaluation of the facts and law relating to the matters alleged, plus the risks and uncertainties of the Litigation and Related Litigation and all factors bearing on the merits of settlement, Representative Plaintiff and Class Counsel have agreed to settle the claims asserted in the Litigation pursuant to the provisions of this Settlement;

**WHEREAS**, in an effort to facilitate a resolution of the Litigation and Related Litigation and mediate settlement discussions, the Settling Parties participated in lengthy, arms' length negotiations, including three mediations with mediator Bruce A. Friedman, Esquire of JAMS in Los Angeles, California;

**WHEREAS,** the Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is

inadmissible as evidence except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement;

**NOW THEREFORE**, subject to the Final Approval Order of the Court as required herein and applicable law and rules, the Settling Parties hereby agree, in consideration of the mutual promises and covenants contained herein, that all Released Claims against any Released Parties shall be settled, compromised and forever released upon the following terms and conditions.

## <u>TERMS AND CONDITIONS OF THE SETTLEMENT</u>

1.    **DEFINITIONS**

1.1    As used herein, the following terms have the meanings set forth below.

1.1.1   "Agreement" or "Settlement Agreement" means this document, including all exhibits.

1.1.2   "Appeal" means a request for appellate review of any order or judgment of the Court entered in this Litigation, including but not limited to appeals as of right, discretionary appeals, interlocutory appeals, any order reinstating an appeal, and proceedings involving writs of certiorari and/or any proceedings thereon.

1.1.3   "Approved Claim" means a claim submitted by a Class Member that: (a) is postmarked or received by the Settlement Administrator on or before the Claims Deadline; (b) is fully and truthfully completed by a Class Member with all information requested in the Claim Form, and in accordance with the directions on the Claim Form; (c) is signed by the Class Member, physically or electronically; and (d) is approved by the Settlement Administrator pursuant to the provisions of this Agreement as a valid claim eligible to receive payment from the Settlement Sum under the Agreement and the Final Approval Order and Judgment.

1.1.4   "CAFA Notice" means the notice of this Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Paragraph 6.4.

1.1.5   "Claims Deadline" means sixty (60) days after the Notice Date. If the Claims Deadline falls on a weekend or holiday, the Claims Deadline shall extend to the next business day following the weekend or holiday.

1.1.6   "Claim Form" means the document to be submitted by Claimants seeking payment pursuant to this Settlement, attached as Exhibit A.

1.1.7   "Claim Settlement Payment" means the payment to be made to Class Members who submit Approved Claims.

1.1.8   "Claimant" means a Class Member who submits a Claim Form.

1.1.9   "Class" means all Persons in the United States who, during the Class Period, (1) were called or received two or more calls and/or text messages made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors on a telephone number that (a) appeared on the National Do Not Call Registry for at least 31 days and/or (b) that appeared on any internal do not call list of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors; and/or (2) were called or received one or more calls and/or text messages made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors using (a) an artificial or prerecorded voice and/or (b) a cloud based dialing platform; and/or (3) were called or received one or more calls made using an automatic telephone dialing system made by or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors. Excluded from the Class are: (1) the Judge presiding over this action and members of their families; (2) the Defendant, Defendant's respective subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons who received call, or to whom a call was placed, by or on behalf of Peter Hewitt or Kelly Houston and/or which contained a

pre-recorded voice identifying Peter Hewitt or Kelly Houston; and (5) the legal representatives, successors or assigns of any such excluded person(s).

1.1.10 "Class Counsel" means Avi R. Kaufman of Kaufman P.A. and Stefan Coleman of Coleman, PLLC.

1.1.11 "Class Member" means a person who falls within the definition of the Class and who does not opt out of the Settlement as set forth in Paragraph 9.4.

1.1.12 "Class Period" means from May 2, 2014 through the date the Court enters the Preliminary Approval Order.

1.1.13 "Court" means the Circuit Court for the Nineteenth Judicial Circuit in and for Indian-River County, Florida.

1.1.14 "Complaint" means the operative complaint in this Litigation at the time the Court enters the Preliminary Approval Order.

1.1.15 "Defendant" means Keller Williams Realty, Inc.

1.1.16 "Defense Counsel" means Hinshaw & Culbertson LLP.

1.1.17 "Direct Mail List" means a list of approximately 2,000,000 people allegedly in the Class with identified mailing addresses and associated telephone numbers that Class Counsel will provide to the Settlement Administrator.

1.1.18 "Effective Date" means the first date by which any Judgment entered pursuant to the Agreement becomes Final. If the settlement contained in this Settlement Agreement is not approved by the Court and does not result in Judgment, or if the Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, this Agreement will never become Effective and will be terminated and cancelled and (1) the Parties will be returned to their positions status quo ante with respect to the Action as if this Agreement had not been entered into; and (2) the Representative Plaintiff will voluntarily dismiss the Litigation and only re-file it, if ever, in federal court.

1.1.19 "Fee Award" means the amount of attorneys' fees and reimbursement of costs and expenses that may be awarded by the Court and that will be paid out of the Settlement Sum. The Fee Award shall not exceed $10,000,000.

