**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DR. JEFF ISAACS, on behalf of himself and all
others similarly situated,

           Plaintiff,

vs.

KELLER WILLIAMS REALTY, INC.,
MAKAI SOUTHEAST, LLC, and KCK
DEVELOPMENT, L.L.C.,

           Defendants.

Case No. 9:23-cv-81393-DSL-BER

_____/

## DEFENDANT KWRI'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, MOTION TO DISMISS AND/OR STRIKE CLASS CLAIMS AND INCORPORATED MEMORANDUM OF LAW

Defendant, KELLER WILLIAMS REALTY, INC. ("KWRI"), through its undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f), and Local Rule 7.1, moves to dismiss KWRI from this case, to dismiss all claims asserted against KWRI in plaintiff's second amended complaint ("SAC") [DE 132] and to dismiss and/or strike all class claims asserted against KWRI, and in support states:

## INTRODUCTION

Plaintiff's claims against KWRI in the First Amended Complaint ("FAC") were dismissed for failure to state a claim, for lack of Article III standing and, in the alternative, because the FAC was a shotgun pleading. [DE 118, 120]. Plaintiff has now filed a Second Amended Complaint ("SAC") [DE 132]. The SAC does not remedy the issues noted by the Court in dismissing the FAC. Like the FAC, the SAC remains a confusing and implausible shotgun pleading. Furthermore,

the SAC continues to fail to state a claim against KWRI and fails to demonstrate standing for at least Count III. Therefore, all claims in the SAC directed at KWRI[1] should be dismissed.

Like the FAC, the SAC again improperly conflates "Keller Williams," "Defendants," "Makai Southeast/KW Wellington," "KW," "KWRI," "KW Defendants" and "Keller Williams Defendants." In dismissing the FAC, this Court specifically held this was improper. [DE 118 at 7-9]. While plaintiff made a limited effort in paragraphs 10-11 of the SAC to define these terms[2], he failed to follow through on using those definitions throughout the SAC. For instance, this Court previously held that the FAC's allegations referring to Dr. Isaacs accepting calls from "KW" was problematic because it clouded which, if any, defendant was allegedly participating. [DE 118 at 8-9]. Incredibly, the SAC repeats the same exact allegation (that "[p]laintiff continued to accept calls from KW" [DE 132 ¶ 16]) which this Court already specifically held was problematic. [DE 118 at 8]. Likewise, the SAC again ambiguously references "KW" in paragraphs 28, 29, 31, 67, 68, [DE 132 ¶¶ 28-29, 31, 67-68], and "Defendants" in paragraph 5. [DE 132 ¶ 5].

Furthermore, like the FAC, the SAC continues to vaguely attribute acts to "KW Defendants" or "Keller Williams Defendants" as a group to an implausible degree. Again, this Court previously held that by asserting claims this way, the FAC was a shotgun pleading because it "assert[s] multiple claims against multiple defendants without specifying which of the

---

[1] Count II for Breach of Contract and Count IV for Quiet Title / Adverse Possession / Easement by Prescription are not directed at KWRI. Therefore, this motion seeks dismissal of KWRI from Counts I and III, as well as dismissal of plaintiff's requests for declaratory judgment/permanent injunction as remedies. This motion also seeks to dismiss and/or strike plaintiff's putative class claims because the deadline for moving for class certification in this case lapsed over six months ago on February 20, 2024. [Doc 32 at 3].

[2] Per paragraphs 10-11 of the SAC, defendant Keller Williams Realty, Inc. was apparently intended to be referenced as "KWRI" or "Keller Williams" and defendant Makai Southeast, LLC was apparently intended to be referenced as "Makai" or "KW Wellington." Makai and KWRI were intended to be collectively referred to as "KW Defendants." [SAC ¶¶ 10-11].

1068566\322408029.v1

defendants are responsible for which acts or omissions…" and also because the FAC "repeatedly conflates the [d]efendants and the actions attributable to each of them." [DE 118 at 8]. The SAC does not fix this problem. Rather, the SAC attributes acts to "KW Defendants" and "Keller Williams Defendants" throughout, even where it makes little logical sense that both Makai and KWRI could have somehow jointly performed the alleged act. [SAC ¶¶ 29, 31, 34, 36, 38, 40, 41, 43-46, 48-50, 52, 60-61, 64, 67, 71, 73-74, 90-93, 96-98, 100-104, 108].

Moreover, the Court previously held that the FAC allegations regarding "Agent Nico" were insufficient because the FAC "fails to allege the identity and affiliation of 'Agent Nico,' implying that he is somehow an employee or agent of both Makai and KWRI." [DE 118 at 8 & fn. 6.] Again, the SAC does not fix this problem. The SAC again confusingly refers to Agent Nico as a "Keller Williams agent" [DE 132 ¶ 14] but then also alleges he was involved in the Exclusive Sale contract and transaction with Makai [DE 132 ¶¶ 25, 31], and later, that Agent Nico was "employed by Makai." [DE 132 ¶ 72.] These specific allegations were previously cited by this Court's prior Order as problematic and plaintiff apparently just ignored the Court's Order. [DE 118 at 8-9.]