1.1.20 "Final" means one business day following the later of the following events: (i) the expiration of the time to file a motion to alter or amend a judgment has passed without any such motion having been filed; (ii) the expiration of the time in which to file an Appeal of any judgment entered pursuant to this Agreement has passed without any Appeal having been taken; and (iii) the resolution of any such Appeal in a manner that does not reverse or vacate the Judgment and in a manner that permits the consummation of the Settlement in accordance with the terms and conditions of this Agreement.  Any proceeding or order, or any Appeal pertaining solely to any request or order regarding the Fee Award will not in any way delay or preclude the Judgment from becoming Final.

1.1.21 "Final Approval Hearing" means the final hearing, held after the Preliminary Approval Order is issued and Class Members have been given reasonable notice and an opportunity to object or to exclude themselves from the Settlement, at which the Court will determine whether to finally approve the Settlement and to enter Judgment.

1.1.22 "Final Approval Order" means an order, providing for, among other things, final approval of the Settlement.

1.1.23 "Judgment" means the judgment to be entered by the Court pursuant to this Settlement Agreement.

1.1.24 "Litigation" means *Deshay v. Keller Williams Realty, Inc.*, No. 312022CA000457XXXXXX, currently pending in the Circuit Court for the Nineteenth Judicial Circuit in and for Indian-River County, Florida.

1.1.25 "Notice" means a document substantially in the form of Exhibit B hereto, "Summary Notice" means a document substantially in the form of Exhibit C hereto, and "Publication Notice" means a document substantially in the form of Exhibit D hereto, to be

disseminated in accordance with the Preliminary Approval Order, informing Persons who fall within the Class of, among other things, the pendency of the Litigation, the material terms of the proposed Settlement, and their options with respect thereto.

1.1.26 "Notice Date" means the date on which Notice is first disseminated pursuant to the Notice Plan.

1.1.27 "Notice Plan" shall mean the proposed plan of disseminating to Class Members notice of the proposed Settlement and of the Final Approval Hearing, as approved by the Court.

1.1.28 "Opt-Out Deadline" means the date for Class Members to opt-out that is sixty (60) days after the Notice Date.

1.1.29 "Parties" means, collectively, Representative Plaintiff and Defendant.

1.1.30 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, affiliates and assignees.

1.1.31 "Preliminary Approval Order" means an order, providing for, among other things, preliminary approval of the Settlement and dissemination of the Notice to the Class according to the Notice Plan.

1.1.32 "Related Litigation" means any other class action lawsuit against Defendant alleging Defendant violated the TCPA in which Class Counsel is counsel for the plaintiff(s), and any related miscellaneous actions, including (1) *Wright* v. *Keller Williams Realty, Inc.*, Case No. 1:18-cv-775, now pending in United States District Court for the Western District of Texas; (2) *Samataro v. Keller Williams Realty, Inc.*, Case No. 1:21-cv-76, now pending in United States District Court for the Western District of Texas; (3) *Hayhurst v. Keller Williams Realty, Inc.*, Case No. 1:19-cv-657, now pending in United States District Court for the Middle

District of North Carolina; (4) *St. John v. Keller Williams Realty, Inc.*, Case No. 6:19-cv-1347, now pending in United States District Court for the Middle District of Florida; (5) *Asher v. Keller Williams Realty, Inc.*, Case No. 1:20-cv-835, previously pending in United States District Court for the Western District of Texas; and (6) *MacDonald v. Keller Williams Realty, Inc.*, Case No. 2:20-cv-00138, previously pending in United States District Court for the District of Arizona.

      1.1.33  "Released Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, whether known or Unknown Claims, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law (such as any violations of the Telephone Consumer Protection Act, 47 USC § 227, the FCC's related regulations—including internal Do Not Call requirements, or unfair or deceptive practices act), and whether brought in an individual, representative, or any other capacity, that were brought in the Litigation or Related Litigation or that arise from text messages or calls made, or attempted to be made, by or on behalf of Defendant, or any other Person affiliated with Defendant, including but not limited to Defendant-affiliated franchisees, market centers, realtors, agents or vendors, from May 2, 2014 through the date the Court enters the Preliminary Approval Order.

      1.1.34  "Released Parties" means Defendant and any respective corporate parent, subsidiary, or affiliated entities, along with each of their current, former, and future owners, members, partners, officers, directors, shareholders, employees, agents, marketers, vendors, contractors, assigns, successors, servants, insurers, representatives, and attorneys, including specifically any franchisees, market centers, realtors, agents or vendors affiliated with Defendant.

      1.1.35  "Releasing Parties" means: (a) Representative Plaintiff, her heirs, assigns, successors in interest, and personal representatives; (b) Class Members who do not timely opt out; (c) to the extent that a Class Member is not an individual, all of its present, former, and

future predecessors, successors, assigns, parents, subsidiaries, joint ventures, and affiliates, and all employees, agents, representatives, consultants, independent contractors, insurers, directors, officers, partners, principals, members, attorneys, accountants, financial advisors, investors, investment bankers, underwriters, shareholders, lenders, and auditors of any of the foregoing Persons; and (d) to the extent the Class Member is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, estates, administrators, representatives, agents, attorneys, partners, successors, predecessors, and assigns of each of them, and any other representatives of any of the foregoing Persons.

1.1.36 "Representative Plaintiff" means Plaintiff Beverly Deshay.

1.1.37 "Settlement" means the settlement set forth in this Agreement.