Therefore, this Court should dismiss the SAC once again for being a shotgun pleading. To be clear, KWRI is an entirely separate company from Makai. KWRI is not a real estate brokerage that enters transactions with home sellers and buyers. Rather, KWRI is a franchisor that licenses the use of its trademarks to independently owned and operated franchisees that operate their own brokerages. These independently owned and operated franchisees in turn enter independent contracts with licensed real estate agents. Here, KWRI is not Makai and does not do business as that entity. Makai is an independently owned and operated franchisee not a subsidiary of KWRI, [DE 41, DE 47 & DE 53], and plaintiff's SAC allegations, to the extent they contradict this, are knowingly false in violation of Rule 11. [DE 132 ¶¶ 1, 35]. In reality, KWRI has no involvement

3

at all with whatever "facts" are alleged in the SAC, and it should be dismissed from this case with prejudice.

## SUMMARY OF THE ALLEGATIONS

Plaintiff alleges that he hired Makai in 2020 as his "buyer's agent" to purchase a home. [DE 132 ¶ 1]. Plaintiff alleges that he paid a buyer's agent commission in 2020 in relation to that property purchase. [DE 132 ¶ 80]. There are no other relevant allegations regarding the 2020 transaction in the SAC. Plaintiff does not allege that KWRI was involved in the 2020 transaction.

Plaintiff next alleges receipt of two text messages in 2022. [DE 132 ¶¶ 14-15]. However, the SAC selectively quotes words from the text message chain and does not provide the entire document showing the full exchange. The SAC is also misleading as to timing of the text messages. Therefore, the entire text message document has been previously put on record in this case, and it can be considered by this Court in ruling on this motion.[3] [DE 155-5].

Plaintiff alleges that on August 2, 2022 he received the first text message from an "unknown Keller Williams agent." [DE 132 ¶ 14]. Plaintiff does not allege that the text message was sent by KWRI. In fact, the SAC does not clearly allege who sent the text message. However, the text message allegedly stated, in part, that "this is Nico." *Id*. The SAC later alleges that someone referred to as "Agent Nico" was employed by Makai. [DE 132 ¶ 72]. However, the SAC never specifically alleges that Agent Nico sent the August 2, 2022 text message nor that the "Nico"

---

[3] *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *Hekker v. Ideon Group*, 1996 U.S. Dist. LEXIS 21814, *8 (M.D. Fla. 1996) ("where documents are quoted in or central to plaintiff's complaint, and the plaintiff has failed to provide the entire document with the complaint, the defendant may submit, and the court may consider, those documents in connection with a motion to dismiss.")

referenced in the August 2, 2022 text message is the "Agent Nico" referred to throughout the SAC. Regardless, the SAC does not allege any facts concerning Nico's or Agent Nico's relationship with KWRI.

Plaintiff next vaguely alleges that "[t]he messages continued through December 14, 2022." [DE 132 ¶ 15]. Under this statement is text from a purported second text. Again, plaintiff does not allege that this second text message was sent by KWRI either. Paragraph 15 of the SAC is also misleading because the cited text was not from any text message made on December 14, 2022, nor does paragraph 15 actually allege that it was. Rather, the cited text in SAC paragraph 15 is from a different text message made on November 10, 2022, not December 14, 2022. [DE 155-5].

The SAC asserts that "[o]n December 14, 2022, [p]laintiff agreed with Agent Nico's request to list his home, and Makai entered into an 'Exclusive Sale' contract to sell" plaintiff's property. [DE 132 ¶ 25]. The Exclusive Sale agreement was signed on January 1, 2023. [DE 132 ¶ 26]. Plaintiff does not allege that KWRI was involved in this contract. Plaintiff does not allege that his property was ever sold. Plaintiff does not allege that he paid a commission in regard to this 2023 transaction.

As mentioned in SAC paragraphs 4, 10, 55 & 73, KWRI was previously involved in a Telephone Consumer Protection Act ("TCPA") class settlement in *Deshay v. Keller Williams Realty, Inc.*, Case No.: 2022CA000457 (Indian-River County, Florida), wherein all liability for any allegedly violative text messages referenced in the SAC prior to December 12, 2022 was released by court order. *See Deshay* settlement documents. [DE 39-1]. The *Deshay* case was dismissed with prejudice on April 19, 2023. *Id*.