1.1.38 "Settlement Administration Expenses" means the expenses incurred by the Settlement Administrator administering this Settlement, including in providing notice, processing claims, administering the Settlement, and mailing checks for Approved Claims.  All Settlement Administration Expenses shall be paid exclusively from the Settlement Sum and all sums advanced by Defendant toward Settlement Administration Expenses before the Funding Date, if any, shall be deducted from the Settlement Sum.

1.1.39 "Settlement Administrator" means Kroll Settlement Administration.

1.1.40 "Settlement Sum" means $40,000,000.00. The Settlement Sum represents the maximum possible payment by Defendant under this Agreement from which payments for all (a) Approved Claims to Class Members, (b) Settlement Administration Expenses, (c) CAFA Notice, and (d) any Fee Award will be made.

1.1.41 "Settling Parties" means, collectively, Defendant, Representative Plaintiff, and all Class Members.

1.1.42 "Unknown Claims." Claims that the Releasing Parties do not know or suspect to exist in their favor at the time of their granting a release, which if known by them might have affected their settlement of the Action. With respect to any and all Released Claims

against any and all Released Parties, the Parties stipulate and agree that each Releasing Party shall have expressly waived the provisions, rights, and benefits of Cal. Civ. Code § 1542 or any federal, state, or foreign law, rule, regulation, or common-law doctrine that is similar, comparable, equivalent, or identical to, or that has the effect in whole or part of, Section 1542 of the California Civil Code, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." Each of the Releasing Parties shall be deemed to have acknowledged, and by operation of the Final Judgment acknowledges, that he/she/it is aware that he/she/it may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims, but it is his/her/its intention to, and each of them shall be deemed upon the Effective Date to have, waived and fully, finally, and forever settled and released any and all Released Claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

1.1.43   The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

## 2.    DENIAL OF WRONGDOING AND LIABILITY

2.1    Defendant denies the material factual allegations and legal claims asserted by Representative Plaintiff in the Litigation and the plaintiffs in the Related Litigation, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation and Related Litigation. Further, Defendant maintains that it has strong, meritorious defenses to the claims alleged in

the Litigation and Related Litigation and that it was prepared to continue to vigorously defend all aspects of the Litigation and Related Litigation.

2.2     This Agreement, any negotiations or proceedings related to it, the implementation of it, and any papers submitted in support of the motions for approval of it (collectively, the "Settlement Proceedings") are not to be construed as or deemed to be evidence of any admission or concession by any of the Parties regarding liability, damages, or the appropriateness of class treatment, and are not to be offered or received in evidence in any action or proceeding for any purpose whatsoever; provided, however, that this Agreement and the Settlement Proceedings may be presented to the Court in connection with the implementation or enforcement of this Agreement, or as may be necessary or appropriate to further the purposes sought to be achieved by this Agreement.

## 3.     THE BENEFITS OF SETTLEMENT

3.1     Class Counsel and Representative Plaintiff recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation and Related Litigation against Defendant through trial and appeals. Class Counsel also has taken into account the strength of Defendant's defenses, difficulties in proving vicarious liability, and the uncertain outcome and risks of litigation, especially in complex actions such as this one, and the inherent delays in such litigation. Class Counsel believes that the proposed Settlement confers substantial benefits upon the Class. Based on their evaluation of all of these factors, Representative Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Representative Plaintiff and the Class.

## 4.     SETTLEMENT TERMS

4.1     The Settlement Sum will be used for the purpose of making all required payments under this Settlement, including payments associated with the CAFA Notice, Settlement Administration Expenses, for Approved Claims, and any approved Fee Award. Any part of the Settlement Sum that is not used to pay for CAFA Notice, Settlement Administration Expenses,

Approved Claims, or any approved Fee Award shall remain with the Defendant. Defendant shall have no responsibility to segregate or escrow any funds to account for the Settlement Sum and, in no event shall Defendant's total financial liability with respect to this Agreement, the Released Claims, and the Settlement exceed the Settlement Sum. All costs of CAFA Notice and Settlement Administration Expenses shall be paid by Defendant, and deducted from the Settlement Sum, as they become due and payable to the Settlement Administrator.  Also from the Settlement Sum, within thirty (30) days after the later of (i) the final determination by the Administrator of the number of Approved Claims, and (ii) the Effective Date, the "Funding Date", Defendant shall fund all amounts required by the Settlement Administrator for payment of Approved Claims.

4.2     Payment to Class Members

4.2.1   Each Class Member shall be entitled to submit only one claim per telephone number he or she used or subscribed to and on which he or she received calls, artificial or prerecorded voice messages, or text messages as described in Paragraph 1.1.9.

4.2.2   Adequate and customary procedures and standards will be used by the Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate claims, including, but not limited to, verifying claimed calls with information provided by the Parties. Only a claim submitted by the Claims Deadline and containing all required components—including the signature of a valid Class Member— shall be an Approved Claim. All other claims, fraudulent or otherwise, shall be disallowed.