This Court entered a scheduling order on November 30, 2023. [DE 32]. One of the deadlines contained in the Court's scheduling order was the requirement that plaintiff shall file

"any motions for class certification" by February 20, 2024. [DE 32 at 3]. Plaintiff did not file any motions for class certification, or otherwise take any action whatsoever to preserve his right to do so, by February 20, 2024. On September 9, 2024, this Court ruled that the February 20, 2024 deadline remains in effect. [DE 153, DE 154].

## MEMORANDUM OF LAW

### I.     Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6).

The SAC fails to state either a direct or vicarious liability TCPA claim against KWRI. To state a claim for relief under the TCPA, a plaintiff may proceed either on a theory of direct liability, which "applies only to entities that 'initiate' the telemarketing calls, or on a theory of vicarious liability which, 'in the TCPA context[,] is governed by the federal common law of agency[.]'" *Tuso v. Lennar Corp.*, 2024 U.S. Dist. LEXIS 51263, *5-6 (S.D. Fla. 2024). Vicarious liability can be established using principles of agency law: actual agency, apparent authority, or ratification. *Id*. However, here, the only potential theories the SAC even mentions are actual agency and/or apparent authority. These conclusory labels, devoid of any factual support, are contained in paragraph 55 of the SAC. [DE 132 ¶ 55]. The SAC does not make any mention of a ratification theory.

Count I against KWRI should be dismissed pursuant to Rule 12(b)(6) because it lacks sufficient facts supporting either a direct or vicarious liability claim.

Count I should also be dismissed because it fails to allege "more than one" violative text message, which is a required element to have a private right of action under TCPA Section 227(c).

### A.     Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Direct Liability TCPA Claim Against KWRI.

Plaintiff's SAC does not plausibly allege that plaintiff received any text messages sent by KWRI. Therefore, no direct liability TCPA has been pled. Simply put, the SAC fails to show that

1068566\322408029.v1

KWRI has any connection or involvement in the sending of the text messages at issue period. Rather, as detailed above, the SAC only alleges that the text messages were vaguely sent from an "unknown Keller Williams agent." [DE 132 ¶ 14]. This is not a factual allegation. It is a conclusion and "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). The SAC does not otherwise clearly allege who sent the text message. To the extent plaintiff may argue that the SAC alleges that "Agent Nico" sent the text messages, the SAC fails to allege any facts concerning Agent Nico's relationship with KWRI, such that KWRI could be directly liable for Agent Nico's text messages.

In some circumstances, a text message can qualify as a "call" within the meaning of the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *See In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6583 (2013). "[P]ersons or entities, such as third-party[ ]retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call" do *not* "initiate a[] telephone call" within the meaning of the TCPA. *Id*. Accordingly, "the mere fact that a company produces and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product." *Id*.

Here, the SAC fails to allege any facts that suggest KWRI could be held directly liable pursuant to the TCPA. While plaintiff may claim that an "unknown Keller Williams agent" or "Agent Nico" sent the text messages at issue, the facts he pleads do not plausibly support the contention that KWRI itself was involved in sending the texts in any way. *See Gayle v. Bill Holt Auto, Inc.*, 2023 U.S. Dist. LEXIS 171179, *25-28 (N.D. Ga. 2023) (granting 12(b)(6) motion to

1068566\322408029.v1

dismiss filed by Mitsubishi and rejecting direct liability TCPA claim where complaint similarly alleged "Defendants" sent the text messages at issue but messages themselves only referenced a solicitation from a local Mitsubishi dealership co-defendant).

**B.    Count I Against KWRI Should be Dismissed Pursuant to Rule 12(b)(6) Because it Fails to State a Vicarious Liability TCPA Claim Against KWRI.**

Count I also fails to allege a vicarious liability TCPA claim against KWRI. Paragraph 72 of the SAC vaguely alleges that KWRI is liable through "operational control and oversight" of Makai and also because Agent Nico was "operating under the policies, procedures and direct influence of KWRI." [DE 132 ¶ 72]. However, these allegations are, again, only conclusions – not facts. The SAC never explains how KWRI's "operational control and oversight" of Makai and/or how KWRI's "policies, procedures and direct influence" resulted in the two alleged text messages. The SAC never alleges what any of these conclusory labels actually means. Instead, the SAC confusingly concludes that the "KW Defendants made these calls directly, encouraged them directly, and/or were responsible under the principals of vicarious liability and *respondeat superior*." [DE 132 ¶ 73]. These conclusory allegations are not sufficient and make little sense.