4.2.3   A Claim Settlement Payment will be made to each Class Member who submits a valid Approved Claim. To have a valid Approved Claim and be eligible to receive payment, those Class Members who are on the Direct Mail List must attest to: (i) having never provided their consent to be called with an artificial or prerecorded voice, text message, automatic telephone dialing system or while their phone number was on the National Do Not Call Registry or an internal do not call registry relating to Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors, and (ii) having received one or more

such automatic telephone dialing system calls and/or artificial or prerecorded voice calls and/or text messages from or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors; (iii) on a telephone number the Class Member provides and that the Class Member attests to owning. To have a valid Approved Claim and be eligible to receive payment, those Class Members who are not on the Direct Mail List must attest to: (i) having never provided their consent to be called with an artificial or prerecorded voice, text message, automatic telephone dialing system or while their phone number was on the National Do Not Call Registry or an internal do not call registry relating to Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors; and (ii) having received one or more such automatic telephone dialing system calls and/or artificial or prerecorded voice calls and/or text messages from or on behalf of Defendant or any Defendant-affiliated franchisees, market centers, realtors, agents or vendors; (iii) on a telephone number the Class Member provides and that the Class Member attests to owning; and (iv) for which proof of receiving such a call (*i.e.*, through phone records) or text (*i.e.* through a screenshot or phone records) is provided.

       4.2.4   Each Class Member on the Direct Mail List or not on the Direct Mail List who submits an Approved Claim shall be entitled to a Claim Settlement Payment in an amount not to exceed, under any circumstances, Twenty Dollars ($20) per Approved Claim, regardless of the number of calls, artificial or prerecorded voice messages, or text messages the Class Member received during the Class Period. In the event that the total amount of Claim Settlement Payments for Approved Claims would exceed the threshold at which there would be insufficient funds in the Settlement Sum to pay all Approved Claims, any Fee Award, and Settlement Administration Expenses, the amount on a per claim basis will be reduced so that the Settlement Sum is exhausted but not exceeded.

       4.2.5   Class Settlement Payments will be made directly to the Class Member by the Settlement Administrator.

4.3     Separate and apart from the Settlement Sum, subject to Court approval, Defendant shall pay to Representative Plaintiff $5,000 in the interest of compromising Representative Plaintiff's individual claims not released in the Agreement against Defendant, as well as resolving all outstanding issues between the Parties through the Effective Date. In the event the Court approves the Settlement, but does not approve the separate payment to Representative Plaintiff, the Settlement will nevertheless be binding on the Parties and the Class Members.

4.4     Without admission of guilt, and as further non-monetary relief to the class, Defendant has also agreed to (1) create a TCPA task force to enhance compliance; (2) to make the existing TCPA/DNC resource page on KW Connect more visible to KWRI's franchisees and their independent contractor real estate agents; and (3) provide additional materials to KWRI's franchisees about TCPA/DNC compliance that they can use with their independent contractor real estate agents.

**5.     ATTORNEYS' FEES, EXPENSES, AND COSTS**

5.1     Class Counsel shall apply to the Court for attorneys' fees and documented and reasonable expenses and costs arising from the Litigation and Related Litigation of up to $10,000,000.00. Class Counsel's application for fees, expenses, and costs shall be filed no later than thirty-five (35) days prior to the Opt-Out Deadline.  Any Fee Award approved by the Court shall be paid solely out of the Settlement Sum and shall not increase Defendant's total financial liability with respect to this Agreement or Settlement.

5.2     In the event the Court approves the Settlement, but declines to award a Fee Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Class Members.

5.3     Defendant shall have no liability to Class Counsel or any other Person arising from any claim regarding the division of the Fee Award between and among Class Counsel or any other counsel who may claim entitlement to any portion of the Fee Award.

5.4    The Fee Award, if approved by the Court, shall be paid by wire transfer from Defendant on the following schedule: 60% of the Fee Award within fifteen (15) days following the Effective Date; 10% of the Fee Award within six months following the Effective Date; 10% of the Fee Award within one year following the Effective Date; 10% of the Fee Award within one year and six months following the Effective Date; and 10% of the Fee Award within two years following the Effective Date, provided that the law firm or attorney being paid has executed and provided to Defendant a Form W-9 and requested payee information. The Fee Award shall be paid from the Settlement Sum.  Payment of the Fee Award is subject to a separate security agreement between Defendant and Class Counsel.

5.5    The Court shall retain jurisdiction of any dispute regarding the Fee Award and any repayment of any amount of the Fee Award.

## 6.    ADMINISTRATION AND NOTICE

6.1    All costs and expenses of administering the Settlement and providing reasonable Notice in accordance with the Preliminary Approval Order shall be paid out of the Settlement Sum, including the cost of CAFA Notice.

6.2    Responsibilities of Settlement Administrator

6.2.1    The Settlement Administrator will facilitate the notice process by assisting the Parties in the implementation of the Notice Plan, as well as CAFA Notice.

6.3    Class Settlement Website

6.3.1    The Settlement Administrator will create and maintain the Class Settlement Website, to be activated within thirty (30) days of Preliminary Approval. The Settlement Administrator's responsibilities will also include securing an appropriate URL to be agreed upon by the Parties. The Class Settlement Website will contain information about the Settlement and case-related documents such as the Settlement Agreement, the Notice in the form attached hereto as Exhibit B, subject to Court modification and/or approval, the Claim

Form, and the Preliminary Approval Order. Class Members shall have the option to file a claim electronically using the Class Settlement Website.

6.3.2   The Class Settlement Website will terminate (be removed from the internet) and no longer be maintained by the Settlement Administrator thirty (30) days after either (a) the Effective Date or (b) the date on which the Settlement Agreement is terminated or otherwise not approved in full if the Settlement is terminated or otherwise not approved in full. The Settlement Administrator may destroy documents generated in the administration of the Settlement one year after the void date on settlement checks.