Count I should be dismissed as to KWRI because plaintiff does not allege any relationship whatsoever existed between KWRI and the sender of the text messages, such that vicarious liability might be plausible. The SAC falls woefully short of what courts nationwide require to state a vicarious liability TCPA claim in this situation. *See Rahimian v. Adriano*, 2022 U.S. Dist. LEXIS 46437, *10-15 (D. Nev. 2022) (dismissing vicarious liability TCPA claims against Century 21 based on calls made by local realtor under Rule 12(b)(6)); *Dave v. Century 21 Real Estate, LLC*, 2021 U.S. Dist. LEXIS 225282, *11-14 (D.S.C. 2021) (same); *Valdes v. Nationwide Real Estate Execs.*, 2021 U.S. Dist. LEXIS 100931, *8-12 (C.D. Cal. 2021) (dismissing vicarious liability TCPA claims against real estate agency for local realtor calls under Rule 12(b)(6)); *DeClements*

1068566\322408029.v1

*v. RE/MAX LLC*, 2020 U.S. Dist. LEXIS 253299, *5-11 (D. Colo. 2020) (dismissing vicarious liability TCPA claims against RE/MAX for calls made by RE/MAX franchisees under Rule 12(b)(6)); *Declements v. Americana Holdings LLC*, 2020 U.S. Dist. LEXIS 130213, *2-3 (D. Ariz. 2020) (dismissing vicarious TCPA claims against real estate agency owner for calls made by agents under Rule 12(b)(6)). All of the above cited cases involved pleadings that had far more facts pled in support of vicarious liability than the SAC here, and all of them still resulted in dismissal under Rule 12(b)(6).

### 1.     The SAC Fails to Allege Actual Agency.

The SAC does not and cannot allege that actual agency existed. In the context of the TCPA, actual agency requires "actual authority to place the unlawful calls," and an alleged principal must have the ability to control the "manner and means" of the specific calls. *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 449-53 (9th Cir. 2018). It requires more than "passive permission" to engage in particular calling activity. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) (vicarious liability rules mean more than passive permission by national franchisor, granting judgment to defendant where it did not direct the manner and means of message); *see also Fisher v. Le Vian Corp.*, 815 Fed. App'x 170, 171 (9th Cir. 2020) (Even where alleged principal recommended that the alleged agent use robocalls, and perhaps pressured it to do so, it was unreasonable to conclude that the alleged principal exerted such control that it compelled the agent to make the illegal calls and subject the principal to liability under the TCPA on an actual agency theory.)

Actual agency or actual authority is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do. *Jones*, 887 F.3d at 449; *see also Thomas*, 879 F. Supp. 2d at 1085-86

(holding that "knowledge, approval, and fund administration do not amount to controlling the manner and means of the text message campaign."); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x. 365, 372 (6th Cir. 2015) (where plaintiffs sought to hold defendant vicariously liable for text messages, plaintiffs failed to establish agency because "the clear wording of the operative contract stated 'that the parties to th[e] Agreement are independent contractors' and contractor had 'no authority to make or accept any offers or representations on [consultant's] behalf.'"). The SAC here contains no such allegations.

Therefore, the allegations in plaintiff's SAC fall far short of alleging actual authority. *See Rahman*, 2022 U.S. Dist. LEXIS 46437 at *11-12 (court dismissed plaintiff's vicarious liability TCPA claim against Century 21 because complaint lacked sufficient allegations regarding the extent of control exercised by Century 21 over purported agent); *Rogers v. Postmates Inc.*, 2020 U.S. Dist. LEXIS 121831, *10 (N.D. Cal. 2020) ("Absent from the SAC are allegations that Postmates exercised any control over the 'manner and means' in which Bird Dog executed the campaign on its behalf … [a]n allegation of a beneficial contractual relationship alone is insufficient"); *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 U.S. Dist. LEXIS 2414, *11-13 (N.D. Cal. 2018) (no liability where no "facts showing that defendant had the right to control the representatives and the manner and the means of the calls they made."); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 U.S. Dist. LEXIS 52328, *16 (N.D. Cal. 2018) ("Agency means more than mere passive permission; it involves request, instruction, or command."); *Naiman v. TranzVia LLC*, 2017 U.S. Dist. LEXIS 199131, *30-32 (N.D. Cal. 2017) (even day-to-day control over entity that allegedly made calls was insufficient to establish agency because complaint did not allege facts showing how defendant exercised that control); *Specialty Nat'l Ins. Co. v U-Save Auto Rental of Am.*, 2009 U.S. Dist. LEXIS 34372, *20-21 (M.D. Fla. 2009) (franchisor was not

liable for acts of franchisee because the franchisor "did not participate in any substantial way in directing or managing the acts of" the franchisee). Here, plaintiff fails to sufficiently allege that KWRI controlled or directed the manner and means of the text messages at issue.