6.3.3   All costs and expenses related to the Class Settlement Website shall be paid out of the Settlement Sum.

6.4     CAFA Notice

6.4.1   The Parties agree that the Settlement Administrator shall serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days after the filing of this Settlement Agreement with the Court.

6.4.2   All costs and expenses related to the CAFA Notice shall be paid out of the Settlement Sum as an Administration Expense.

6.4.3   The Settlement Administrator will file a certification with the Court stating the date(s) on which the CAFA Notices were sent.  Each Party will provide the other Parties with any substantive responses received in response to any CAFA Notice. Any fees and costs incurred by Class Counsel to respond to any substantive responses—or otherwise incurred to defend challenges to the Settlement Agreement—shall be sought as part of the Fee Award, subject to Court approval.

6.5     Notice Plan

6.5.1   The Notice shall conform to all applicable requirements of any applicable rules or procedure and law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

6.5.2   Class Counsel shall provide the telephone numbers, and all reasonably available demographic information for the Class Members on the Direct Mail List to the Settlement Administrator within fifteen (15) calendar days after the Court enters the Preliminary Approval Order or as soon as reasonably possible.

6.5.3   Subject to Court approval, within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall send direct notice substantially in the form of the Summary Notice in Exhibit C, as modified and/or approved by the Court, via U.S. Postal Service, to Class Members on the Direct Mail List, which shall constitute the sole and exclusive direct notice the Settlement Administrator shall send to Class Members on the Direct Mail List.

6.5.4   Subject to Court approval, within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall commence publication notice substantially in the form of the Publication Notice in Exhibit D, as modified and/or approved by the Court.

7.   **CLAIMS PROCESS**

7.1   Submission of Claims.  Class Members must timely submit, by mail or online, a valid Claim Form substantially in the form attached as Exhibit A.  All Claim Forms must be postmarked or received by the Settlement Administrator by the Claims Deadline.  Regardless of the manner in which it is submitted, a valid Claim Form means a Claim Form containing all required information, as described above in Paragraphs 4.2.1 through 4.2.5, which is signed by a Class Member and is timely submitted.  Any Claim Form that does not contain all required information, as described above in Paragraphs 4.2.1 through 4.2.5; is not signed; and/or is not timely submitted shall be denied.  In the event a Class Member submits a Claim Form by the

Claims Deadline but the Claim Form is not complete, then the Settlement Administrator shall give such Class Member a reasonable opportunity to provide any requested missing information.  Notwithstanding Section 6.5.3 above, for any Class Member who submits a Claim Form determined by the Settlement Administrator to be incomplete, the Settlement Administrator may mail a notice directly to such Class Member, notifying him or her of the missing information and providing him or her with an opportunity to cure (the "Cure Notice"). The Class Member shall have until the Claims Deadline, or fourteen (14) days after the Settlement Administrator sends the Cure Notice to the Class Member regarding the deficiencies in the Claim Form, whichever is later, to cure the error(s) and/or omissions in the Claim Form.

7.2    Claims Processing.  The Settlement Administrator shall apply the terms of this Settlement Agreement and the requirements set forth in the Claim Form, and any Claim Form submitted that does not meet the requirements of this Agreement is not eligible to be an Approved Claim. The Settlement Administrator also shall employ reasonable procedures to screen claims for abuse, fraud, or duplication, including but not limited to requiring a unique class member identifier in order to file a claim, requesting additional information from Claimants not on the Direct Mail List, including but not limited to proof of ownership of a telephone number and receipt of calls (*i.e.*, through phone records) or texts (*i.e.*, through a screenshot or phone records), and denying Claim Forms where there is evidence of abuse, fraud, or duplication.  Only one claim per eligible phone number can be an Approved Claim; in the event that more than one claim per eligible phone number is submitted, the Settlement Administrator will have discretion to determine which, if any, is the Approved Claim. The Settlement Administrator's decisions regarding the Claimant's eligibility for a Class Settlement Payment shall be final, assuming the Settlement Administrator applies reasonable practices to assure that no invalid, incomplete, untimely or fraudulent claims are treated as Approved Claims. The Parties, the Released Parties, and their respective counsel shall have no

responsibility or liability whatsoever for the Settlement Administrator's conduct, omissions, or actions.

7.3    Payment of Claims.   Within sixty (60) days after the later of (i) the final determination by the Administrator of the number of Approved Claims, and (ii) the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Sum all Approved Claims by check or electronic payment to the Class Member submitting each Approved Claim.

7.4    All payments to Class Members via check will state on the face of the check that the check will expire and become null and void unless cashed within one hundred eighty (180) days after the date of issuance.  To the extent that any checks to Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a per claim basis to Class Members who submitted an Approved Claim and who cashed their Settlement Claim Payments unless (i) Administration Expenses associated with the redistribution would exceed the funds available for redistribution; and/or (ii) the net amount of the redistribution on a per Class Member basis would be less than $0.50 per Class Member. The Administration Expenses associated with the redistribution shall be paid from the funds to be redistributed.

7.5    No decisions by the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by Defendant as to any matter of fact, law, or evidence having any collateral effect on any Claim hereunder or in any other proceeding or before any other forum or authority.  Further, such decisions shall not be submitted to or admissible in any other proceeding or before any other forum or authority.