This case is similar to *Winters v. Grand Caribbean Cruises, Inc.*, 2021 U.S. Dist. LEXIS 158176, *12-13 (D. Ariz., Aug. 20, 2021) where the court held that plaintiff's complaint allegations attempting to assert a TCPA vicarious liability theory failed to establish the element of control and contained only "buzz words." The court granted defendant's 12(b)(6) motion to dismiss because plaintiff offered only conclusory allegations concerning the caller's relationship with the defendant. *Id.* at *14-15. The court stated that plaintiff's complaint was "devoid of any specific, non-conclusory factual allegations outlining the nature of the contractual relationship between the Telemarketing Agent and [defendant], such whether and to what extent [defendant] supervises or controls the Telemarketing Agent's activities and what authority [defendant] has conferred upon the Telemarketing Agent in conducting activities on its behalf." *Id.* at *15. The court held that "[i]t is not enough to allege … that [defendant] 'maintained the right' to control certain aspects of the Telemarketing Agent's conduct because this is a conclusion, not a fact." *Id.* The court concluded: "Courts have not hesitated to dismiss TCPA claims under analogous circumstances." *Id.* at *16.

Notably, this Court has already held that a KWRI franchisee is not vicariously liable for torts of an independent realtor. *Century Land Development L.P. v. Weits*, 2009 U.S. Dist. LEXIS 7031, *12-16 (S.D. Fla. 2009). If no vicarious liability exists from the franchisee/realtor relationship, it certainly should not exist as to the franchisor which has no relationship with the realtor at all. Therefore, the SAC lacks a plausibly pled actual agency theory.

## 2.    The SAC Fails to Allege Apparent Authority

There also is no plausible apparent authority theory pled. To establish liability under an apparent authority theory, plaintiff must prove that someone reasonably believed that the agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations. *McCurley v. Royal Seas Cruises, Inc.*, 2022 U.S. App. LEXIS 9079, *4 (9th Cir. 2022); *Tuso v. Nat'l Health Agents, LLC*, 2021 U.S. Dist. LEXIS 115467, *8 (E.D. Cal. 2021); *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167-68 (D. Idaho 2011).

Apparent authority results when the principal does something which reasonably leads another to believe that the agent had the authority he purported to have. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017). Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [alleged principal] on which [the plaintiff] reasonably relied." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997); *see also McCurley*, 2022 U.S. App. LEXIS 9079 at *5 (affirming judgment for alleged principal on a TCPA apparent authority theory where principal allegedly provided a call script for the agent to use in making calls, but the calls made no mention of the principal to the called party); *Thomas*, 582 F. App'x at 679-80 (holding plaintiff failed to plead apparent authority theory where the "[plaintiff] has not shown that she reasonably relied, much less to her detriment, on the apparent authority with which the [defendant] allegedly cloaked the [third parties to violate the TCPA]").

Here, plaintiff does not allege that he believed that anyone was authorized to do anything based upon any manifestation by KWRI that plaintiff relied upon. Nothing in plaintiff's SAC indicates that KWRI itself took any action that would create this belief. The alleged texts themselves do not even mention KWRI.

1068566\322408029.v1

Again, this case is similar to *Winters*, where the court held that plaintiff failed to state a claim under an apparent agency theory because plaintiffs did "not allege their belief was based on manifestations made by" defendant. *Winters*, 2021 U.S. Dist. LEXIS 158176 at *16. The court held that manifestations made by the caller are insufficient to establish an agency relationship premised on actual authority. *Id*. This Court should follow *Winters*.

**B.     Count I Should be Dismissed as to KWRI Pursuant to Rule 12(b)(6) Because it Fails to Allege "More Than One" Violative Text Message Sufficient for a Private Right of Action and/or "More than One" Text Message Period After December 12, 2022.**

Count I should also be dismissed as to KWRI because while the SAC appears to allege two text messages, [DE 25 ¶¶ 14-15], it is misleading. As shown by the entire text message document in the record, the first text message (allegedly sent and received on August 2, 2022) starts a chain of text messages that go through December 13, 2022. [DE 155-5]. However, none of the text messages after August 2, 2022 can plausibly be alleged to be a "solicitation" to which plaintiff "object[ed]." Rather, all of the text messages after August 2, 2022 appear to be elicited by plaintiff in an attempt to establish a business relationship with Agent Nico.

Count I is brought pursuant to "[47] U.S.C. 227(c)" only, [DE 132 at Count I], and Section 227(c) requires a "telephone solicitation." *See Mierzwicki v. Citigroup, Inc.*, 2015 U.S. Dist. LEXIS 178509, *5-6 (S.D. Fla. 2015) citing 47 U.S.C. § 227(c) (concerning "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object"); *see also Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (noting that § 227(c) "prohibits an entity from making more than one 'telephone solicitation' to the same person within a twelve-month period."). Indeed, the Eleventh Circuit in *Meadows* affirmed the district court's grant of summary judgment on a 47 U.S.C. § 227(c)(5) claim where the calls at issue did not fall under the definition of "telephone solicitations" contained in the statute.