## 8.    RELEASES

8.1    Upon entry of the Judgment, Representative Plaintiff and each Class Member will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged each of the Released Parties from all Released Claims.

8.2     After entering into this Settlement Agreement, Representative Plaintiff or Class Members may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the Released Claims.  Representative Plaintiff and Class Members expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or noncontingent claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other, different, or additional facts.

8.3     With respect to the Released Claims, all Class Members expressly waive and relinquish any rights or benefits available to them under California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.4     Notwithstanding Section 1542 of the California Civil Code, or any other federal or state statute or rule of law of similar effect, this Settlement Agreement shall be given full force and effect according to each and all of its terms and provisions, including those related to any unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from, or are in any way connected with the Released Claims.

8.5     Upon entry of the Final Approval Order, Representative Plaintiff, and any Class Member who does not Opt Out as set forth in Paragraph 9.4 is hereby barred against continuing or bringing any action against any of the Released Parties for any of the Released Claims, regardless of whether such action was commenced prior to the Final Approval Order. Additionally, Representative Plaintiff and Class Members agree and covenant, and each Class Member will be deemed to have agreed and covenanted, not to sue any of the Released Parties

with respect to any of the Released Claims, or otherwise assist others in doing so, and agree to be forever barred from doing so, in any court of law, equity, or any other forum.

## 9.   APPROVAL PROCESS

9.1   Court Approval

9.1.1   Class Counsel shall submit the Agreement together with its Exhibits to the Court and request that the Court grant preliminary approval of the Settlement, issue a Preliminary Approval Order, and schedule a hearing on whether the Settlement should be granted final approval (collectively, "Motion for Preliminary Approval").

9.1.2   In the Motion for Preliminary Approval, Class Counsel shall request that the Court allow for a period of no less than ninety (90) days between entry of the Preliminary Approval Order and the Final Approval Hearing and that the Court schedule a Final Approval Hearing for a date no less than ninety (90) days from entry of the Preliminary Approval Order.

9.1.3   The date the Motion for Preliminary Approval is filed is the date by which the Settlement shall be deemed "filed" within the meaning of 28 U.S.C. § 1715.

9.1.4   If the Motion for Preliminary Approval is granted, Class Counsel shall be responsible for asking the Court to grant final approval of the Settlement and to enter a Final Approval Order and Judgment, in accordance with the date set by the Court for the Final Approval Hearing.

9.1.5   If the Court does not enter a Preliminary Approval Order or a Final Approval Order and Judgment or if the Final Approval Order is reversed or vacated, by any court, this Agreement shall terminate and be of no force or effect, except as otherwise set forth in this Agreement, unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain Court approval. Notwithstanding any provision of this Agreement, the Parties agree that any decision by any court as to any Fee Award to Class Counsel or any separate payment to the Representative Plaintiff, described in Paragraphs 4.3 and 5.1 above, including any decision by any court to award less than the amounts sought, shall not prevent

the Agreement from becoming effective, prevent Final Judgment from being entered, or provide any grounds for termination of the Agreement or the Settlement.

9.2     Procedures for Objecting to the Settlement

9.2.1   Class Members shall have the right to appear and show cause, if they have any reason why the terms of this Agreement should not be given final approval, subject to each of the sub-provisions contained in this paragraph.  Any objection to this Settlement Agreement, including any of its terms or provisions, must be in writing. This written objection must be sent via first class United States mail to the Settlement Administrator at the address set forth in the Notice and received no later than the Opt-Out Deadline. Class Members may object either on their own or through an attorney hired at their own expense.

9.2.2   Any objection regarding or related to the Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Deshay v. Keller Williams Realty, Inc.*, No. 312022CA000457XXXXXX" and also shall contain the following information: (i) the objector's name, address, and telephone number; (ii) the name, address, and telephone number of any attorney for the objector with respect to the objection; (iii) the factual basis and legal grounds for the objection, including any documents sufficient to establish the basis for his or her standing as a Class Member, including the phone number(s) at which he or she received calls(s) or text(s) covered by this Settlement; and (iv) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a proposed class action settlement. If an objecting party chooses to appear at the hearing, no later than the Opt-Out Deadline, a notice of intention to appear, either in person or through an attorney, must be filed with the Court and list the name, address, and telephone number of the person and attorney, if any, who will appear.

9.2.3   A Class Member who appears at the Final Approval Hearing, either personally or through counsel, may be permitted to argue only those matters that were set forth

in the timely and validly submitted written objection filed by such Class Member.  No Class Member shall be permitted to raise matters at the Final Approval Hearing that the Class Member could have raised in his/her written objection, but failed to do so, and all objections to the Settlement Agreement that are not set forth in a timely and validly submitted written objection will be deemed waived.

9.2.4   If a Class Member wishes to present witnesses or evidence at the Final Approval Hearing in support of a timely and validly submitted objection, all witnesses must be identified in the objection, and true and correct copies of all supporting evidence must be appended to, or filed and served with, the objection.  Failure to identify witnesses or provide copies of supporting evidence in this manner waives any right to introduce such testimony or evidence at the Final Approval Hearing.  Representative Plaintiff or Defendant or both may take discovery regarding any objector, their attorney (if applicable), and the basis of any objection, subject to Court approval.