It is abundantly clear from the text message chain that plaintiff did not object to any of the texts beyond possibly the original August 2, 2022 text message. [DE 155-5]. To the contrary, the entire chain of text messages through December 13, 2022, appears to be prompted by plaintiff. Count I certainly does not plausibly allege that every message in the chain is a "solicitation" to which plaintiff "object[ed]." Rather, a simple read through of the text messages demonstrates that such an interpretation is not only implausible, but entirely unreasonable. [DE 155-5].

Furthermore, Section 227(c) of the TCPA only provides a private right of action to those who have received "<u>more than one</u> telephone call within any 12-month period by or on behalf of the same entity …" 47 U.S.C. § 227(c)(5) (emphasis added). At best, the August 2, 2022 text message referenced in SAC paragraph 14 might qualify for one. [DE 132 ¶ 14]. However, the November 10, 2022 text message referenced in SAC paragraph 15, [DE 132 ¶ 15], certainly does not constitute a solicitation to which plaintiff objected, nor does anything sent on or after December 12, 2022 either. [DE 155-5]. Therefore, plaintiff's SAC fails to allege "more than one" violative text message sufficient for a private right of action.

Additionally, as mentioned in SAC paragraphs 4, 10, 55 & 73, KWRI was previously involved in a TCPA class settlement in *Deshay v. Keller Williams Realty, Inc.*, Case No.: 2022CA000457 (Indian-River County, Florida), wherein all liability for any allegedly violative text messages referenced in the SAC on or prior to December 12, 2022 was released by court order. *See Deshay* settlement documents. [DE 39-1]. Per plaintiff's own allegations in the SAC, plaintiff here is a member of the *Deshay* "Class." [DE 39-1 at Class Settlement Agreement ¶ 1.1.9 and Final Approval Order ¶ 4(a)]. The "Class Period" in the *Deshay* settlement spanned from May 2, 2014 to December 12, 2022. [DE 39-1 at Class Settlement Agreement ¶ 1.1.12 and Preliminary Approval Order]. Therefore, the August 2, 2022 text alleged in SAC paragraph 14, and the

November 10, 2022 text alleged in SAC paragraph 15, [DE 132 ¶¶ 14-15], were released in the *Deshay* settlement.

No other text messages are referenced in the SAC. Further, the full text message document only shows one possibly relevant text message sent after December 12, 2022, which was sent on December 13, 2022. [DE 155-5]. Regardless of whether this single December 13, 2022 text message is considered a solicitation or not, plaintiff cannot (and does not) allege that it constitutes "more than one" text message sent *after* December 12, 2022. Therefore, when the *Deshay* case was dismissed with prejudice on April 19, 2023, any claim plaintiff may have had against KWRI as to any text messages made on or prior to December 12, 2022 were released. [DE 39-1 at Final Approval Order ¶¶ 15-16].

Since no text messages referenced in the SAC sent on or prior to December 12, 2022 are actionable, KWRI should be dismissed from Count I. Plaintiff lacks a private right of action because only one, not "more than one," text message is at issue in this case. This is because "[the] principles of res judicata, or claim preclusion, apply to judgments in class actions as in other cases." *Lee v. Ocwen Loan Servicing, LLC*, 2023 U.S. Dist. LEXIS 38986, *51 (S.D. Fla. 2023) citing *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998); *see also Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.") The August 2, 2022 text alleged in paragraph 14, and the November 10, 2022 text alleged in paragraph 15, [DE 132 ¶¶ 14-15], were released in the *Deshay* settlement Therefore, Count I additionally fails because the record is extremely clear that there was never "more than one" text message sent *after* December 12, 2022 period.

**II.    Count III Against KWRI for Violation of the Sherman and Clayton Antitrust Acts Should Be Dismissed Pursuant to Rule 12(b)(1) and/or Rule 12(b)(6).**

**A.    Plaintiff's Sherman Act Challenge to the "Adversary Commission Rule" Must Be Dismissed for Lack of Standing.**

This Court previously dismissed plaintiff's Sherman Act claim for lack of standing because plaintiff did "not allege that he actually paid a commission to a broker at all, because his home sale never occurred." [DE 118 at 27]. None of these facts have been changed in the SAC.

The SAC again asserts that "[o]n December 14, 2022, [p]laintiff agreed with Agent Nico's request to list his home, and Makai entered into an 'Exclusive Sale' contract to sell" plaintiff's property. [DE 132 ¶ 25]. The Exclusive Sale agreement was signed on January 1, 2023. [DE 132 ¶ 26]. Plaintiff does not allege that KWRI was involved in this contract. Plaintiff does not allege that his property was ever sold. Plaintiff does not allege that he paid a commission in regard to this transaction. Simply put, plaintiff is not a home seller because he never sold his home.