9.2.5   Any Class Member who fails to comply with the applicable provisions of the preceding paragraphs concerning their objection shall waive and forfeit any and all rights he or she may have to object, appear, present witness testimony, and/or submit evidence, shall be barred from appearing, speaking, or introducing any testimony or evidence at the Final Approval Hearing, shall be precluded from seeking review of this Agreement by appeal or other means, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in the Litigation.  By filing an objection, objectors and their counsel submit to the jurisdiction of the Court for all purposes, including but not limited to subpoenas and discovery.

9.3      Right to Respond to Objections

9.3.1   Class Counsel and the Parties shall have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing. The

Party so responding shall file a copy of the response with the Court, and shall serve a copy, by hand, overnight delivery, or email to the objector (or counsel for the objector).

9.4     Opt Outs

9.4.1   Any individual who falls within the definition of the Class who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be individually "excluded" from this Settlement.   This written request for individual exclusion must be sent via first class United States mail to the Settlement Administrator at the address set forth in the Notice and received no later than the Opt-Out Deadline.  An individual request for exclusion must be signed by the individual, and must include the individual's name, address, and the telephone number that allegedly received a call made by or on behalf of Defendant during the Settlement Class Period, and must clearly state that the individual wishes to be excluded from the Litigation and the Agreement.  A request for exclusion that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not received within the time specified, shall be invalid, and the individual serving such a request shall be a member of the Class and shall be bound as a Class Member by the Court's Orders in this Litigation and by this Agreement, if approved.  The request for individual exclusion must be personally signed by the individual. Requests for group, mass and/or class opt-outs or exclusions will be invalid and shall not be allowed.

9.4.2   Any individual who submits a request for exclusion may not file an objection to the Settlement.  If an individual submits a written request for exclusion pursuant to Paragraph 9.4.1 above, he or she shall be deemed to have complied with the terms of the opt-out procedure and shall not be bound by the Agreement if approved by the Court.

9.4.3   After Notice is disseminated and at least fifteen (15) days prior to the Final Approval Hearing, the Parties shall request and seek to obtain from the Court a Final Approval Order and Judgment, which will (among other things):

(i)     find that the Court has personal jurisdiction over all Class Members and that the Court has subject-matter jurisdiction to approve the Agreement, including all exhibits hereto;

(ii)    approve the Settlement Agreement and the proposed Settlement as fair, reasonable, and adequate as to, and in the best interests of, Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have preclusive effect on all pending and future lawsuits or other proceedings maintained by or on behalf of Representative Plaintiff and the Releasing Parties;

(iii)   find that the Notice and the Notice Plan implemented pursuant to the Agreement (1) constitute the best practicable notice under the circumstances; (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the Litigation, their right to object to or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing; (3) are reasonable and constitute due, adequate, and sufficient notice to all Persons entitled to receive notice; and (4) meet all applicable procedural and other requirements, and the rules of the Court;

(iv)    dismiss the Action (including all individual claims and Class Member claims asserted therein) on the merits and with prejudice, without fees or costs to any Party, except as provided in the Settlement Agreement; incorporate the releases set forth above in Paragraph 8, make those releases effective as of the date of the Final Approval Order and Judgment; and

(v)     forever discharge the Released Parties as set forth herein; permanently bar and enjoin all Class Members from filing, commencing, continuing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction related to the Released Claims.

9.4.4. Notwithstanding anything else in this Agreement, in the event the total number of opt outs exceeds 20,000, Defendant shall have the right—at its sole discretion—to terminate this agreement and return the parties to the status quo pursuant to Paragraph 11.4 below, upon written notice given within seven business days of the Opt Out deadline.

## 10.   TAXES

Class Members, Representative Plaintiff, and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

10.1   Expenses Paid from Fund.  Any expenses reasonably incurred by the Claims

Administrator in carrying out the duties, including fees of tax attorneys and accountants, will be paid from the Settlement Sum.

10.2    Responsibility for Taxes on Distribution.  Any Person that receives a distribution from the Settlement Sum will be solely responsible for any taxes or tax-related expenses owed or incurred by reason of that distribution. Such taxes and tax-related expenses will not be paid from the Settlement Sum.

10.3    Payment Not Directed By or Incurred to Government: For purposes of assessing deducibility of any amounts to be paid by Defendant under the Settlement Agreement, it is expressly acknowledged by the Parties that such payments are not made or incurred (whether by suit, agreement, or otherwise) to, or at the direction of, a government or governmental entity in relation to the violation of any law or the investigation or inquiry by such government or entity into the potential violation of any law, as contemplated by 26 U.S.C. § 162(f)(1).

10.4    Defendant is Not Responsible.  In no event will Defendant or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Sum to Representative Plaintiff, Class Members, Class Counsel or any other person or entity. The Class Members shall indemnify and hold Defendant and other Released Parties harmless—through the Settlement Sum— for all such taxes and tax-related expenses.

## 11.    CONDITIONS FOR EFFECTIVE DATE; EFFECT OF TERMINATION

11.1    The Effective Date of this Agreement shall be the date defined in Paragraph 1.1.18.

11.2    Performance of the obligations set forth in this Agreement is subject to all of the following material conditions:

(A)    execution of this Agreement by Defendant, Representative Plaintiff, and Class Counsel.

(B)    the granting of preliminary approval by the Court.