Therefore, plaintiff's SAC's Count III Sherman Act challenge to the "Adversary Commission Rule" should again be dismissed for lack of standing. Plaintiff seeks to represent a class of people who "used a listing broker affiliated with Keller Williams," and who, allegedly because of what plaintiff refers to as the "Adversary Commission Rule," paid a commission to the buyer's broker in connection with the *sale* of their home listed on the BeachesMLS. [DE 132 ¶ 57]. Here, again, plaintiff does not allege that he ever actually sold a home or paid a commission to a buyer's broker in connection with the sale of his home.[4]

---

[4] Plaintiff's SAC repeatedly tries to equate this case to a Missouri case, *Sitzer*, and attaches pleadings from *Sitzer*. [DE 132-1]. In fact, plaintiff confusingly cut-and-pastes multiple paragraphs from the cited *Sitzer* pleadings into the SAC without apparently understanding their meaning. *Compare* DE 132-1 with DE 132. Yet, the *Sitzer* case involved a plaintiff and putative classes that were made up of home sellers. To the contrary, plaintiff here was never a home seller. Therefore, plaintiff's claims here have no equivalence to the claims in *Sitzer*.

1068566\322408029.v1

Despite not having sold a home or paid a commission in connection with the sale of his home, plaintiff attempts to manufacture an injury by also alleging that he hired Makai in 2020 as his "buyer's agent" to *purchase* a home. [DE 132 ¶ 1]. However, contrary to the alleged conspiracy to "force home sellers to pay an unreasonably inflated buyer's broker commission" upon listing their homes for sale on a multiple listing service ("MLS") [DE 132 ¶¶ 40, 44, 49], plaintiff instead alleges that he paid a buyer's agent commission in 2020 in connection with the purchase of his home. [DE 132 ¶ 88].Thus, according to his own allegations, plaintiff was the *buyer* in the alleged 2020 transaction, not the seller, and he paid the buyer's agent commission. Therefore, plaintiff's own allegations place him outside of the alleged conspiracy and the class he purports to represent, which is made up of sellers who allegedly were required to pay the buyer's agent commission. Otherwise, there are no other relevant allegations regarding the 2020 transaction in the SAC. Further, plaintiff does not allege that KWRI was involved in any way in the 2020 transaction. As a result, it remains a mystery how and/or why this 2020 transaction is in any way relevant to this case.

Once again, because plaintiff did not suffer an injury caused by the "Adversary Commission Rule," he lacks standing to challenge the rule on behalf of a purported class. [DE 118 at 27]; *see also Jackson v. City of Argo*, 2019 U.S. Dist. LEXIS 9883, *22 (N.D. Ala. 2019) (dismissing complaint and holding that "because Jackson asserts no viable claims, he cannot bring claims on behalf of the putative class"). It is axiomatic that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). If plaintiff cannot allege and show he suffered an injury, he does not have standing to bring the case or to represent the class. *Big Five Properties, Inc. v. Certain Underwriters at Lloyd's, London*, No. 12-23916-CIV, 2013 WL

12091814, at *4 (S.D. Fla. Feb. 27, 2013) ("If the named plaintiff in a class action cannot establish the requisite case or controversy between itself and the defendant, it cannot seek relief for anyone—not for itself, and not for any other member of the class."). "This individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.'" *Griffin v. Bugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also Franze v. Equitable Assurance*, 296 F.3d 1250, 1253–54 (11th Cir. 2002) (holding that, without individual standing to raise a legal claim against a specific defendant, a named representative may not raise the claim on behalf of a class).

> **B.     Plaintiff's Sherman Act Challenge Based on *Aspen Skiing* Must Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts to Support It.**

Plaintiff's purportedly "novel (and first-to-file) claim" under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), [DE 132 ¶ 49], also fails to state a claim and must be dismissed. Plaintiff appears to allege some unspecified involvement by KWRI in preventing the sharing of listings with companies offering "efficient marketplace internet tools," [DE 132 ¶ 91], but his allegations do not "mirror[]" the concerns in *Aspen Skiing* or state a claim for relief.

*Aspen Skiing* is recognized to create a "limited exception" to the well-recognized rule under the Sherman Act that one competitor has no obligation to do business with another. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (explaining that *Aspen Skiing* "is at or near the outer boundary of § 2 liability"); *OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1245 (11th Cir. 2022) (noting that "the Supreme Court has declined to extend the exception when presented with facts that differ materially from those presented in *Aspen Skiing*"); *see also Arcesium, LLC v. Advent Software, Inc.*, 2021 U.S. Dist. LEXIS 62957, *17 (S.D.N.Y. 2021) (explaining that the *Aspen Skiing* exception is that "a defendant's refusal to deal may be

anticompetitive where the parties had previously been engaged in a voluntary, cooperative, and profitable venture that the defendant terminated and where the defendant's decision to do so cannot be explained by anything other than a desire to harm competitors").