(C)    sending of the notices described herein.

(D)   the granting of final approval by the Court.

(E)   execution and entry of Judgment by the Court.

(F)   the occurrence of all other circumstances necessary for the Effective Date to arise.

11.3   The Parties hereby covenant and agree to cooperate reasonably and in good faith for the purpose of achieving occurrence of the conditions set forth above, including, without limitation, timely filing of all motions, papers and evidence necessary to do so, and refraining from causing or encouraging directly or indirectly any appeal or petition for writ proceedings by third parties seeking review of any order contemplated by this Agreement. Class Counsel represent and warrant that they have authority to take all such actions required of them pursuant to this Agreement, and that by doing so they are not in breach or violation of any agreement with Representative Plaintiff or any third party.

11.4   If this Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation and Related Litigation as of June 30, 2022, and the Representative Plaintiff will voluntarily dismiss the Litigation and only re-file it, if ever, in federal court. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in this Litigation, the Related Litigation, or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

11.5   The Parties agree to request a stay of the Related Litigation pending approval of the Settlement.

**12.   MISCELLANEOUS PROVISIONS**

12.1   Termination of Agreement: The Parties shall each have the right to terminate this Settlement by providing written notice of their election to do so to the other Party within thirty (30) days of:

12.1.1  any court declining to enter or reversing entry of the Preliminary Approval Order or Final Approval Order;

12.1.2  any court refusing to approve this Agreement or any material part of it;

12.1.3  any court materially modifying the Agreement and/or Exhibits A, B, C, or D in any manner, including, without limitation, modification that increases the financial costs to Defendant to be determined in Defendant's sole discretion; that extends the Claims Deadline; that changes the claims administration process, including but not limited to, the Notice Plan, the Settlement Administrator' ability to minimize waste, fraud and abuse, and/or the proof required to substantiate a claim; and/or that changes the definition or scope of the Class.

12.2  Cooperation of the Parties: The Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement. The Parties agree that they will not solicit, facilitate, or assist in any way, requests for exclusions or objections by putative or actual Class Members.  Class Counsel recognize that they have an obligation to support the Settlement and to seek the Court's approval of its terms.  Class Counsel will abide by all applicable and governing ethical rules, opinions, and obligations precluding their representation of opt-outs.

12.3  Resolution of Dispute without Admission:  The Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement covers claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.

12.4  Use In Subsequent Proceedings:  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, or of any wrongdoing or liability of Defendant; or is or may

be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Any party to this Litigation may file this Agreement and/or the Judgment in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.5   Confidential Information:   All agreements made and orders entered during the course of the Litigation and Related Litigation relating to the confidentiality of information will survive this Agreement.

12.6   Media and Contact of Class Members.   Except as required by the Parties in accordance with applicable law, rule, or regulation (e.g., securities law, rules, or regulations), or any other exception expressly provided herein, to avoid contradictory, incomplete, or confusing information about the Settlement, the Parties agree that if they want to make any written press releases, disclosures on their websites, or statements to the media about or promotional materials that reference the existence or terms of the Settlement or the Litigation or Related Litigation before the conclusion of the Claim Period, such releases or statements must be approved by the Parties in advance and, where desired by the other Party, made jointly. Any party can respond to inquiries initiated by the media, and in doing so may decline to comment, but otherwise shall only refer to the Class Notice, a statement approved by the other Party, and/or defer to the court file in the Litigation or Related Litigation, but shall not provide any further comment.   Nothing provided herein shall prevent Defendant from communicating with its clients, investors, insurers, regulators or lenders about the Settlement or the Litigation or Related Litigation without the prior approval of Class Counsel.   Except as noted herein and by mutual agreement of the Parties, the Class Notice shall constitute the only communication with Class Members regarding the Settlement prior to the Final Fairness Hearing.

Notwithstanding, Class Counsel and Defense Counsel can answer any inquiries initiated by Class Members and Class Counsel may communicate freely with Plaintiff.

      12.7   Incorporation of Exhibits: Any and all Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

      12.8   Modification: This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

      12.9   Integration: This Agreement and any Exhibits attached hereto constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized in such documents. Except as otherwise provided herein, the Parties will bear their own respective costs.

      12.10 Class Counsel's Authority:  Class Counsel, on behalf of the Class, are expressly authorized by Representative Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Class.

      12.11 Parties' Authority:  Each counsel or other Person executing this Agreement or any of its Exhibits on behalf of any Party hereby warrants that such Person has the full authority to do so.

      12.12 Counterparts:  This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument.

      12.13 No Prior Assignments:  Representative Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

12.14 Binding on Assigns:  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Class Members.

12.15 Interpretation:  None of the Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any of the Parties as the drafter thereof.

12.16  Governing Law:  This Agreement and any Exhibits hereto will be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Florida without giving effect to that state's choice-of-law principles.

12.17  Headings: The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

12.18 No Waiver:  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of November \_\_\_\_, 2022.  **11 / 30 / 2022**

| Dated: 12/1/2022 | *[signature]* Marc King on Behalf of Defendant Keller Williams Realty, Inc. |
| Dated: 11 / 30 / 2022 | *[signature]* Beverly Deshay as Representative Plaintiff |
| Dated: November 30, 2022 | *[signature]* Avi Kaufman of Kaufman P.A. as Class Counsel |