*Aspen Skiing* applies to very narrow and specific circumstances simply not at issue here. To invoke *Aspen Skiing*'s limited exception, the plaintiff must show the following: (1) "a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival;" and (2) "the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) (Gorsuch, J.); *Tyntec Inc. v. Syniverse Techs.*, LLC, 2019 U.S. Dist. LEXIS 231273, *18 (M.D. Fla. Aug. 19, 2019).

Plaintiff does not allege that KWRI "voluntarily engaged in a course of dealing with its rivals, or would ever have done so absent statutory compulsion." *Trinko*, 540 U.S. at 409; *OJ Com.*, 34 F.4th at 1245 (dismissing complaint where plaintiffs did not allege that the defendant voluntarily engaged in a course of dealing with its rivals). To the extent plaintiff's SAC alleges that information has been withheld from Zillow (and plaintiff's SAC is far from clear on this point), there also is no allegation that KWRI and Zillow are the only participants in the market. *Aspen Skiing* "relied heavily on the fact that the plaintiff and defendant were the only participants in the market and that the defendant refused to deal with plaintiff even at retail price." *Arcesium*, 2021 U.S. Dist. LEXIS 62951 at *17-18 (dismissing complaint where the plaintiff made no such allegations, and the plaintiff and defendants are not the only participants in the relevant markets).

Finally, to the extent plaintiff attempts to allege that KWRI conspired with others to prevent competitors from offering competing listing services, the SAC alleges no facts whatsoever in

support of that claim. Plaintiff's wholly conclusory allegations of concerted conduct fail to state a plausible claim for relief under *Twombly*/*Iqbal*.

### III.    Plaintiff's Class Claims Should Be Dismissed or Stricken Pursuant to Rules 12(b)(6) and/or 12(f).

Finally, this Court entered a scheduling order on November 30, 2023. [DE 32]. One of the deadlines contained in the Court's scheduling order was the requirement that plaintiff shall file "any motions for class certification" by February 20, 2024. [DE 32 at 3]. Plaintiff did not file any motions for class certification, or otherwise take any action whatsoever to preserve his right to do so, by February 20, 2024. As a result, on September 9, 2023, this Court ruled that the February 20, 2024 deadline remains in effect. [DE 153, DE 154].

Therefore, in the event that this Court does not dismiss all claims alleged against KWRI in the SAC, it should still dismiss and/or strike the putative class claims from the SAC under Rules 12(b)(6) and/or 12(f) due to plaintiff's failure to adhere to the Court ordered deadline. *See Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 872, 877 (11th Cir. 2022) (explaining that an attorney's "failure to abide by a clear legal deadline constitutes *inexcusable* neglect") (emphasis added); *Allenback v. Corelogic Credco, LLC*, 2024 U.S. Dist. LEXIS 41658, *5-6 (N.D. Fla. 2024) (denying plaintiff's request to file a motion for class certification beyond the deadline because failure to file was inexcusable and given that plaintiff's counsel missed the deadline for filing, "the putative class members may be better off separately pursuing their claims."); *Seyboth v. Gen. Motors Corp.*, 2008 U.S. Dist. LEXIS 37736, *4-5 (M.D. Fla. 2008) (explaining that "counsel's mistake in calculating the time for the motion for class certification is not excusable neglect").

Plaintiff should not be allowed to revive the Court ordered class certification deadline, which lapsed well over six months ago, through inserting putative class claims in the SAC without leave to do so. Therefore, all class claims should be dismissed and/or stricken.

1068566\322408029.v1

WHEREFORE, Defendant, KELLER WILLIAMS REALTY, INC., respectfully requests this Court dismiss KWRI from this case, dismiss all claims asserted against KWRI in plaintiff's second amended complaint, dismiss and/or strike all class claims asserted against KWRI and grant any other appropriate relief in its favor that this Court finds equitable and just.

Dated: September 11, 2024

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**


*/s/ Todd P. Stelter*
**TODD P. STELTER**
*Admitted pro hac vice*
tstelter@hinshawlaw.com
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Tel: 312-704-3000 / Fax: 312-704-3001

*/s/ Siobhan E.P. Grant*
**SIOBHAN E. P. GRANT**
Florida Bar No. 68892
sgrant@hinshawlaw.com
Secondary: lleon@hinshawlaw.com
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Tel: 305-358-7747 / Fax: 305-577-1063
*Attorneys for Keller Williams Realty, Inc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Siobhan E.P. Grant*
Siobhan E.P. Grant
Florida Bar No. 68892
sgrant@hinshawlaw.com

1068566\322408029.v1